**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHELLE WILLIAMS, | ) |
| Mother and Next Friend of J.W., a Minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07-1261 (ESH) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A municipal corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF FILING OF THE ADMINISTRATIVE RECORD

The Defendant, through counsel, respectfully submits the District of Columbia

Public Schools' administrative record from the April 18, 2007, Hearing Officer's

Determination at issue in this case.  Consistent with LCvR 5.4(f), the Defendant has

redacted personal information about the minor J.W., including his name, date of birth and

Social Security Number.

The undersigned counsel has served a copy of the unredacted record on counsel

for the Plaintiff, by U.S. mail, simultaneous with the filing of the redacted record with the

Clerk through the e-filing system.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

October 31, 2007

*Williams v. District of Columbia*
Civil Action No. 07-1261 (ESH)

## Index of Record

**Description**            **Page**

| Description | Page |
|---|---|
| Certification of Record | 1 |
| Hearing Officer's Determination, issued 4/18/07 | 2 |
| Facsimile from D. McCall to D. Tyrka re: Vision and Hearing Screenings, 4/4/07 | 12 |
| Petitioner's Motion to Strike, 4/2/07 | 14 |
| DCPS Response and Supp. Motion to Dismiss, 3/30/07 | 17 |
| DCPS-1:   Confirmation of Meeting Notice, 2/9/07 | 21 |
| DCPS-2:   Letter of Invitation, 2/1/07 | 22 |
| DCPS-3:   Settlement Agreement, 2/12/07 | 24 |
| DCPS-4:   DCPS Referral Form, 2/12/07 | 29 |
| DCPS-5:   MDT Student Evaluation Plan, 2/12/07 | 30 |
| DCPS-6:   MDT Prior Notice, 2/12/07 | 31 |
| DCPS-7:   Resolution Meeting Notes, 2/12/07 | 32 |
| DCPS-8:   DCPS IEP, 2/12/07 | 34 |
| DCPS-9:   Meeting Notes, re: Eligibility and IEP 2/12/07 | 35 |
| DCPS-10:  Facsimile Receipt for Speech/Language Evaluation, 1/31/07 | 40 |
| DCPS-11:  Letter from B. Kelly to D. Tyrka re: Meeting to Review Evaluations and Discuss Eligibility, 2/1/07 | 41 |
| DCPS-12:  Declaration of B. Kelly re: Speech & Language Eval., 12/19/06 | 42 |
| DCPS-13:  Letter from B. Kelly of Stanton ES to D. Tyrka, 3/29/07 | 44 |

*Williams v. District of Columbia*
Civil Action No. 07-1261 (ESH)

| **Description** | **Page** |
|---|---|
| DCPS Motion to Dismiss Due Process Complaint, 3/29/07 | 45 |
| Petitioner's Opposition to Motion to Dismiss, 3/29/07 | 59 |
| DCPS Disclosure Statement and Motion to Compel Attendance with Exhibits, 3/28/07 | 73 |
| DCPS-1: Confirmation of Meeting Notice, 2/9/07 | 76 |
| DCPS-2: Letter of Invitation, 2/1/07 | 77 |
| DCPS-3: Settlement Agreement, 2/12/07 | 79 |
| DCPS-4: DCPS Referral Form, 2/12/07 | 84 |
| DCPS-5: Student Evaluation Plan, 2/12/07 | 85 |
| DCPS-6: MDT Prior Notice, 2/12/07 | 86 |
| DCPS-7: Resolution Meeting Notes, 2/12/07 | 87 |
| DCPS-8: DCPS IEP Document, 2/12/07 | 89 |
| DCPS-9: MDT Notes, 2/12/07 | 90 |
| DCPS-10: Fax Receipt for Speech/Language Evaluation, 1/31/07 | 95 |
| DCPS-11: Letter from B. Kelly to D. Tyrka re: Eligibility Review of Evaluations, 2/1/07. | 96 |
| DCPS-12: Declaration of B. Kelly re: Speech/Language Evaluation, 12/19/06 | 97 |
| Parent's Disclosure Letter with Exhibits, 3/28/07 | 98 |
| JW-1: Disclosure letter, 3/28/07 | 100 |
| JW-2: Notice Compelling DCPS Witnesses, 3/28/07 | 103 |
| JW-3: HOD, 10/2/06 | 104 |
| JW-4: Due Process Complaint Notice, 1/30/07 | 108 |

*Williams v. District of Columbia*
Civil Action No. 07-1261 (ESH)

**Description**                                                                   **Page**

    JW-5:    Hearing Notice, 3/14/07                                      114

    JW-6:    Independent Psycho-Educational Evaluation,   115
                10/10/06

    JW-7:    Independent Social History, 10/10/06            127

    JW-8:    Independent Speech/Language Evaluation,       132
                11/17/06

    JW-9:    Letter from D. Tyrka to B. Kelly, 2/2/07        142

    JW-10:   Acceptance Letter to Rock Creek Academy,    145
                3/8/07

    JW-11:   No Child Left Behind E.S. AYP List, 2006       146

Petitioner's Motion for Default, 3/28/07                                            150

Petitioner's Motion for Summary Adjudication, 3/26/07                               162

    Exhibit 1:  Hearing Officer's Amended Decision       171
                 and Order, issued 10/2/06

    Exhibit 2:  Psycho-Educational Evaluation, 10/10/06    175

    Exhibit 3:  Social History, 10/10/06                   184

    Exhibit 4:  Speech/Language Evaluation, 11/17/06       188

    Exhibit 6:[1] Statement of Kedra Hill, 3/26/07             198

Hearing Notice, 3/14/07                                                            200

Facsimile Cover Sheet with Attachments, 2/15/07                                    201

    Settlement Agreement, 2/12/07                          202

    IEP/MDT Meeting Notes, 2/12/07                         206

    Resolution Meeting Notes, 2/12/07                      212

---

[1] It appears that Exhibit 6 was mis-numbered because there is no Exhibit 5.

*Williams v. District of Columbia*
Civil Action No. 07-1261 (ESH)

| **Description** | **Page** |
| --- | --- |
| Scheduling Memorandum, 1/30/07 | 215 |
| Due Process Complaint Notice, 1/30/07 | 219 |
| Hearing Transcript, 4/4/07 | 224, *et al.* |

# CERTIFICATION OF RECORD

### INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## Office of Compliance & Review
### *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:        W████ J████ vs. DCPS

Case Information:        Hearing Dates: **04/04/2007**
                         Held at: **District of Columbia Public Schools Headquarters**
                                  **825 N. Capitol Street, N.E.**
                                  **Washington, D.C. 20002**
                         Student Identification Number: **9203101**
                         Student's Date of Birth: ████████
                         Attending School: **Stanton ES**
                         Managing School:
                         Hearing Request Date(s): **01/30/2007**

## <u>CERTIFICATION OF RECORD</u>

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Friday, October 12, 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of J████ W████████  ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: ████████████  ) | |
| ("Student")  ) | **HEARING OFFICER'S DECISION** |
| ) | |
| Petitioner,  ) | Hearing Date: April 4, 2007 |
| ) | |
| v.  ) | Held at: 825 North Capitol St. NE |
| ) | Washington, DC |
| ) | |
| District of Columbia Public Schools  ) | |
| ("DCPS" or "District")  ) | |
| School: Stanton ES  ) | |
| Respondent.  ) | |
| ) | |
| ————————————————————) | |

Counsel for Student:            Douglas Tyrka, Esq.
                                1726 Connecticut Ave., NW #400
                                Washington, DC  20009


Counsel for DCPS:               Daniel McCall, Esq.
                                Office of General Counsel
                                825 North Capitol St. NE
                                Washington, DC  20002

**JURISDICATION:**

A Due Process Hearing was convened on April 4, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed January 31, 2007.  The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

**DUE PROCESS RIGHTS:**

The parent's counsel waived a formal reading of the due process rights.

1

2

(In the Matter of JW  HOD: April 18, 2007)

**DISPOSITION OF PRE-HEARING MOTIONS:**

Parent's counsel filed the due process complaint January 30, 2007, alleging, inter alia, DCPS failed to timely comply with the October 3, 2006, HOD.  DCPS did not file a timely response to the due process complaint but on March 30, 2007, three business days prior to the due process hearing, DCPS filed a response to the complaint and two motions to dismiss: (1) a motion to dismiss the complaint on jurisdictional grounds claiming the due process hearing was not the proper forum to seek enforcement of a HOD, and (2) a motion to dismiss alleging the parent refused provide initial consent for DCPS to provide special education services to the student.

The Hearing Officer denied DCPS' second motion to dismiss as untimely filed under the DCPS Student Hearing Office Standard Operating Procedures (SOP) which requires motions be filed in writing five business days prior the due process hearing.  However, the Hearing Officer indicated that the motion to dismiss based on jurisdictional grounds would be taken under advisement and decided in this written HOD.

The complaint alleges, in addition to claim that DCPS did not comply with the HOD, DCPS failed to provide the student an appropriate placement and services.  The claims made in the complaint relate to an alleged continuing violation by DCPS and in the Hearing Officer's opinion amounts to a separate and distinct allegation of a denial of FAPE.  It is within a Hearing Officer's express authority to determine whether there has been a denial of FAPE.  The Hearing Officer concludes the due process hearing is a valid forum for adjudicating a violation of a HOD and continuing violations arising therefrom.  In addition, a complaint alleging a failure to comply with a HOD is a legitimate forum in which a party can perhaps seek an additional and distinct form of relief than was granted by an original HOD.  It is within in a Hearing Officer's inherent authority to fashion a remedy for an alleged denial of FAPE.  Therefore, the due process hearing should have and did proceed.

On March 28, 2007, the parent's counsel filed a motion for default judgment for DCPS' failure to file a response to the due process complaint.  IDEIA is silent as to the proper remedy for the failure by a LEA to file a response to the complaint.  DCPS cited the comments of the IDEIA regulations in support of its assertion that failure to file a response to a due process complaint, and/or failure to send a prior written notice(s), does not warrant a default decision[1]  The Hearing Officer is convinced that granting of a default for DCPS' failure to file a response to complaint is clearly not mandated.  Despite the fact that DCPS did not file a timely response and attempted to file a response with its second motion to dismiss on March 30, 2007, the Hearing Officer concludes a default judgment is not appropriate in this case where there has been no showing of harm to the student or parent by the failure to file a timely response.  Therefore, the Hearing Officer denies the motion for default judgment.

---

[1] Federal Register Vol. 71 No. 156, Page 46699, Monday, August 14, 2006 - Rules and Regulations-Questions/Answer Section - middle column.

3

(In the Matter of JW   HOD: April 18, 2007)

A day prior to filing the motion for default the parents counsel filed a motion for summary adjudication asserting the facts were undisputed that DCPS did not comply with the October 3, 2006, HOD. The Hearing Officer denied the motion for summary adjudication and proceeded with the due process hearing.

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (JW 1-11 and DCPS 1-12) which were admitted into the record.

## FINDINGS OF FACT [2]:

1. The student is currently age seven and attends Stanton Elementary School (Stanton) in the first grade. (DCPS 8)

2. A Hearing Officer's Determination (HOD) was issued in October 3, 2006, which directed DCPS to send the parent a notice of intent to conduct evaluations on or before September 25, 2006, and to conduct the evaluations listed in the HOD within thirty (30) calendar days of the issuance of the HOD. The HOD authorized the parent to obtain independent evaluations with DCPS funding if the evaluation were not conducted timely. (JW 3)

3. Pursuant to the HOD DCPS was to convene a multidisciplinary team (MDT) eligibility meeting within fifteen (15) school days of the completion of evaluations or the receipt of the last of the independent evaluations. (JW 3)

4. On December 20, 2006,[3] the parent's counsel sent DCPS the last of the independent evaluations. Pursuant to the October 3, 2006, HOD DCPS was to have convened the MDT meeting no later than January 25, 2007. (JW 6, 7, 8)

5. On January 30, 2007, the parent's counsel filed the due process complaint alleging DCPS has failed to timely comply with HOD and failed to provide the student an appropriate placement and services. (JW 4)

6. On February 1, 2007, DCPS sent the parent and her counsel a letter of invitation to convene the MDT/eligibility meeting. The date agreed upon for the meeting was February 12, 2007. (DCPS 2)

---

[2] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

[3] DCPS asserted the last evaluation was not received by DCPS on December 20, 2006, but on a later date. The parent's counsel disclosed a letter which refutes an assertion by Stanton's SEC that the last evaluation was not faxed to the correct DCPS telephone number. Consequently, the Hearing Office found the last evaluation was received by DCPS on December 20, 2006.

7.  On February 12, 2007, DCPS convened a MDT meeting.  The parent's educational advocate attended the meeting and the parent participated by telephone. The MDT found the student eligible for special education services with a disability classification of mental retardation (MR).  The MDT drafted an individualized educational program (IEP) which prescribed 20 hours of specialized instruction and 1 hour of speech language weekly and determined the IEP could be implemented at Stanton.  The parent did not agree with the IEP but indicated she wanted the services in the IEP implemented.  The MDT also determined additional evaluations of the student would be conducted.  (DCPS 5, 8)

8.  The student has been accepted to Rock Creek Academy (Rock Creek).  Rock Creek is a full time special education placement and can provide the student specialized instruction and related services prescribed by the student's IEP.  A classroom has been identified for the student with a certified special education teacher and two other students.  Rock Creek also has a certified speech/language service provider. (Ms. Webb's testimony, JW 10)

**ISSUE(S): [4]**

Did DCPS deny the student FAPE by:

1.  Failing to timely comply with the HOD?
2.  Failing to conduct a review of the student evaluations, develop an IEP, provide an appropriate placement and provide appropriate specialized instruction and related services?

**CONCLUSIONS OF LAW:**

Pursuant to IDEIA §1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA §1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief.[5]  In this case the parent is seeking relief and has the burden of proof that the action

---

[4] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here.  However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

(In the Matter of JW  HOD: April 18, 2007)

and/or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

**1. Did DCPS deny the student FAPE by failing to timely comply with the HOD?**
**Conclusion: The parent's counsel sustained the burden of proof.**

The evidence indicates that DCPS received the last of the student's independent evaluations on December 20, 2006. Pursuant to the October 3, 2006, HOD, DCPS was to have convened the eligibility meeting no later than January 25, 2007. Because the meeting was not convened timely the student's eligibility determination and provision of special education and related services were delayed. There is sufficient evidence the parent consented to the services being provided at the MDT/IEP meeting although she did not agree with and refused to sign the IEP. The Hearing Officer concludes the student was harmed by the delay in provision of services and was denied FAPE.

**2. Did DCPS deny the student FAPE by failing to conduct a review of the student evaluations, develop an IEP, provide an appropriate placement and provide appropriate specialized instruction and related services?**

**Conclusion: The parent's counsel did not sustain the burden of proof.**

The evidence indicates that although the student's eligibility determination was delayed DCPS has not reviewed the student's independent evaluations, developed an IEP and indicated that the services can be provided at Stanton. Therefore, the Hearing Officer concludes DCPS did not deny the student FAPE in this regard.

Although the parent's counsel presented evidence that Rock Creek Academy can implement the student's IEP and presumably provide the student educational benefit the Hearing Officer does not consider the placement of the student at Rock Creek to be an appropriate remedy for the delay in the eligibility determination and offering of services cited above.

**ORDER:**

1. DCPS shall, within sixty (60) calendar days of the issuance of this Order, convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to discuss compensatory education and develop a compensatory education plan for the delay in provision of specialized instruction and related services from January 25, 2007, through February 12, 2007.

2. Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel.

---

[5] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

(In the Matter of JW  HOD: April 18, 2007)

3. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

## APPEAL PROCESS:

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: April 18, 2007**

Issued: 4/18/07

6

7

(In the Matter of JW   HOD: April 18, 2007)

## In the MATTER OF J▮▮▮▮ W▮▮▮▮▮ V. DCPS

## INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| MH 1-3 | Parent's Disclosures | Yes |
| DCPS 1-4 | DCPS Disclosures | Yes |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | * A detailed list of the documents disclosed is contained in the parties' disclosure notices |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

7

(In the Matter of JW  HOD: April 18, 2007)

## In the MATTER OF J███ W█████ V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|------|-------------|
| 1/31/07 | Request for Due Process |
|  | Notice of Pre-Hearing Conference (as applicable) |
| 3/14/07 | Notice of Due Process Hearing |
|  | SETS Disposition Form |
|  | Transcripts or audio tapes of hearing |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

(In the Matter of JW   HOD: April 18, 2007)

# INDEX OF NAMES

## In the MATTER OF J■■■■ W■■■■ V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| School Psychologist | |
| Regular Education Teacher | |
| Rock Creek Academy | Ms. Toni Webb  * |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Douglas Tyrka, Esq. |
| School System's Representative | Daniel McCall, Esq. |
| Parent's Educational Advocate | |
| | |
| | |
| | * Testified by telephone |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**ATTENDANCE SHEET**

**STUDENT'S NAME:** ▮▮▮▮▮▮ ▮▮▮▮▮▮

**SCHOOL OF ATTENDANCE:** Stanton E.S.

**D.O.B:** ▮▮▮▮▮▮

**HEARING DATE:** 4/4/07   **ROOM:** A1   **TIME:** 9:00 A.M./P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Daniel McCall | DCPS | Attorney |
| Douglas Tyrka | student | Counsel for Parent |
| Toni Webb | student | K-6 Program Director, Rock Creek Academy |
|  |  |  |
|  |  |  |
|  |  | * testified by Telephone |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

_Coles Ruff_
Impartial Hearing Officer

Revised 10/17/2006

11

## SCREENING RECORD

| | | Kgn | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| tes | | | 11/14/06 | | | | | | | | | | | | |
| eight | | | 51 | | | | | | | | | | | | |
| ight (inches) | | | 50 | | | | | | | | | | | | |
| erage | | | | | | | | | | | | | | | |
| ion | R | 20/ | 20/20 | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ |
| | L | 20/ | 20/20 | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ |
| h glasses | R | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ |
| | L | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ | 20/ |
| liosis | | | | | | | | | | | | | | | |
| ts | | | mh | | | | | | | | | | | | |

r illness _____
rations _____
r Disabilities _____
MENTS _____

DC PUBLIC SCHOOLS
LEGAL SERVICES BRANCH
RECEIVED
2007 APR -14 AM 8 50

## PROGRESS NOTES

| date, activity, and title of person ng progress note. | 11/15/06 — Passed Vision & Hearing Screenings — Abdul Ganyk |
|---|---|
| | Results obtained from School Nurse. Stanton ES. GANIYU Muhammad. |
| | Jerri Johnston |



Office of the General Counsel
9th Floor
825 North Capitol Street, NE
Washington, DC 20002
(202) 442-5000
fax (202) 442-5098

## **FACSIMILE**

To: _D Tyrka_

Co: _____

From: _D McCall_

Date: _4/4/07_

Fax No.: _____

Tele. No.: _____

Tele. No.: (202) 442-5000

No. Pages Including Cover Sheet _2_

Comments: _Copy of Vision & Hearing Screening_
_for J█████ W██████_

_____

_____

_____

---

### Confidentiality Notice
The information contained in this facsimile is transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.

13

04/02/2006  05:16    2022654264              TYRKA & ASSOCIATES                        PAGE  02/03

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### STATE ENFORCEMENT AND INVESTIGATION DIVISION



| | )  |  |
|---|---|---|
| In re J██████ W███████, | ) | Coles B. Ruff, Esq. |
| Special Education Student. | ) | Impartial Hearing Officer |
| | ) | |

## PETITIONER'S MOTION TO STRIKE THE
## RESPONDENT'S MARCH 30, 2007 MOTION TO DISMISS

The Petitioner filed her due process complaint in this matter on January 30, 2007.

A hearing is scheduled in this matter for April 4, 2007.

On March 30, 2007, after the 5-day deadline for disclosing witnesses and

evidence had passed, DCPS filed a Motion to Dismiss. DCPS did not move for

permission to file the Motion late, ask Petitioner's counsel for consent to the late filing,

or offer any cause for the late filing.

The Motion is untimely, barred by the DCPS standard operating procedures.

Section 401 of the DCPS Special Education Student Hearing Office Due Process

Hearing Standard Operating Procedures provides:

> all motions must be filed no later than the 5-day deadline for disclosing evidence
> and witnesses. Any motion filed after that date shall be considered untimely and
> may be denied at the discretion of the Hearing Officer without further
> consideration. This rule does not limit the Hearing Officer's discretion to grant a
> motion filed after the 5-day disclosure deadline upon a showing of good cause by
> the party for the late filing.

Hearing Officers consistently strike dispositive motions, for example motions for default,

for failure to comply with Section 401.

DCPS is undoubtedly out of compliance with the clear requirements of Section

401, and has made no showing of cause, good or otherwise, for its late filing.

1

14

Accordingly, the Hearing Officer should strike DCPS' Motion to Dismiss from the record.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, I sent a copy of the foregoing by facsimile to Counsel for the Respondent.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Hearing Officer Coles. R. Ruff ~ SHO
                  Daniel McCall ~ OGC

*Fax Number:*

*From:*           Douglas Tyrka

*Regarding:*      J███ W████

*# of pages:*     ~~10~~ 3

*Notes:*          Petitioner's Motion to Strike the Respondent's
                  Motion to Dismiss

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

16

*Mr. Ruff*

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Program 2007 MAR 30 PH 12: 33

J████ W██████, DOB: ████

DC PUBLIC
SCHOOL SYSTEM

Petitioner,

v.

District of Columbia Public Schools

*to Complaint*

Respondent.

**DCPS' RESPONSE AND SUPPLEMENTAL MOTION TO DISMISS
PETITIONER'S
ADMINISTRATIVE DUE PROCESS COMPLAINT**

DCPS, by and through the undersigned representative, hereby files

this Supplemental Motion to Dismiss the Petitioner's Administrative Due

Process Complaint Notice ("Complaint") filed on January 30, 2007, on

behalf of the parent, pursuant to the Individual's with Disabilities Education

Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1400.  Specifically,

DCPS asserts the following:

I.

**A.  The Parent Refused to Provide Consent for the Provision of Special
Education and Related Services**

17

On March 12, 2007, an IEP meeting was held to review the initial full individual evaluation for this student. The team determined that this student is eligible to receive special education as a student with mental retardation. In addition, the team determined that the student has an educational need for special education and related services. However, when the parent was asked to provide the required consent for the initial provision of special education and related services, she refused to do so.[1] See 34 C.F.R. Sec. 300.300(b) (1-4).

DCPS "must obtain informed consent from the parent for for the initial provision of special education and related services to the child". 300.300(b)(1). Moreover, the IDEIA and the Regulations are clear state that:

> *If the parent of the child refuses to consent to the initial provision of special education and related services, or the parent fails to respond to a request to provide consent for the initial provision of special education and related services, the public agency –*
>
> *(i) Will not be considered to be in violation of the requirement to make available FAPE to the child for the failure to provide the child with the special education and related services for which the public agency requests consent; and*

---

[1] See copy of DCPS Exhibit 1-12 attached herewith. The 2/12/2007 IEP page, and Notice of eligibility and Request for Consent attached as DCPS 8 & 9. (In DCPS Consent is obtained by the check and signature of the parent at the bottom of the first page of the 2/12/07 IEP document, along with the page 5 of 5 of notes which is the eligibility notice).

> *(ii) Is not required to convene an IEP Team meeting or develop an IEP under (Sec.) 300.320 and 300.324 for the child for the special education and related services for which the public agency requests such consent.*

34 C.F.R. Sec. 300.300(b)(4).  In the case at hand, the notes from 2/12/07 indicate that once the eligibility decision was made, the "parent and advocate (did) not agree with the goals, hours and placement of the IEP, therefore will not sign." *See* exhibit A.   Moreover, the parent was participating by telephone and the advocate failed/refused to check the consent form at the bottom of page one, and refused to sign the document. The Statute is clear that DCPS must have informed consent which means:

> *(b) The parent understands and agrees in writing to the carrying out of the activity for which his or her consent is sought...*

34 C.F.R. Sec. 300.9(b).   Furthermore, in this case the IEP document indicates that the parent wants services, but she refused to sign and provide the required written consent.   However, the parent can't unilaterally determine not to provide written consent and continue to proceed with a demand for an IEP.  This is especially troublesome since DCPS attempted to resolve this matter with the parent at a resolution session and the parent continued to refused the LEA's offer to reconvene the IEP process. Therefore, informed written consent is required, the parent has not provided

it in this case, and there is no exception to the rule that DCPS can't provide any special education services until consent is obtained.    The LEA is continuing to try to contact the parent to obtain the required written consent so that it may proceed with an IEP and placement for this student.

WHEREFORE PREMISES CONSIDERED, the Respondent moves this hearing officer to dismiss the complaint with prejudice.

Respectfully Submitted,

/s/ Daniel L. McCall

Daniel L. McCall
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone # 202-442-5564
Fax # 202-442-5097/8

## CERTIFICATE OF SERVICE

I, Daniel L. McCall, Esq., hereby certify that a copy of DCPS' Motion to Dismiss was served on Friday, March 30, 2007, on the attorney below, via facsimile as follows:

Doug Tyrka
(202) 265-4264

/s/ Daniel L. McCall

Daniel L. McCall

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### CONFIRMATION OF MEETING NOTICE

Date: **02/09/2007**

**Douglas Tyrka / Ms. Williams**
Parent / Guardian Name

RE: **J▆▆▆ W▆▆▆▆**

SCHOOL: **Stanton ES**

Street #   Street          Quad   Apt. No.

ID NO. ▆▆▆▆▆▆▆▆▆

City                State   Zip Code

DOB: ▆▆▆▆▆▆▆

Dear **Ms. Williams**

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. Your child's meeting is scheduled as follows:

Date: **02/12/2007**  Time: **1:00**  Place/Location: **Stanton ES**

**After Resolution Mtg**

The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Invited participants are listed under MDT members.

**\*The purpose of this meeting is to:**

- [ ] \*\*develop/review IEP(including consideration of extended school year (ESY) services
- [ ] \*\*review evaluation or reevaluation information
- [ ] develop the student evaluation plan (SEP)
- [ ] discuss documented levels of service
- [ ] \*\*review records to support the completion of services as follows:

- [ ] discuss placement
- [ ] determine manifestation
- [x] discuss eligibility

- [ ] \*\*discuss CompEd
- [ ] \*consider transition services needs
- [ ] discuss quarterly review
- [ ] behavior plan review

- [ ] Graduated   [ ] Completed Services   [ ] Aged Out   [ ] Transferred Out of District   [ ] Dropped Out
- [ ] Other: _____

**\*\*Placement will be discussed.**

MDT Members:
- [x] Principal or Designee
- [x] Parent
- [x] LEA Representative
- [ ] Student

- [x] General Education Teacher
- [x] Special Education Teacher
- [ ] Speech and Language
- [ ] Social Worker

- [x] Psychologist
- [ ] Other: _____
  _____
  _____

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate

**Ms. Kelly**          **202 645-7150**

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact _____ at _____ (school telephone number).

Sincerely,

District of Columbia Public Schools          07-02-2001          Division of Special Education          Confirmation of Meeting Notice

DCPS-1

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**Meeting Notice**

Date __02/01/2007__

MDT Referral Date: _____

**Letter of Invitation**     Re: ████████

Dear __Douglas Tyrka/Ms. Williams__

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

Place/Location:
Stanton ES

Please check one date for confirmation:

- [ ] Date: __02/12/2007__   Time: __9:00am__   ; or
- [ ] Date: __02/12/2007__   Time: __11:00am__  ; or
- [x] Date: __02/12/2007__   Time: __1:00pm__

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concern. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

- [x] \*develop/review IEP (including consideration of extended school year (ESY) services
- [x] \*review evaluation or reevaluation information
- [ ] develop the student evaluation plan (SEP)
- [x] discuss documented levels of service
- [ ] \*\*review records to support the completion of services as follows:
- [x] discuss placement
- [ ] determine manifestation
- [x] discuss eligibility
- [ ] \*\*discuss CompEd
- [ ] \*consider transition service needs
- [ ] discuss quarterly review
- [ ] behavior plan review

  - [ ] Graduated   [ ] Completed Services   [ ] Aged Out   [ ] Transferred Out of District   [ ] Dropped out
  - [ ] Other: _____

**\*\*Placement will be discussed.**

MDT Members:
- [x] Principal or Designee
- [x] Parent
- [x] LEA Representative
- [ ] Student
- [x] General Education Teacher
- [x] Special Education Teacher
- [ ] Speech and Language
- [ ] Social Worker
- [ ] Psychologist
- [x] Other: __as needed__
- _____
- _____

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact

__Ms. Kelly__   at   __202-645-7150__   (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate.

\*                                          \*

See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

\*After the third attempt to contact the parent, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).   [ ] Yes   [ ] No

DCPS-2 22

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice

**Letter of Invitation**

Date 02/01/2007

MDT Referral Date: _____

Re: _____ Y___ W_____

Dear ___ Douglas Tyrka/Ms. Williams _____

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

**Please check one date for confirmation:**

Place/Location:

Stanton ES

☐ Date: 02/12/2007   Time: 9:00am ; or

☐ Date: 02/12/2007   Time: 11:00am ; or

☐ Date: 02/12/2007   Time: 1:00pm

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

☒\* \*develop/review IEP (including consideration of extended school year (ESY) services    ☐ \*\*discuss CompEd

☒ \*\*review evaluation or reevaluation information    ☒ discuss placement    ☐ \*consider transition service needs

☐ develop the student evaluation plan (SEP)    ☐ determine manifestation    ☐ discuss quarterly review

☒ discuss documented levels of service    ☒ discuss eligibility    ☐ behavior plan review

☐ \*\*review records to support the completion of services as follows:

☐ Graduated   ☐ Completed Services   ☐ Aged Out   ☐ Transferred Out of District   ☐ Dropped out

☐ Other:

\*\*Placement will be discussed.

MDT Members:   ☒ Principal or Designee    ☒ General Education Teacher    ☐ Psychologist

☒ Parent    ☒ Special Education Teacher    ☒ Other: as needed

☒ LEA Representative    ☐ Speech and Language

☐ Student    ☐ Social Worker

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact

Ms. Kelly _____ at _____ 202-645-7150 _____ (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate

\* _____    \* _____

See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

\*After the third attempt to contact the parent, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).   ☐ Yes   ☐ No

23



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

www.k12.dc.us

Date: February 12, 2007

Parent's Name: Ms. Williams

Parent's Address: _____

_____

Subject: Resolution Session for J████ W████

DOB: ███ - ███ - 2000

Attending School: Stanton ES

### SETTLEMENT AGREEMENT

In lieu of the formal Due Process Hearing in the above-referenced matter, the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent agree to resolve this matter pursuant to the following terms and conditions:

    1. Parent verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

    2. The Parent verifies that the student's date of birth is _____, and that the attending school is _____ and home school is _____.

    3. Parent agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the the student, parent, or their representative as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

*Children First*

DCPS-3    24

4. Parent and DCPS agree to the terms listed below.  Check the box / boxes that applies.

☒ **Eligibility Determination /**

- DCPS agrees to convene an MDT/IEP meeting no later than **02/12/20 7** days of execution of this agreement at which the student's eligibility for special education will be determined and if found eligible, an IEP will be developed and placement will be discussed.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a prior notice of placement within 5 school days if the placement is public and 30 calendar days if the placement is non-public.

☒ **Conduct Evaluations & Hold MDT Meeting**

- DCPS agrees to conduct, within **10 days** school / calendar (*circle one*) days of execution of this agreement, a
psycho-educational evaluation,
a speech/language evaluation,
occupational therapy evaluation,
physical therapy evaluation,
hearing screening,
vision screening,
a social history evaluation
If DCPS fails to complete the evaluation/evaluations within the above stated time frame, the parent can secure an independent psycho-educational evaluation, an independent speech/language evaluation, an independent occupational therapy evaluation, an independent physical therapy evaluation, an independent hearing screening, an independent vision screening,  or an independent social history evaluation (*circle applicable evaluation/ evaluations*)  at the expense of DCPS, consistent with DCPS cost guidelines, not to exceed those specified in the *Superintendent's Directive Number 530.6, dated March 20, 2003.*

- Within 15 school days of the Special Education Coordinator at **(2025 - 4372**) School receiving the last completed evaluation, DCPS will convene an MDT/IEP meeting at which these evaluations will be discussed, an IEP will be developed, and a prior notice is issued if necessary.

☐ **Fund Independent Evaluations**                                       **N/A**

- DCPS agrees to fund the following independent evaluation , a speech/language evaluation, occupational therapy evaluation, physical therapy evaluation, hearing screening, vision screening,  a social history evaluation (*circle applicable evaluation/evaluations*) at the expense of DCPS, consistent with DCPS

*Children First*

25

st 22 07 03:09p    Stanton Elementy School    1 · ·1    ··· · ···    2020-456024    p.7
00t-21-2008  14:54    DCPS GENERAL COUNSEL    2024425097    P. 006

DCPS
Page 2

cost guidelines, not to exceed those specified in the *Superintendent's Directive Number 530.6, dated March 26, 2002.*

- DCPS agree to convene an MDT/IEP meeting within 15 school days of the Special Education Coordinator at _____ School receiving the last completed evaluation. The MDT team will review these evaluations, revise the IEP, if necessary, and discuss placement.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

## Compensatory Education

- DCPS agrees to develop a compensatory education plan.

## TUTORING

- DCPS agrees to provide tutoring to compensate for missed instruction on a one-for-one basis.

## MDT Meeting to Discuss Placement

- DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

## Referral for Residential Placement

- DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

5. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed.

6. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent agree to extend the deadlines or negotiate new timelines, whichever appropriate. Parent will not unreasonably deny any such request for extension/renegotiation.

7. Parent agrees to contact the Director of the Office of Compliance in Special Education when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a complaint alleging DCPS' failure to comply.

*Children First*

26

ar 28 07 03:06p    Stanton Elementary School

OCT-27-2005  14:44    DCPS GENERAL COUNSEL    2024425097    P.006

DCPS
Page 2

cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

- DCPS agree to convene an MDT/IEP meeting within 15 school days of the Special Education Coordinator at _____ School receiving the last completed evaluation.   The MDT team will review these evaluations, revise the IEP, if necessary, and discuss placement.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐ **Compensatory Education**

- DCPS agrees to develop a compensatory education plan.

☐ **TUTORING**

- DCPS agrees to provide tutoring to compensate for missed instruction on a one-for-one basis.

☐ **MDT Meeting to Discuss Placement:**

- DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐ **Referral for Residential Placement**

- DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

   5. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed.

   6. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent agree to extend the deadlines or negotiate new timelines, whichever appropriate.  Parent will not unreasonably deny any such request for extension/renegotiation.

   7. Parent agrees to contact the Director of the Office of Compliance in Special Education when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a complaint alleging DCPS' failure to comply.

*Children First*

27

8. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, and including all claims that the parent now asserts or could have asserted as of the date of this agreement.

9. Both parties agree that they have 3 days to withdraw the settlement agreement. If the parent decides to withdraw the settlement agreement said agreement should be in writing.

Sincerely,

*Brenda S. Kelly, designee*

Principal or designee

Agreed to: _____

Parent _____    Date _____

*Parent participated by telephone 2/12/2007 at 1:30 PM  Brenda Kelly 2/12/2007*

*Children First*

TOTAL P.007

28



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Division of Special Education*
825 North Capitol Street, NE., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
EDWIN M. STANTON ELEMENTARY SCHOOL
2701 NAYLOR ROAD, S.E.
WASHINGTON, D.C. 20020
Brenda Kelly
(SEC)

## Referral Form

**Type of Referral:**

| | | |
|---|---|---|
| —Clinical Evaluation | ☐ Psycho-education Evaluation | ☐ Medical Review ☐ |
| —Clinical Review | ☐ —Neuropsychological Evaluation | ☑ —Audiological Evaluation ☐ |
| —Psychiatric Evaluation | ☐ —Neuropsychological Review | ☐ —Psychiatric Review ☐ |
| ☑ OT/PT Evaluation | ☐ Social History | ☑ Vision |
| —OT/PT Review | ☐ Speech/Language Evaluation | ☑ Hearing |

Referral Date: __02/12/2007__    Date Referral Form Received _____

MDT/IEP Date (projected): __02/23/2007__ Projected Meeting Time: __1:00 PM__

Student Name: J█████ W█████

DOB: ████████      School: Stanton

Address: _____

Parent/Guardian  Ms. Michelle Williams

Telephone: _____      _____
                    (home)                              (work)

Special Education Specialist (SES): Brenda Kelly
SES Supervisor: La Chonda Kinzer
Telephone: 202 645-7150

DCPS Assessments (include dates):
Social History __10/10/2006__   Classroom Observation __2/9/2007__
Psycho educational __10/28/2006__  Speech/Language __11/17/2006__

Reason for Referral: ( Attach all anecdotal records/notes and copy of current
psychological) ___See attachments___
_____
_____

Assigned Provider for Assessment or review: _____
Assignment Date: _____

Assigned Provider for meeting _____

Received By: _____    Date: _____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

| MDT |
|-----|
| SEP |

MEETING DATE: 02/12/2007

MDT REFERRAL DATE:

STUDENT: J_____ W_____ DOB: _____ AGE: 7 GRADE: 1st SCHOOL: Stanton ES

STUDENT IDENTIFICATION NUMBER: _____ TEACHER / HOMEROOM: Ms. Thomas

ADDRESS: _____
Street #    Street Name    Quadrant    Apartment #    City.    State.    Zip Code

PARENT(S)/GUARDIAN: _____ TELEPHONE (H): _____ (W): _____

Summarize Area(s) of Concern:

There are concerns regarding J_____ visual motor skills, handwriting and fine motor functioning. Conversely, questions surrounding his nonverbal intelligence.

Team Recommendations:

The team recommends nonverbal cognitive assessment and an O.T. assessment should be conducted.

### EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☒ Psychological | T. Benn | TBD (nonverbal instrument) | | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☒ Vision Screening | Vielka Scott | | | |
| ☐ Medical | | | | |
| ☐ Educational | | | | |
| ☒ Hearing Screening | Vielka Scott | | | |
| ☒ Other    Other: | OT Toni Reynolds Other: Ms. Lambert | | | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
|---|---|---|---|
| _____ | _____ | | |
| L. T. B | School Psychologist | | |
| Brenda Kelly | SEC | | |

The MDT meeting to discuss the evaluation results is scheduled on _____ at _____ in room: _____

Place completed form in MDT folder

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT - SEP    APPENDIX - A

30

DCPS-S

Mar 28 07 03:08p    Stanton Elemtary School                                     2026453564                    p.11

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
- [ ] Initial Evaluation
- [x] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Other _____

Date _____02/12/2007_____

Student _____ J___ W_____ _____  DOB _____

School _____Stanton ES_____

Current Disability Category _____Mental Retardation_____

Setting ____Combination General Education and Resource Classroom____

Dear _____Ms. Williams_____

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [x] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [x] Your child is eligible or continues to be eligible to receive special education services as a student with _____Mental Retardation_____
- [x] Your child will begin receiving _____Speech and Language_____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
  from _____ to _____
  Your child is no longer eligible and will be exited from the special education program.
  Other: _____

### Description and Explanation of agency action proposed or refused.

The MDT met to review all of the documentation and the following setting was proposed for the student: Combination general education and resource classroom at Stanton Elementary School.

### Description of Other Options Considered and reasons for rejection of each option

Based on the documentation reviewed by the team at the MDT meeting, it was determined that the student could not be educated in the general education setting or the out of general education classroom. Documentation demonstrates that the student can access the general education curriculum in a combination setting / part-time with non-disabled peers.

Other relevant factors to the decision - _____

MDT Members:
- [ ] Principal or Designee
- [x] Parent Via telephone
- [ ] Student
- [ ] Social Worker
- [x] General Education Teacher
- [x] Special Education Teacher
- [x] Speech and Language
- [x] *LEA & Interpreter (*may be one)
- [x] Psychologist
- [x] Other: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or if you have questions regarding the Procedural Safeguards,
please contact _____Ms. Kelly_____ at ____645-7150____ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001

31

DCPS-6

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

✓ PUBLIC   ___DPCS CHARTER   ___ LEA CHARTER   ___ NONPUBLIC   ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____    Meeting Held: 2/12/2007

Student: ▓▓▓▓ W ▓▓▓▓   DOB ▓▓▓▓ School: Stanton

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Rosa G. Thomas | Rosa H. Thomas | Teacher |
| Tara M. Benn, M.Ed. | Tara M. Benn | School Psychologist |
| Rodney T Campbell | Rodney T Campbell | Comp. Ed. Awards |
| Ingrid Liddell-Granious | Ingrid Liddell Granious | Speech Pathologist |
| Annette Dodd | Annette Dodd | Social Worker |
| Ms. Michelle Williams | Participated by telephone | |
| Suruchi Lall | Suruchi Lall | Sp. Ed Teacher |
| Brenda Kelly | Brenda Kelly | SEC |
| | | |
| | | |

_____ Resolved         ✓ Unresolved

Meeting convened, all parties in attendance introduced
themselves. Parent via telephone conference. Her
advocate as a result of an HOD was present
during the Dispute Resolution Meeting. The MDT
agreed that a private placement would be considered
discussed during the placement meeting after
eligibility / IEP, if needed. The MDT agrees that
J▓▓▓▓ will be referred for a hearing and visual
exam and an audiological evaluation within
the next 2 business days, which shall be
completed by DCPS. However a vision & hearing
screening was completed by DCPS.

DCPS-7   32

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__PUBLIC     __DPCS CHARTER     __LEA CHARTER     __NONPUBLIC     __PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____     Meeting Held: 2/12/2007

Student: J███ W███     School: Stant

DCPS agrees to re-convene to share hearing, vision and audiological evaluations within 10 business days, and necessary related services while to added to the IEP as needed. Parent shares through telephone conference that she disagrees with the resolution of this meeting.

33

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last _____ W_____    First _____ J_____    MI

Student ID _____    Soc.Sec.No. _____    Age: _____    Grade    1st

Gender ☒ M ☐ F    Date of Birth _____    Ethnic Group    African American

Address  3340  22nd Street  H. Apt. 6  S. E.
House No.    Street Name    Quadrant  Apartment #

Washington    DC    20020
City    State    Zip Code

☒ Non-attending

Attending School    Stanton ES    Home School    Stanton ES

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS/

Parent    Ms. Willaims

Address of (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad.    Apt. No.    City    State    Zip Code
Telephone: Home _____    Work

### II. CURRENT INFORMATION

Date of IEP Meeting:  02/12/2007
Date of Last IEP Meeting:  N/A
Date of Most Recent Eligibility Decision: 02/12/2007

Purpose of IEP Conference:
☒ Initial IEP    ☐ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | Native Language |
| Parent | English | English | English | Native Language |
| Home | English | English | English | Native Language |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral _____
Rdg./ Written _____
Instrument: _____
Date: _____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SPEd | Total | FREQUENCY Hr. Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0 | 20 | 20 | Hr. | Week | Special Education Teacher | 02/13/2007 | 10 | monthly |
| Speech and Language | | 1 | 1 | Hr. | Week | Speech Therapist | 02/13/2007 | 10 | monthly |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 21 | 21 | Hours Per Week | | | | | |

## V. Disability(ies)

Mental Retardation    ☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☒ 21-60%    ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Brenda S. Kelly    Brenda Kelly    SEC
Michelle Williams    VIA tele conference
Suruchi Lall    Suruchi Lall  Sp. Ed. Teacher
Annette Davis    Annette Davis  Social Worker
Tara J. Ben    Tara J. Bens  School Psychologist
Edward L. Gramials    Edward L. Gramials  Speech Pathologist

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Parent does not agree with IEP.
Wants services implemented

District of Columbia Public Schools    07-02-2007    Division of Special Education    Appendix - A    IEP Page 1 of 4

34

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

$1 of 5$

| MDT |

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**
Eligibility / IEP

MDT REFERRAL DATE: _____

MEETING DATE: 02/12/2007

STUDENT: _____ J███ W███ _____          SCHOOL: _____ Stanton ES _____

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Brenda Kelly | Brenda Kelly | SEC |
| Sucuchi Lall | Sucuchi Lall | Special Education Teacher |
| Ingrid L. Gaspriors | Ingrid Gaspriors | Speech Pathologist |
| Rodney T. Campfield | Rodey Campfield | Spec Comp. Ed Advoate |
| Tara M. Benn, M.Ed. | Tara M. Benn | School Psychologist |
| Rosa G. Thomas | Rosa G Thomas | Teacher |
| Michelle Williams | via telephone | Parent |

The meeting was convened and introductions were made. A copy of the Procedural Manual was ~~given~~ shared with verbally to the parent with a brief explanation and a receipt for the Manual was signed. The purpose of the meeting was stated: MDT met to review all of the documentation and determined J███'s eligibility for special education.

Parent reports: J███ is not progressing. His teacher said he is not progressing. He is not on level. He is unavailable to keep up with his peers. J███ is a follower. Ms. Thomas, J███'s teacher stated that J███ is working on readiness level. The MDT agrees that the student should have an OT evaluation.

THE PARENT ☐ IS PRESENT ☒ IS NOT PRESENT AT THE MEETING   Via telephone conference

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT _____ J███ W███ _____

☒ IS ELIGIBLE FOR SPECIAL EDUCATION

☐ IS NOT ELIGIBLE FOR SPECIAL EDUCATION

DCPS-9

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

2 of 5

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: Eligibility/ IEP

STUDENT ████████ SCHOOL Stanton ES    DATE 02/12/2007

General Education Teacher Reports:

Weakness: does not recognize color words
• does not recognize order of alphabets
• does not recognize sound of alphabets
• does not blend simple three letter words
• does not understand connection that alphabets
to letters, letters to sounds / sounds to words.
• does not recognize numbers 9-20
• does not recognize vocabulary words PP list
• uses reversals

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

3 of 5

MEETING TYPE: _____

STUDENT ▓▓▓▓▓▓   SCHOOL Stanton E.S.   DATE 2/12/2007

**Social Worker Reports:**

The social worker shared information from the "Social History" dated 12/10/2006. The Social History was completed by Sandi Maria Cohn, PhD a Licensed Psychologist. Student has a history of Asthma. He was a normal delivery full-term. He reached his developmental milestones with little delays.

His parents shared in the Social History that their is concerns regarding his speech and language delays. His parent shared during the meeting (via telephone) that the social history was completed by telephone with Nicole Sampson, PhD Licensed Psychologist. The Social History has both signatures with Maria Cohn, PhD & Nicole Sampson, PhD

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, DC**

4 of 5

MDT REFERRAL DATE _____

**MULTIDISCIPLINARY TEAM (MDT)**
**CONTINUATION MEETING NOTES**
MEETING TYPE: _____

STUDENT _____ J█ W█ _____   SCHOOL _____ Stanton ES _____   DATE _____ 02/12/2007 _____

Speech and Language: J█████ was administered a complete speech and language evaluation on 11/17/2006. Formal testing revealed that █████ demonstrates a severe delay in his overall receptive and expressive language abilities which is further supported by a moderate delay in receptive and expressive single word vocabulary skills. J█████ will receive 1 hr. weekly to improve speech intelligibility, vocabulary, receptive and expressive language skills.

Case 1:07-cv-01261-ESH    Document 12-3    Filed 10/31/2007    Page 39 of 39

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, DC**

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: *Eligibility/IEP*

5 of 5

STUDENT ▮▮▮▮▮ W▮▮▮▮   SCHOOL *Stanton ES*   DATE 02/12/2007

*Summary & Recommendations:*

After reviewing all of the documentation, the MDT determined that the student is eligible for special education as *mental retardation (MR)*

Ms. ▮▮▮ *notes* ▮▮▮ *appears to meet the criterion for identifying Mental Retardation outlined in IDEIA 2004.*

Specialized instruction is required in the following areas: Reading, Mathematics and Written Expression. *20 hours:*

Related services are required in the following areas: Speech Therapy (1 hour per week).

The following accommodations/modifications need to be made: extended time, preferential seating, repeated directions, simplified directions test/directions read aloud to student and oral responses.

Based upon information presented the student does not require Extended School Year services nor is the student warranted compensatory education services, *at this time.*

Placement Discussion: Based upon the information reviewed by the MDT, the MDT determined that the student could be educated in a combination setting at the neighborhood school (Stanton). *The MDT will meet*

*Advocate and Parent indicates that student's disability Classification should be multiple disability (Mental Retardation and Speech and Language Impaired, however DCPS indicates that student's classification is Mental Retardation (MR), ~~ruling out multiple disabilities~~ as his ~~disability classification~~. Parent and Advocate do not agree with the goals, hours and placement of the IEP, ▮▮▮ will not sign ▮▮▮. Advocate want services*

**HP Officejet 6210**
Personal Printer/Fax/Copier/Scanner

**Log for**
Stanton Elemtary School
2026453564
Jan 31 2007 10:10AM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jan 31 | 10:07AM | Received | 2022654264 | 2:41 | 8 | OK |

*Received Speech/Language 1/31/2007

DCPS-10 40

## Stanton Elementary School

## 2701 Naylor Road S.E.
## Washington, D.C. 20020

**February 1, 2007**

**Via Facsimile**
Tyrka & Associates, LLC
1726 Connecticut Ave, NW
Suite 400
Washington, DC 20009

      Re: 

Dear Mr. Tyrka:

      I am sending you a copy of a facsimile dated January 31, 2007, which included the Independent Speech & Language Evaluation. Ms. Kelly, Special Education of Stanton ES, telephoned Ms. Tama Sterling, the Independent Speech and Language Examiner, on December 19, 2006 to inquire about the report. Ms. Sterling stated that the evaluation had been sent to your office. Ms. Kelly immediately (December 19, 2006) telephoned your office. The receptionist stated that you were also waiting for the report.
      Upon receipt of the Due Process Complaint Notice on January 31, 2007 you stated that DCPS received the Speech and Language Evaluation on December 20, 2006. Ms. Kelly telephoned your office for the fax confirmation because no such fax was received from your office on December 20, 2006. Laura Fogliano faxed a copy of the Speech and Language Evaluation and noted that the previous fax was sent to the wrong number. Thus, the MDT was unable to convene on January 24, 2007.

This letter serves as a request for you and your client to meet to review the evaluations and discuss eligibility. The proposed meeting dates are:
 February 12, 2007  9:00 am
February 12, 2007  11:00 am
February 12, 2007  1:00 pm

If you have and questions or concerns, please feel free to contact me at 645-3255

Sincerely,

*Brenda Kelly*
Brenda Kelly
Norman Brooks

CC:   Rashida Wilson

41

TYPS-11

December 19, 2006

Called the law office of J███████V███████ to check to see if they had received
the evaluation for Speech and Language.  The law office is also waiting on
the evaluations.

Brenda Kelly

DCPS-12        42



Office of the General Counsel
9th Floor
825 North Capitol St., NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

# FACSIMILE

**DATE**:  March 30, 2007

**TO**: Douglas Tykra                                    **FAX**:    (202) 265-4264

**CO**: _____        **TEL**:    _____

**FROM**:  Daniel L. McCall, Esq.
                 Attorney Advisor, 202-442-5564

No. Pages, Including Cover Sheet:     _27_

**RE**: *J██████ W█████████ v. DCPS*

**COMMENTS**:

Response and Supplemental Motion to Dismiss

+-----------------------------------------------------------------------------+
|                          ***CONFIDENTIALITY NOTICE***                       |
|                                                                             |
|    *The information contained in this telefacsimile has been transmitted by an attorney.  It is* |
| *privileged and confidential, intended only for the use of the individual or entity named above.  If* |
|  *the reader of this message is not the intended recipient, you are hereby notified that any* |
|     *dissemination, distribution or copy of this communication is strictly prohibited.  If this* |
|  *communication has been received in error, please notify us immediately by telephone, and* |
|    *return the original message to us at the above address via first class prepaid US postage.* |
|                              *Thank you.*                                    |
+-----------------------------------------------------------------------------+

43

**Stanton Elementary School**

**2701 Naylor Road S.E.**
**Washington, D.C. 20020**

**March 29, 2007**

<u>Via Facsimile</u>
Tyrka & Associates, LLC
1726 Connecticut Ave, NW
Suite 400
Washington, DC  20009

Re:  

Dear Mr. Tyrka:

On February 12, 2007, DCPS held a resolution session/IEP meting on behalf of your client named above. Independent Evaluations were reviewed an an IEP was developed. The parent participated via telephone during the meeting, us no written consent for further evaluations was provided nor was IEP signed.  In der to commence testing and implement services please have your client complete the ms and provide them to the school.

Thank you in advance for your prompt attention to this matter. If youre and questions or concerns please feel free to contact me at (202) 645-3255.

Sincerely,

Brenda Kelly

Brenda Kelly

CC:    Michelle Williams (Parent)
       Ann Williams (OGC)
       Norman Brooks (Principal)

DCB—  -13

44

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

2007 MAR 30 PM 12: 32

 W_____, DOB: _____

DC PUBLIC
SCHOOL SYSTEM

Petitioner,

v.

District of Columbia Public Schools

Respondent.


# DCPS' MOTION TO DISMISS PETITIONER'S
## ADMINISTRATIVE DUE PROCESS COMPLAINT


DCPS, by and through the undersigned representative, hereby files this Motion to

Dismiss the Petitioner's Administrative Due Process Complaint Notice ("Complaint")

filed on January 30, 2007, on behalf of the parent, pursuant to the Individual's with

Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1400.

Specifically, DCPS asserts the following:

I.

### A.  The Hearing Officer Does Not Have Subject Matter Jurisdiction
### Pursuant to the Issues Specified In The Pleadings


Pursuant to the information in the complaint filed in this matter, the Petitioner seeks to

enforce the written decision of a special education hearing officer issued on October 2, 2006, i.e.

whether DCPS failed to comply with the prior written decision of a special education hearing

officer.   Parent's claims fail to raise any of the issues specified in 34 CFR §300.507(a)(1) upon

45

which a due process complaint may be filed.[1]   Furthermore, the enforcement of a special

education hearing officer's order is not a matter to be placed before another administrative

hearing officer. Once a written decision is issued, it is a final decision.  The decision on FAPE

has already been made, and compliance with that order is not within the jurisdiction of a

subsequent special education hearing officer, as it is not an IDEIA issue pursuant to recent federal

court decisions:

> "While 'the IDEA permits *aggrieved* parties to seek review of an
> administrative hearing panel's decision,' *Blackmon v. Springfield
> R-XII Sch. Dist., 198 F.3d 648, 654 (8th Cir. 1999)* (emphasis
> added), it 'does not contemplate an action to *enforce* an
> administrative decision,' *Moubry v. Independent Sch. Dist. No.
> 696 (Ely), 951 F. Supp. 867, 885 (D. Minn. 1996).* [*7]  The
> [Plaintiffs] may not, therefore, enforce the hearing officer's
> decision through the IDEA.  They may, however, proceed under
> *42 U.S.C. §1983.* [HN4] Under *§1983*, a person who deprives
> another 'to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws shall be liable'
> to the injured party. *42 U.S.C. §1983.* [HN5] The right to have a
> hearing officer's decision carried out is a right 'secured by the
> laws of the United States.' *Robinson v. Pinderhughes, 810 F.2d
> 1270, 1275 (4th Cir. 1987)*; cf. *Maine v. Thiboutot, 448 U.S. 1,
> 4, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980).* Accordingly, where
> a party does not 'dispute the merits of the order itself, [but]
> rather . . . seek[s] to enforce it,' that claim is 'appropriately
> addressed in a *§1983* action.' *Reid v. Board of Educ., 765 F.
> Supp. 965 (N.D. Ill. 1991)*."

*Eric David Olson, et al., Plaintiffs, v. Robbinsdale Area Schools, et al*, 2004 U.S. Dist. LEXIS

9858, *6-*8 (D. Minn. 2004).  The same result was reached in *Grace B. v. Lexington School

Committee*, where the Massachusetts District Court held that it lacked jurisdiction over Plaintiff's

claims under the IDEA.  Stating that 20 U.S.C. §1415(e)(2) provides that "any party aggrieved by

the findings and decision made under subsection (b) of this section" has a right to bring a civil

action "with respect to the complaint presented pursuant to this section" in any State Court of

---

[1] *300.507(a)(1)...A parent or a public agency may file a due process complaint on any of the matters
described in 300.503(a)(1) and (2)[relating to the identification, evaluation or educational placement of a
child with a disability or the provision of FAPE to the child].*

46

competent jurisdiction or in a U.S. district court without regard to the amount in controversy, the court noted that :

> "As [Plaintiff] and her mother prevailed before the Hearing Officer, they are not aggrieved parties under the Act. Consequently, §1415(e)(2) does not provide them access to either the state or federal courts. *See Robinson v. Pinderhughes, 810 F.2d 1270, 1275 (4th Cir. 1987).*
>
> Although this court lacks jurisdiction under the Act, it does have jurisdiction [**5] under *42 U.S.C. §1983* to enforce the Hearing Officer's Order. *Id. at 1272-75.*"

*Grace B. v. Lexington Sch. Comm.,* 762 F. Supp. 416, 418 (D. Mass. 1991).

Similarly, the Fourth Circuit Court of Appeals reviewed an analogous case and determined that the IDEIA does in fact provide jurisdiction to state and federal courts to hear §1983 claims brought to enforce a hearing officer's determination. *Robinson v. Pinderhughes,* 810 F.2d 1270, 1274-75 (4th Cir. 1987) (While the [Education of the Handicapped Act] is available to have a child's substantive rights established, it is not available to have them enforced, and therefore, plaintiffs are permitted to pursue §1983 claims in order "to have the substantive decision in their favor carried out."). In *Pinderhughes,* the plaintiffs sued the Baltimore City Public Schools and the Superintendent for a denial of a free appropriate public education (FAPE) under the *Education of the Handicapped Act* (EHA) 20 U.S.C. § 1400 et seq, and *Md. Educ. Code Ann* § 8-401, et seq, when "the city school system failed to implement a favorable decision by the local hearing officer within the time limits set". *Pinderhughes,* 810 F.2d at 1271.

In conducting its analysis, the *Pinderhughes* court first examined the language of the EHA and stated "the federal statute provides that any party aggrieved by the findings and decision of a local hearing officer may appeal to the state educational agency." *Id.* at 1272.[2] The court then noted that if the state educational agency failed to enforce the HOD, the plaintiffs

---

[2] 20 U.S.C. § 1415(a) requires that participating States and their educational units maintain and establish certain procedural safeguards. Among them, section (b)(2) provides for an "impartial due process hearing" for complaints with respect to the educational placement of a child. The due process hearing may be either by a state agency or by a local or intermediate agency as determined by state law. If the hearing is by a local agency, the aggrieved party may take an appeal to the state agency under subsection (c).

3

47

could pursue a remedy in district court for enforcement -- at no time did the court suggest or imply that it was appropriate for plaintiffs to file another due process complaint in order to secure enforcement of the order. *Id.* Additionally, the court established that "a final administrative decision" was reached when the local hearing officer made his determination and stated that "when the city did not appeal the local decision, it became the final administrative decision of the State." *Id.* The court subsequently held that "the plaintiffs had neither the responsibility nor the right to appeal the favorable decision by the local hearing officer since they were not aggrieved by his decision."[3] *Id.* Therefore, it stands to reason that because the plaintiffs had received a final administrative decision and had no right to appeal that decision because they were not aggrieved parties under the Act, their main vehicle for enforcement of the HOD would be to file a complaint in court to enforce the hearing officer's decision, not to file another due process claim seeking enforcement of the prior HOD. As such, the Fourth Circuit established that special education hearing officers do not have jurisdiction over claims seeking to enforce prior HODs.

Several United States District Courts have also examined this issue and systematically concluded that enforcement of a hearing officer's determination under the IDEA is not provided for in the statute, so enforcement must therefore be sought either by an appeal to the state compliance agency or through an action under 42 U.S.C. §1983. *Olson v. Robbinsdale Area Schs*, 2004 U.S. Dist. LEXIS 9858 (D. Minn. 2004). In *Olson*, the United States District Court for the District of Minnesota addressed the issue of prevailing parties seeking enforcement of a hearing officer's determination and reached a similar conclusion as its sister courts. The *Olson* plaintiffs sued the school system for a preliminary injunction and enforcement of a hearing officer's decision to allow a student with a disability to graduate on time under IDEA and 42

---

[3] "In our case the Education of the Handicapped Act insures benefits to handicapped children and requires participating States to set up an elaborate administrative procedure for deciding complaints. The federal statute specifically provides for the finality of administrative orders. It further provides for access to state and federal courts for review of adverse administrative order. But the statute does not contain any provision for enforcing final administrative orders. Access to the courts is provided only to review adverse administrative orders, i.e. to the party aggrieved." *Id.* at 1273.

U.S.C. § 1983. *Olson v. Robbinsdale Area Schs*, 2004 U.S. Dist. LEXIS 9858 (D. Minn. 2004). In examining the plaintiff's motion for injunctive relief, the court referenced an opinion from the Eighth Circuit Court of Appeals which stated that "while the IDEA permits aggrieved parties to seek review of an administrative hearing panel's decision, it does not contemplate an action to enforce an administrative decision." *Olson*, 2004 U.S. Dist. LEXIS 9858 at *6-*7. The court then explained that rather than attempting to enforce the HOD through another administrative hearing, plaintiffs could instead pursue a §1983 claim to compel the school district's compliance with the order. *Id. at* *8.

The United States District Court for the District of Massachusetts also ruled similarly regarding enforcement of a hearing officer's determination. *Grace B. v. Lexington Sch. Comm.*, 762 F. Supp 416, 418 (D. Mass 1991). In *Grace B. v. Lexington School Committee*, the District Court reviewed the enforceability of a HOD which had ordered the school system to secure placement "and assume financial responsibility for tuition and transportation costs". *Lexington School Committee*, 762 F. Supp at 417. In assessing its jurisdiction, the District Court cited the Fourth Circuit's decision in *Robinson v. Pinderhughes* in determining that it did not have jurisdiction under the Individuals with Disabilities Education Act. *Lexington School Committee*, 762 F. Supp at 418.[4] (Where plaintiff and her mother prevailed before the Hearing Officer, they were not aggrieved parties under IDEA and therefore the Act did not provide them access to state or federal courts; however, they could pursue an action under 42 U.S.C. §1983 to enforce the HOD)

The District Court noted that an amendment to IDEA supported the notion that plaintiffs could seek enforcement of a hearing officer's determination in court: The amendment expressly stated that the Act's provisions shall not be construed "to restrict or limit the rights, procedures,

---

[4] "As Jennifer and her mother prevailed before the Hearing Officer, they are not aggrieved parties under the Act. Consequently, § 1415(e)(2) does not provide them access to either the state or federal courts." Grace B. v. Lexington School Committee, 762 F. Supp at 416.

and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [20 U.S.C. §790 et seq.], or other federal statutes protecting the rights of handicapped children and youth." *Id.* at 419. In further support of its holding, the court referenced an Eighth Circuit decision which stated that Congress had amended the Act in 1986 "to specifically state that the [Act] is not the exclusive avenue through which parents may enforce rights of their handicapped children." *Id.*, citing *Digre v. Roseville Sch. Indep. Dist.*, 841 F.2d 245, 249 (8th Cir. 1988). Further, since the IDEIA does not provide for concurrent jurisdiction between the federal courts and the administrative forum in a special education matter, where the U.S. District Courts have determined that jurisdiction for enforcement of a HOD lies in the district courts in an action under 42 U.S.C. §1983, the hearing officer has no jurisdiction in the matter, and it should therefore be dismissed.

In *Wyner v. Manhattan Beach Unified School Disctrict*, the 9th Circuit reached the same conclusion as both the Fourth and Eighth Circuits when a parent sought to enforce a HOD by filing another due process complaint and placing the matter before a hearing officer. The U.S. District Court for the Central District of California ruled in favor of the LEA, and on appeal, the 9th Circuit affirmed the decision of the District Court:

> "The SEHO Hearing Officer and the district court both were correct to find that a subsequent due process hearing was not available to address the School District's alleged noncompliance with the settlement agreement and SEHO order in a prior due process hearing."

*Wyner v. Manhattan Beach Unified Sch. Dist.*; 223 F.3d 1026 (9th Cir. 2000). In support of its ruling that hearing officers lacked jurisdiction over HOD enforcement claims, the Ninth Circuit listed only three situations in which a parent has the right to bring a due process claim under IDEA in California:

- When there is a proposal to initiate or change the identification, evaluation, or placement of the child or the provision of FAPE; or

50

- When there is a refusal to initiate or change the identification, evaluation, or placement of the child or the provision of FAPE; or
- When the parent refuses to consent to the assessment of a child.

*Wyner*, 223 F.3d 1026 at 1028-29. The Ninth Circuit did not include claims seeking enforcement of prior hearing officer determinations as permissible bases for the filing of due process claims under IDEA, and as such, it can be inferred that the court believed that such claims would not be within the jurisdiction of a special education hearing officer.

In summary, pursuant to the IDEIA, the U.S. Court of Appeals for the 4th Circuit, the 8th Circuit, the 9th Circuit, and applicable District Court decisions, special education officers do not have jurisdiction to hear claims seeking to enforce prior settlements and hearing officers' determinations. The Petitioner, in asserting that hearing officers do in fact have jurisdiction over proceedings to enforce a HOD, misinterprets the applicable law. As such, rather than filing another due process complaint, the Petitioner has three options to enforce the HOD in this case – he can:(1) file a complaint with the office of compliance, and/or (2) file a Preliminary Injunction through the *Blackman/Jones* process, and/or (3) file a complaint in the U.S. District Court pursuant to 42 U.S.C. sec. 1983.[5]

### B. The Applicable Law in the District of Columbia Does Not Support Jurisdiction for the Hearing Officer

In the case at bar, the response and objections filed by the Petitioners' Bar, and the prehearing orders entered in other cases by the Chief Hearing Officer, rely upon two legal theories: 1) The case of *Cox et al., v. Jenkins, et al.*, 878 F.2d 414 (D.C. Cir. 1989), and/or 2) The *Blackman/Jones Consent Decree* of June 30, 2006. Petitioner's reliance upon the two legal authorities above is misplaced, and the Petitioners' Bar, and the Chief Hearing Officer, have not cited any controlling authority which indicates that a special education due process hearing officer has jurisdiction to consider an issue of non-compliance of an HOD.

---

[5] In this case, the parent/petitioner has the following avenues to seek relief: 1) file a complaint with the State Complaint Office, 2) file a Preliminary Injunction through the Blackman/Jones process or 3) file a §1983 claim in the U.S. District Court for the District of Columbia.

i.

### Cox v. Jenkins is Inapplicable to Petitioner's Claims

The primary case which Petitioner relies upon in support of the response to the motion to dismiss is the case of *Cox et al., v. Jenkins, et al.*, 878 F.2d 414 (D.C. Cir. 1989). The parents in *Cox* requested a due process hearing in October 1984 to complain about the proposed placement of their daughter, Anika, at the Janney Learning Center. *See id* at 415. The Hearing Officer deferred any decision on a proper placement for their daughter, and on January 18, 1985, DCPS again recommended placing Anika at Janney. *See id.* The parents disagreed with DCPS' recommendation and requested a second due process hearing. *See id.* On March 25, 1985, the Hearing Officer entered his written decision on the second hearing and determined that neither the Janney placement nor the Lab School placement which the parents sought was appropriate for Anika. *Id at* 416. The Hearing Officer then set a deadline of April 22, 1985, for DCPS to issue another notice of placement.

In compliance with the second HOD, DCPS issued a new placement notice which the parents again disagreed with, and as a result, they requested a third due process hearing. *Id at* 417. On June 14, 1985, the Hearing Officer entered his written decision on the third hearing and found that the Lab School was an appropriate placement for Anika for the 1984-1985 school year. The Hearing Officer also confirmed in his decision that DCPS could propose an alternative placement for the 1985-86 school year, and subsequently included some recommendations (which were not a part of his order) in the decision for DCPS to consider when making a new placement determination. On August 4, 1985, DCPS issued a new notice of placement for Anika to attend the Prospect School for the 1985-86 school year. In this placement notice, DCPS identified specific Hearing Officer's recommendations which it followed in determining the appropriate placement for Anika. *See id* at 417. The parents disagreed with the proposed placement and requested a fourth due process hearing. However, prior to the hearing, the parents also filed a

52

Complaint in the U.S. District Court.  After initially ruling in favor of DCPS, the trial court reversed itself and found in favor of the Coxes.  *Cox v. McKenzie, Civ. A. No. 85-2860, 1988 W.L. 53426* (D.D.C. May 13, 1988).  The court stated that DCPS had failed to comply with the Hearing Officer's determination, and that it would have been futile for the parents to continue with the hearing process.  DCPS appealed the ruling.

On appeal, the D.C. Circuit indicated that the "...controlling point of law here is that, absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the EHA before seeking judicial review under the Act." *Id* at 419.  Notably, the Court found that the case was not an enforcement action:

> "The appellee's attempt to avoid the exhaustion requirement by styling the case as an action to "enforce" the hearing officer's decision is also unavailing."

*Cox*, 878 F.2d at 422.  The D.C. Circuit determined that the portion of the hearing officer's decision which the parents had based their claim upon "recommended" that DCPS take certain action but did not mandate that DCPS take this action.  Moreover, the Court pointed out:

> "...the *order* was limited solely to the 1984-85 year." *Id* at 419.  Thus, the Court indicated that the parents "...were in fact seeking to challenge DCPS's August proposal regarding Anika's placement in 1985-86, not to enforce the June ruling...Thus we find that this case is not an enforcement action for which administrative exhaustion is inapplicable."

*Id* at 422.  Because Petitioner in this case is seeking to enforce a HOD and the D.C. Circuit has stated that *Cox* was not an enforcement action, *Cox* can be distinguished from the case at bar and is inapplicable to the Petitioner's claims.  As such, the cases cited by DCPS in this matter are controlling, and DCPS has firmly established that a special education hearing officer does not have jurisdiction to enforce an HOD.

ii.

### The Blackman/Jones Consent Decree Does Not Provide the
### Hearing Officer with Jurisdiction to Enforce an HOD

On July 17, 1997, litigation was commenced in the U.S. District Court for the District of

Columbia which was later certified as the *Blackman* subclass on October 21, 1997.  Thereafter,

litigation was commenced on October 16, 1997 which was then certified as the *Jones* subclass on

May 13, 1998.  The two cases were consolidated on November 14, 1997 and a settlement known

as the *Blackman/Jones Consent Decree* (hereinafter referred to as the Consent Decree) was

reached in the matter on June 30, 2006.[6]  Issues regarding the failure to timely implement an

HOD and/or settlement agreement properly fall under the *Jones* subclass of the Consent Decree.[7]

The Consent Decree is a settlement order which is open and continues to be monitored

by the U.S. District Court which approved it.  Paragraph 154 of the Consent Decree states that the

Court "will retain jurisdiction over this case for the purposes of implementing, monitoring, and

*enforcing* compliance with all provisions of this Consent Decree..."  *Blackman/Jones Consent*

*Decree*, p. 74 (June 30, 2006) (emphasis added).  Because the U.S. District Court which approved

the Consent Decree possesses exclusive jurisdiction over implementation and enforcement of the

Decree's provisions, a special education hearing officer has no jurisdiction to implement the

terms of the Consent Decree unless such authority is explicitly granted by the Decree's terms.[8]

At this time, such authority has not been granted to the hearing officer in this case.  Moreover, the

terms of the consent decree apply only to *members* of the two subclasses, and Petitioner has not

---

[6] The *Blackman* subclass complaint dealt with the failure to timely hold hearings and issue Hearing Officer Determinations, while the *Jones* subclass complaint dealt with the failure to timely implement HODs and settlement agreements.

[7] The *Jones* subclass is defined as "All children...who are entitled to have DCPS provide them with a free appropriate public education (FAPE) and who have been denied same because DCPS either (a) has failed to fully and timely implement the determinations of hearing officers, or (b) failed to fully and timely implement agreements concerning a child's identification, evaluation, educational placement, or provisions of FAPE that DCPS has negotiated with the child's parent or education advocate."  See *Blackman/Jones Consent Decree*, p. 11.

[8] This Pleading references the limited circumstances in which  the right to a due process hearing is granted by the Consent Decree.

10

54

yet established that he is a member of the *Jones* subclass, so the Consent Decree is inapplicable until Petitioner provides conclusive evidences demonstrating that he is in fact a member of the *Jones* subclass and the Court certifies his class membership.

Additionally, as mentioned above, because the U.S. District Court has exclusive jurisdiction over implementation, enforcement, and monitoring of the Consent Decree, a special education hearing officer does not have jurisdiction to certify class members unless such authority is explicitly granted to him by the Consent Decree's terms. Assuming arguendo that the hearing officer had such authority, or that it was not required, the terms of the Consent Decree do not grant a special education hearing officer authority to convene a due process hearing on the issue of noncompliance with an HOD, so Petitioner can not rely on the Consent Decree to pursue his claims.

Likewise, the Chief Hearing Officer's reliance upon a quote from paragraph 74 in section I of the Consent Decree in denying this Motion as a pre-hearing matter in other cases, is equally misplaced. Indeed, the section of the Consent Decree which the Petitioner relies upon, and which the Chief Hearing Officer relied upon in denying the Motion as a pre-hearing matter, deals with the remedy of "compensatory education for class member, for violations under the consent decree. *Blackman/Jones* at pp. 41-47, ¶¶ 74-82. The quote relied upon states:

> "This Consent Decree establishes a rebuttable presumption of harm for students denied timely hearings or HOD and for students who failed to receive timely implementation of HODs and SAs. Within (15) days of Final Approval of this Consent Decree, Defendants will revise their policies and the due process complaint request form to incorporate this rebuttable presumption of harm."

*See id* at p. 41; Sec. I, ¶74. Thus, the Consent Decree establishes that if a *Jones* subclass member seeks compensatory education, the Court will presume there has been harm. However, that presumption of harm can be rebutted by DCPS. Importantly, the Consent Decree does not state that the failure to timely implement an HOD is an automatic denial of FAPE.

55

In addition, the mechanism for obtaining the compensatory education for a *Jones* subclass member is specifically provided in the Consent Decree. Pursuant to paragraph 75, class members must follow the procedures in paragraph 76 to receive compensatory education. *Id* at ¶ 75. Paragraph 76 provides two alternatives for obtaining compensatory education: a) Election of available products and/or services from the *Blackman/Jones* Compensatory Education Catalog; or b) Addressing compensatory education at an IEP meeting. *Id* at pp. 41-42. Moreover, there is only one exception to this required process to obtain compensatory education: Paragraph 75 provides that "...Blackman subclass members whose hearings have not yet been held...must seek compensatory education at a due process hearing."

If the class member elects Option "a" to select available products and/or services from the Catalog, DCPS may challenge the right to receive the selection by filing a hearing with the Court within 60 days after the class member makes a selection from the Catalog in order to rebut the presumption of harm. *See id* at p. 44; Sec. I, ¶78. It is clear from the above referenced provision that the hearing is held before a court and not before a special education due process hearing officer. Therefore, it further stands to reason that if DCPS has a 60 day appeal right, Option "a" of Section I grants no original jurisdiction to a special education due process hearing officer to handle such claims.

*Jones* subclass members are also not granted the right to file a due process hearing to enforce a HOD pursuant to the language in paragraph 74 of the Consent Decree. However, if the Class member elects option "b" to seek compensatory education, the Consent Decree does grant *Jones* subclass members the right to file a due process complaint if they have gone to an IEP meeting and requested compensatory education and are still not satisfied with the resolution of the request for compensatory education at the meeting. At that point, the *Jones* subclass members may request a due process hearing to appeal the decision which was made concerning the compensatory education. *Id* at p. 42, ¶ iii. However, as pointed out previously, the option "b"

56

hearing is not provided to enforce an existing HOD -- it is only held to allow *Jones* subclass members to complain about the resolution of the request for compensatory education.

While the Consent Decree does not grant original jurisdiction to a special education hearing officer to enforce the terms of an HOD or settlement agreement, Class Members do have relief available pursuant to the Decree's terms.    Specifically, section VIII. *Miscellaneous Provisions*, A. *Res Judicata Effect; Relief Available to Plaintiffs and Class Members*, provides that:

> "Any individual class member experiencing delays in the issuance of HODs or the implementation of HODS/SAs may file a motion with the Court in this case requesting emergency relief and such class members are not limited to the relief set forth in this Consent Decree. Such motions will be addressed consistent with the Court's Opinion and Order of Reference issued on February 12, 1999 appointing a Special Master for Preliminary Injunctions and any subsequent modification thereto."

*See id* at p. 66-67, VIII, A., ¶ 134.  Therefore, the Consent Decree specifically grants the right to proceed on an action to enforce an HOD before the U.S. District Court, by Motion for a Preliminary Injunction.  However, while the Consent Decree grants Petitioner the right to seek emergency relief in U.S. District Court for enforcement of an HOD, nowhere in the Consent Decree is there any jurisdiction granted to a special education hearing officer to do so.  As such, Petitioner has incorrectly applied the Consent Decree's provisions to his case and this matter should be dismissed.

WHEREFORE PREMISES CONSIDERED, the Respondent moves this hearing officer to dismiss the complaint with prejudice.


Date:  March 29, 2007


13

57

Respectfully Submitted,

/s/ Daniel L. McCall

_____

Daniel L. McCall
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone # 202-442-5564
Fax # 202-442-5097/8

## CERTIFICATE OF SERVICE

I, Daniel L. McCall, Esq., hereby certify that a copy of DCPS' Motion to Dismiss was served on Thursday, March 29, 2007, on the attorney below, via facsimile as follows:

Doug Tyrka
(202) 265-4264

/s/ Daniel L. McCall

_____

14

58

03/29/2006   06:31     2022654264                    TYRKA & ASSOCIATES

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**      OGC (Daniel McCall) & SHO

**Fax Number:**

**From:**           Zachary Nahass

**Regarding:**      J██████ W██████

**# of pages:**     14

**Notes:**          Opposition to Motion to Dismiss

2007 MAR 30 AM 9: 08
DC PUBLIC
SCHOOL SYSTEM

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

59

03/29/2006   06:31    2022654254                TYRKA & ASSOCIATES

**Before the**

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### STATE ENFORCEMENT AND INVESTIGATION DIVISION

|   |   |
|---|---|
| In re J█████ W█████████ | ) |
| Special Education Student. | ) |
|   | ) |
|   | ) |

## PETITIONER'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

I.    **THE RESPONDENT'S MOTION TO DISMISS DOES NOT ADDRESS ALL OF THE PETITIONER'S CLAIMS.**

The Petitioner filed a five-count due process complaint ("Complaint") on January 30, 2007, claiming violations of the Individuals with Disabilities Education Act ("IDEA") for DCPS' failure: (1) to comply with the terms and conditions of an October 2, 2006 Hearing Officer Determination ("HOD"); (2) to conduct and review current evaluations in all areas of suspected disability; (3) to develop an appropriate individualized education program ("IEP"); (4) to provide an appropriate placement; and (5) to provide all necessary specialized instruction and related services.

The Respondent filed a Motion to Dismiss the Petitioner's Administrative Due Process Complaint ("Response") on March 28, 2007, arguing that "The Hearing Officer Does Not Have Jurisdiction Pursuant to the Issues Specified In The Pleadings." The crux of the Respondent's argument, to which the Petitioner responds at length below, is that an administrative hearing officer lacks the authority to rule on violations of HODs. In other words, according to the Respondent, there is no jurisdiction in this forum for the first claim of the Complaint. The Response utterly fails to address the other claims in the Petitioner's Complaint.

1

60

03/29/2006  06:31    2022654264                TYRKA & ASSOCIATES

Accordingly, regardless of how the Hearing Officer decides the issue of the Hearing Officer's jurisdiction to hear claims on HOD violations, the remainder of the Petitioner's complaint may not be dismissed.

## II.    IN THE DISTRICT OF COLUMBIA, HEARING OFFICERS ARE EMPOWERED TO HEAR CLAIMS OF VIOLATIONS OF HODS.

### A.    By Caselaw and and Longstanding Practice, Hearing Officers in This Jurisdiction Have Always Been Empowered to Rule on HOD Violations.

In this jurisdiction, the violation of an HOD has always been considered a denial of FAPE, so a parent can bring a complaint, and a hearing officer can decide it, on that basis.

Hearing officers in this jurisdiction have always heard complaints for failure to comply with HODs. DCPS has never brought a civil action following such a decision to challenge a hearing officer's jurisdiction, so there is no caselaw directly addressing the issue. However, there are cases in which the hearing officers' jurisdiction to decide HOD violations has been assumed, or even relied upon.

For example, in Cox v. Jenkins, the circuit court held that a plaintiff who alleged an HOD violation had failed to exhaust administrative remedies: "[W]e find that DCPS substantially complied with [the HOD] and that any noncompliance involved matters that could and should have been addressed through the administrative process." 878 F.2d 414, 420 (D.C. Cir. 1989). More directly, the entire Jones class action is predicated on the principal that an HOD violation is a denial of FAPE. The Jones class includes:

> "[a]ll children...who are entitled to have DCPS provide them with a [FAPE] and who have been denied same because DCPS... has failed to fully and timely implement the determinations of hearing officers."

Jones v. District of Columbia, Civ. A. 97-2402 (PLF), 2006 WL 2456413 (D.D.C. 2006).

2

03/29/2006   06:31     2022654264                    TYRKA & ASSOCIATES

The Blackman-Jones decisions specifically state that the violation of an HOD is a denial of FAPE. Moreover, under Cox, a parent may be forced to bring her complaint of an HOD violation at the administrative level, in order to exhaust all administrative remedies. Together, these cases leave little question regarding the courts' approval of the longstanding practice in this jurisdiction of administrative resolution of HOD violations.

Nothing about that process runs contrary to the IDEA. The IDEA requires the states to establish due process procedures to provide certain minimum protections to parents. Nothing in the IDEA prohibits a state from allowing parents to raise issues not specifically required by the IDEA. See Burlington v. Dept. of Educ., 736 F.2d 773, 780 (1st Cir. 1984) ("[S]tates are free to elaborate procedural and substantive protections for the disabled child that are more stringent than those contained in the Act."). A state may go as far as redefining FAPE to give parents more rights. See, e.g., G. v. Fort Bragg Dependent Schs., 343 F.3d 295, 303 (4th Cir. 2003) ("States are free, however, to set a higher standard for provision of educational services to those students, and North Carolina has taken this approach.").

IDEA hearings are state administrative hearings; there is no involvement of an Article I or Article III court unless and until an adverse decision is challenged. There is therefore no restriction on the scope of the jurisdiction vested by the state, provided that the hearings have the minimum jurisdiction required by the IDEA, that is, jurisdiction as specifically outlined in § 1415. The Respondent has not pointed to anything in the IDEA prohibiting a state from allowing claims of HOD violations to be made in IDEA hearings.

In the absence of such a prohibition, there is no justification for overturning a longstanding practice in this jurisdiction that has been endorsed by the federal courts.

3

03/29/2006   06:31      2022654264              TYRKA & ASSOCIATES

**B.    The Respondent Misses the Point of the Petitioner's Argument to the <u>Blackman-Jones</u> Decisions.**

In its Motion, the Respondent dedicates over three pages to the argument that "The Blackman/Jones Decree Does Not Provide the Hearing Officer with Jurisdiction to Enforce an HOD."

The Petitioner does not argue that the Consent Decree gives the hearing officers new jurisdiction.[1] The Petitioner has cited to the Consent Decree, as an example of the many <u>Blackman-Jones</u> decisions, as <u>precedent</u> <u>and</u> <u>support</u> for the proposition that a violation of an HOD is a <u>per</u> <u>se</u> denial of FAPE, and that a claim of an HOD violation is therefore within the hearing officers' jurisdiction.

The Respondent has presented no reason to question the longstanding judgment, shared by Judge Friedman and the District of Columbia Office of the Attorney General, among others, that the violation of an HOD is a denial of FAPE.

**C.    The Respondent's Cases Are Inapposite to the Question of the Hearing Officers' Authority in the District of Columbia.**

The Respondent cites a few Minnesota cases that do not address the question of an administrative hearing officer's authority to rule upon an HOD violation. For that reason, they are irrelevant to the question at hand.

The Respondent relies upon two Minnesota cases, <u>Olson v. Robbinsdale Area Schools</u>, and <u>Grace B. v. Lexington Sch. Committee</u>. These cases each stand for the proposition that one may not (at least not in Minnesota) bring an IDEA action in federal district court on the basis of an HOD violation.

---

[1] However, the Petitioner does not agree that the Consent Decree does not give jurisdiction. The question is irrelevant to the Motion to Dismiss and the Opposition.

4

03/29/2006   06:31    2022654264    TYRKA & ASSOCIATES

The Petitioner does not dispute that there is no federal district court claim under the IDEA for violation of an HOD. The proper course is to file under 42 U.S.C. § 1983. That has been established for several years.

Needless to say, the Petitioner is not now attempting to bring such an action in district court, and the Respondent has not moved to dismiss such an action. The case at hand regards an IDEA claim brought in a District of Columbia administrative forum for violation of an HOD.

The Respondent also relies of a case from the 9th Circuit, <u>Wyner v. Manhattan Beach Unified Sch. Dist.</u>, which does address such a situation. However, that case was decided on the basis of particular California state laws, which are not in effect in the District of Columbia. In fact, the very paragraph from which the Respondent takes its out-of-context quote makes perfectly clear that a particular California regulation settled the matter:

> **California's statutory and regulatory framework complies with the standards set forth in the Individuals with Disabilities Education Act.** The SEHO Hearing Officer and the district court both were correct to find that a subsequent due process hearing was not available to address the School District's alleged noncompliance with the settlement agreement and SEHO order in a prior due process hearing. **California promulgated § 4650 to deal with compliance matters.**

223 F.3d 1026, 1030 (9th Cir. 2000) (portions of paragraph omitted by Respondent in bold).

That particular California regulation, as reviewed in <u>Wyner</u>, states:

> The Superintendent shall directly intervene without waiting for local agency action if...[t]he complainant alleges that the local educational agency...has failed or refused to implement a due process hearing order[.]

TYRKA & ASSOCIATES

03/29/2006  06:31    2022654264

223 F.3d at 1029; quoting Title 5, Division 1, California Code of Regulations § 4650. The District of Columbia has no such mandatory administrative route for enforcing HODs; Wyner is therefore completely inapplicable to the District of Columbia.

III.   **OTHER FEDERAL DISTRICT COURTS HAVE UPHELD HEARING OFFICERS' AUTHORITY TO RULE ON VIOLATIONS OF HODS AND SETTLEMENT AGREEMENTS.**

At least two federal district courts have addressed this issue; one upheld a hearing officer's authority to adjudicate a claim of an HOD violation, and another upheld a hearing officer's authority to adjudicate a claim of a settlement agreement violation.

In a case in which a "Settlement Agreement [had been] incorporated into an order by the hearing officer," and a claim later filed for violation of that order, the United States District Court for the Middle District of Alabama held that hearing officer's can and should decide such claims, by a denial of FAPE standard. See Dukes v. Enterprise City Bd. of Educ., 273 F. Supp. 2d 1252, 1257, 1259-60 (M.D. Ala. 2003).

Even in a case in which the settlement agreement had not been incorporated into an order, the United States District Court for the District of Connecticut fully backed the hearing officer's authority: "The plaintiff first claims that the hearing officer lacked the authority to enforce the terms of the settlement agreement. The court disagrees." Mr. J. v. Bd. of Educ., 98 F. Supp. 2d 226, 237 (D. Conn. 2000).

IV.   **AN HOD DEFINES FAPE FOR THE CHILD, SO THE VIOLATION OF AN HOD IS A PER SE DENIAL OF FAPE.**

Before any HOD concerning a child has been issued, FAPE is defined by the IDEA, the regulations, and the caselaw. Once an HOD resolving a particular issue exists, that HOD redefines FAPE. Therefore, violation of the HOD is a per se denial of FAPE.

6

03/29/2006   06:31      2022654264             TYRKA & ASSOCIATES

For example, if DCPS fails to update an IEP after one year, a parent may choose to file a due process complaint on, say, day 366 following the development of the last IEP. If DCPS fails to resolve the problem before the hearing, a hearing will be held on approximately day 426, 60 days after the filing of the complaint.

Continuing with the example, at the hearing, the hearing officer will find that DCPS has violated the IDEA and will order DCPS to update the IEP within, say, 15 school days of the issuance of the HOD, another approximately 30 days total from the hearing date. In sum, then, the final HOD will oblige DCPS to update the IEP by approximately day 456, 90 days more than the original deadline provided in the statute and regulations.

The HOD thereby redefines the requirements on DCPS. This redefinition is inherent in claim preclusion and issue preclusion, and is necessary to protect DCPS from redundant complaints. The parent cannot, for example, file a new complaint on day 440, because, even though DCPS is at that time months out of compliance with the statute and regulations, the HOD has by that time redefined DCPS' obligation to update the IEP.

This effect applies to all timeline violations, of course, but it also applies to more substantial HODs. At the time of the first hearing of a complaint alleging failure to provide an appropriate placement, the definitions of "appropriate placement," "FAPE," etc. are fairly vague, limited only by the statute, regulations, and caselaw. An HOD resolving that complaint, however, will typically specifically dictate what an LEA must do to provide FAPE and an appropriate placement, for example: "convene a meeting within 15 school days to determine a new placement," "place the child at [private

7

03/29/2006  86:31    2022654264                    TYRKA & ASSOCIATES

school]," or "take all steps necessary to find and place the child at an appropriate residential placement within 30 days."

The HOD thereby provides for that child greater specificity to the definitions of "FAPE" and "appropriate placement" found in the statute, regulations, and caselaw. Violation of the terms of the HOD is therefore per se denial of FAPE.

In the case at bar, prior to the October 2, 2006 HOD, DCPS' obligations to Destiny were defined by statute, regulation and caselaw. The HOD modified DCPS' obligations, requiring DCPS to fund several independent evaluations, and to convene an MDT meeting within a specific time period – 15 school days of receiving the last of the independent evaluations.

The HOD thereby modified the general legal obligations regarding both evaluations and MDT meetings. To wit, where DCPS enjoys a certain degree of discretion regarding how to conduct evaluations, and when and where MDT meetings are held, by HOD DCPS' discretion was eliminated in this case.

The Petitioner's allegation that DCPS failed to comply with that HOD is therefore an allegation that DCPS denied Destiny FAPE, as the HOD specifically defined it. The hearing officers have the authority to rule on that denial.

V.     **ALTERNATIVELY, A COMPLAINT FOR VIOLATION OF AN HOD SHOULD BE INTERPRETED AS A COMPLAINT ALLEGING THE UNDERLYING IDEA VIOLATIONS.**

If the hearing officers cannot rule on an HOD violation as such, they may still hear a complaint for an HOD violation because the complaint should be read as alleging the violations that led to the existing HOD as well as all violations since.

8

03/29/2006  06:31    2022654264    TYRKA & ASSOCIATES

An HOD establishes a violation of the IDEA. Once that HOD has been violated, the LEA has by definition violated the IDEA up to the point of the HOD and has continued to violate the IDEA in the same ways since the issuance of the HOD.

Because the LEA continued to violate the IDEA since the issuance of the HOD, the Petitioner may bring a complaint for all IDEA violations that have yet to be remedied, dating back prior to the issuance of the HOD. The new complaint, alleging the HOD violation, should therefore be read to allege the underlying violations that led to the existing HOD, though of course those allegations need not be reproven.

In the case at bar, the Complaint alleges the violation of an HOD ordering DCPS to fund evaluations and to convene a Multidisciplinary Team Meeting within 15 school days of receiving the last independent evaluation. On the facts of this case, the Complaint can easily be understood to allege that, prior to the most recent HOD, DCPS had failed to timely complete and review evaluations for J█████. As a result of DCPS' failure to comply with the HOD, J█████ evaluations have still not been reviewed. Thus, even if a hearing officer could not rule on an HOD violation, a hearing officer could hear the complaint of the underlying, ongoing violations, and could issue the relief requested.

**VI.    THE HEARING OFFICERS HAVE THE INHERENT AUTHORITY AS ADJUDICATORS TO ENFORCE THEIR ORDERS.**

"It would be anomalous indeed for a court to be able to enter a judgment but not be able to enforce it because of improper venue." AmericanAnglian Environmental Technologies v. Doherty, 461 F. Supp. 2d 359 (E.D. Pa. 2006).

Every adjudicating body has the inherent power to enforce its prior orders. Common Cause v. Fed. Election Commission, 692 F. Supp. 1397, 1399 (D.D.C. 1988) ("the court has inherent jurisdiction to interpret and enforce its prior orders"); Cobell v.

9

03/29/2006  06:31    2022654264    TYRKA & ASSOCIATES

Norton, 225 F.R.D. 41, 48 (D.D.C. 2004) ("Of course, it goes without saying that if the communications at issue here are found to violate the 2002 Order [of the Court], this Court has inherent jurisdiction to enforce its prior directives.").

"[T]he broad congressional power to authorize agencies to adjudicate 'public rights' necessarily carries with it power to authorize an agency to take such procedural actions as may be necessary to maintain the integrity of the agency's adjudicatory proceedings." Atlantic Richfield Co., 769 F.2d 771, 794 (D.C. Cir. 1984). If the Hearing Officers lack the authority to enforce HODs, the integrity of the agency's adjudicatory proceedings will be completely undermined. Such a ruling would handcuff adjudicators and turn administrative procedures, designed for speed and efficiency, into useless and wasteful academic exercises.

## VII.    THE IDEA DOES NOT PROHIBIT CONCURRENT JURISDICTION; REGARDLESS, A DETERMINATION THAT THE PETITIONER'S CLAIM MAY BE HEARD DOES NOT REQUIRE A FINDING OF CONCURRENT JURISDICTION.

The Respondent argues that because "the IDEA does not provide for concurrent jurisdiction," and there is § 1983 jurisdiction in the federal courts, there can be no administrative jurisdiction over this case. The Respondent's argument suffers from at least two flaws.

First, the burden is on the Respondent, who is moving to dismiss, to establish grounds for rejecting jurisdiction in this case. The fact that the IDEA does not specifically provide for concurrent jurisdiction does not mean that the IDEA prohibits it.

Second, the Petitioner's claim does not rely on the existence of concurrent jurisdiction under the IDEA. The Petitioner and the Respondent apparently agree that the federal and state courts have no jurisdiction *under the IDEA* to hear claims of HOD

10

03/29/2006  06:31    2022654264    TYRKA & ASSOCIATES

violations; those claims must be brought under § 1983. The Petitioner contends that the

hearing officers alone have jurisdiction under the IDEA to hear claims of HOD

violations. Because any federal enforcement action would be brought under § 1983, only

the hearing officers would have IDEA jurisdiction over those claims, so concurrent

jurisdiction is not claimed and is not required.

## VIII.   THE INTERESTS OF THE PUBLIC AND THE JUDICIAL SYSTEM WEIGH STRONGLY IN FAVOR OF ADMINISTRATIVE JURISDICTION OVER IDEA CLAIMS OF HOD VIOLATIONS.

The acceptance of the Respondent's arguments would cause a short-term disaster,

and a long-term serious problem, in the world of special education litigation.

At least 75% of due process complaints include claims of HOD violations. If they

can no longer be brought in due process complaints, those claims – approximately 200

per year – will all be brought to the district court under Blackman-Jones. As a result,

Judge Friedman and Special Master Elise Bach will be overwhelmed overnight by an

exploding caseload, and the system will completely seize for months until the court

creates a massive new dispute resolution system to replace the hearing officers.

Once that system is finally in place and operational, there will be four predictable

effects: 1) the administration of the litigation will be far more expensive, as the court

apparatuses are more costly than the SHO and the hearing officers; 2) DCPS' direct

litigation costs will increase, as they will have participate in far more complicated

litigation; 3) on the other side of the table, parent attorney fees will balloon, due to the

increased complexity of the litigation and the absence of a fee cap in § 1983 litigation;

and 4) parents will have to wait longer for resolution.

11

03/29/2006  06:31    2022654264    TYRKA & ASSOCIATES

Meanwhile, because, as discussed above, nearly every complaint alleging an HOD violation also by necessity includes a claim of IDEA violations since the issuance of the HOD, the administrative litigation will remain much at present levels.

Parent attorneys might end up thanking DCPS for taking this new tack, but it is hard to imagine any other beneficiaries.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

12

71

03/29/2006  06:31    2022654264                    TYRKA & ASSOCIATES

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2007 I sent a copy of the foregoing by facsimile

to counsel for the Respondent at (202) 442-5098.

Sincerely,

Douglas Tyrka

13

72



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**
_____

Office **of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000      Fax: 202-442-5098
www.k12.dc.us

March 28, 2007

Douglas Tyrka
Tyrka and Associates
1726 Connecticut Ave. NW, Suite 400
Washington, D.C. 20009

## DISCLOSURE STATEMENT
## and
## MOTION TO COMPEL ATTENDANCE

## VIA FACSIMILE (202) 265-4264

**Subject: Due Process Hearing for J███████ W█████████**
**DOB:      ████00**

Dear Mr. Tyrka:

At the upcoming due process hearing in the above-referenced matter, and pursuant to the
Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any
documents and witnesses disclosed by the parent, DCPS may rely upon any of the following
witnesses/documents[1]:

## Witnesses

## DCPS, 825 N. Capitol St., NE, 6th Floor, Washington, D.C. 20002; (202) 442-4800

1.      Mary Lee Phelps, Interim Special Education Director
2.      Mary Ellen G. de Jesus, Ph.D., DCPS Psychologist, or designee(s)
3.      Dr. Wesley Campbell, School Psychologist, or designee(s)
4.      Dr. Tara Benn, School Psychologist
5.      Krystal King, School Psychologist
6.      Richard J. Colom - School Psychologist
7.      Dr. Jack, School Psychologist
8.      Dr. Carolyn Johnson, School Psychologist
9.      Mr. Greg Brochu, Non-public Placement Specialist, or his designee(s)

---
[1] Witnesses may testify by telephone.

73

DCPS Office of the General Counsel
Page 2

10.  Dr. Peggy Peagler, LEA/CRS, and/or designee(s)
11.  Keisha McKitty, Placement Specialist, and/or designee(s)
12.  Sherrie Waul – DCPS Non-public Placement Specialist, and/or designee(s)
13.  Keesha Blythe - DCPS Non-public Placement Specialist, and/or designee(s)
14.  Mary Lee Phelps, Interim Special Education Director, and/or designee(s)
15.  Mary Ellen G. de Jesus, Ph.D., DCPS Psychologist, or designee(s)
16.  Dr. Wesley Campbell, School Psychologist, or designee(s)
17.  Dr. Tara Benn, School Psychologist, and/or designee(s)
18.  Krystal King, School Psychologist, and/or designee(s)
19.  Breona Harrison, DCPS Non-public Placement Specialist, and/or designee(s)
20.  Marla Oakes, or designee, Director of Special Education
21.  Latrina Brookins, Non-Public Specialist
22.  Moses Roberts, Non-Public Specialist
23.  Michelle Pjardo, Non-Public Specialist
24.  Kymberly Grafton, Non-public Specialist
25.  Tiece Ruffin, Non-Public Placement Specialist, or designee(s)
26.  Paris Adon, Non-Public Placement Specialist, or designee(s)
27.  Paula Perelman, Non-Public Placement Specialist, or designee(s)
28.  Tim Fitzgerald, Non-public Placement Specialist, or designee(s)


**Stanton ES, 2701 Naylor Rd., SE, Washington, DC 20020; 202/645-3255**

29.  Brenda Kelly, SEC
30.  Norman Brooks, Principal
31.  Patricia Brantley, Assistant Principal
32.  Toni Reynolds, OT
33.  Rosa Thomas, Teacher
34.  Tara Benn, School Psychologist
35.  Rodney Campfield, Comp. Ed.
36.  Ingrid Liddell Gregarious, Speech Pathologist
37.  Annette Doxie, Social Worker
38.  Suruchi Lall, Special Education Teacher


**Documents**

DCPS-1     Meeting Notice 2/9/07
DCPS-2     Letter of Invitation 2/1/07
DCPS-3     Settlement Agreement 2/12/07
DCPS-4     Referral Form 2/12/07
DCPS-5     SEP 2/12/07
DCPS-6     Prior Notice 2/12/07
DCPS-7     Resolution Meeting Notes 2/12/07

74

DCPS Office of the General Counsel
Page 3

| | |
|---|---|
| DCPS-8 | IEP Document 2/12/07 |
| DCPS-9 | MDT notes 2/12/07 |
| DCPS-10 | Fax Receipt for Speech Language Evaluation 1/31/07 |
| DCPS-11 | Ltr. to D. Tyrka re: Speech Evaluation |
| DCPS-12 | 12/19/06 Declaration of Brenda Kelly re: Speech Evaluation |

## **Motion to Compel Attendance**

Pursuant to 5 DCMR 3031.1(b), DCPS hereby moves the Student Hearing Office to compel the attendance of the below named individual as a necessary and material witness:

**Michelle Williams, Parent**

DCPS reserves the right to amend this disclosure as documents become available.

DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student, as if such witness was called by DCPS.

DCPS reserves the right to rely upon and/or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.

DCPS reserves the right to introduce any and all witnesses and/or documents for the purposes of impeachment and rebuttal.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5564.

Sincerely,

/s/ Daniel McCall
Daniel L. McCall
Attorney Advisor

cc:    Student Hearing Office

75

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

### CONFIRMATION OF MEETING NOTICE

Date: **02/09/2007**

**Douglas Tyrka / Ms. Williams**
Parent / Guardian Name

RE: J_____ W_____

SCHOOL: **Stanton ES**

Street #   Street          Quad   Apt. No.

ID NO. _____

City                       State   Zip Code

DOB: _____

Dear **Ms. Williams**

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. Your child's meeting is scheduled as follows:

Date: **02/12/2007** Time: **1:00** Place/Location: **Stanton ES**
**After Resolution Mtg.**

The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Invited participants are listed under MDT members.

**\*The purpose of this meeting is to:**

- [ ] \*\*develop/review IEP(including consideration of extended school year (ESY) services
- [ ] \*\*review evaluation or reevaluation information
- [ ] develop the student evaluation plan (SEP)
- [ ] discuss documented levels of service
- [ ] \*\*review records to support the completion of services as follows:
- [ ] discuss placement
- [ ] determine manifestation
- [x] discuss eligibility
- [ ] \*\*discuss CompEd
- [ ] \*consider transition services needs
- [ ] discuss quarterly review
- [ ] behavior plan review

  - [ ] Graduated
  - [ ] Completed Services
  - [ ] Aged Out
  - [ ] Transferred Out of District
  - [ ] Dropped Out
  - [ ] Other:

**\*\*Placement will be discussed.**

MDT Members:
- [x] Principal or Designee
- [x] Parent
- [x] LEA Representative
- [ ] Student
- [x] General Education Teacher
- [x] Special Education Teacher
- [ ] Speech and Language
- [ ] Social Worker
- [x] Psychologist
- [ ] Other: _____

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate

· **Ms. Kelly**          · **202 645-7150**

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact _____ at _____ (school telephone number). _____

Sincerely,

District of Columbia Public Schools     07-02-2001     Division of Special Education     Confirmation of Meeting Notice

76

DCPS-1

ar 28 07 03:06p Stanton Elementary School
Case 1:07-cv-01261-ESH    Document 12-4    Filed 10/31/2007    Page 38 of 44
TYRKA & ASSOCIATES
2026453564
PAGE 03/03

Feb 01 07 01:46p    Stanton Elemtary School    p.3

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice

Date 02/01/2007

MDT Referral Date: _____

**Letter of Invitation**    Re: _____ J____ W_____

Dear ___ Douglas Tyrka/Ms. Williams ___

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

Place/Location:

Stanton ES

**Please check one date for confirmation:**

| | Date: 02/12/2007 | Time: 9:00am | ; or |
| | Date: 02/12/2007 | Time: 11:00am | ; or |
| ✓ | Date: 02/12/2007 | Time: 1:00pm | |

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

☒ \* **develop/review IEP** (including consideration of extended school year (ESY) services    ☐ \*\*discuss CompEd
☒ \*\*review evaluation or reevaluation information    ☒ discuss placement    ☐ \* consider transition service needs
☐ develop the student evaluation plan (SEP)    ☐ determine manifestation    ☐ discuss quarterly review
☒ discuss documented levels of service    ☒ discuss eligibility    ☐ behavior plan review
☐ \*\*review records to support the completion of services as follows:

☐ Graduated    ☐ Completed Services    ☐ Aged Out    ☐ Transferred Out of District    ☐ Dropped out
☐ Other: _____

**\*\*Placement will be discussed.**

MDT Members:
☒ Principal or Designee    ☒ General Education Teacher    ☐ Psychologist
☒ Parent    ☒ Special Education Teacher    ☒ Other: as needed
☒ LEA Representative    ☐ Speech and Language    _____
☐ Student    ☐ Social Worker    _____

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact
___ Ms. Kelly ___ at ___ 202-645-7150 ___ (school telephone number).
If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate.
_____    \* _____

See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST RECORDS OR REPORTS USED

_____

\*After the third attempt to contact the parents, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).    ☐ Yes    ☐ No

DCPS-2 77

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice

Date 02/01/2007

MDT Referral Date: _____

**Letter of Invitation**

Re: ___ J___ W___

Dear ___ Douglas Tyrka/Ms. Williams ___

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

**Please check one date for confirmation:**

Place/Location:

Stanton ES

☐ Date: 02/12/2007     Time: 9:00am     ; or

☐ Date: 02/12/2007     Time: 11:00am     ; or

☐ Date: 02/12/2007     Time: 1:00pm

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

☒ * *develop/review IEP (including consideration of extended school year (ESY) services          ☐ **discuss CompEd

☒ **review evaluation or reevaluation information     ☒ discuss placement          ☐ *consider transition service needs

☐ develop the student evaluation plan (SEP)          ☐ determine manifestation          ☐ discuss quarterly review

☒ discuss documented levels of service          ☒ discuss eligibility          ☐ behavior plan review

☐ **review records to support the completion of services as follows:

☐ Graduated   ☐ Completed Services   ☐ Aged Out   ☐ Transferred Out of District   ☐ Dropped out

☐ Other: _____

**\*\*Placement will be discussed.**

MDT Members:   ☒ Principal or Designee     ☒ General Education Teacher     ☐ Psychologist

☒ Parent     ☒ Special Education Teacher     ☒ Other: as needed

☒ LEA Representative     ☐ Speech and Language     _____

☐ Student     ☐ Social Worker     _____

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact

___ Ms. Kelly ___ at ___ 202-645-7150 ___ (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate

\* _____     \* _____

**See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED**

\*After the third attempt to contact the parent, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).     ☐ Yes     ☐ No



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

www.k12.dc.us

Date: February 12, 2007

Parent's Name: Ms. Williams

Parent's Address: _____

_____

Subject: Resolution Session for ___J_____ W_____

DOB: _____

Attending School: Stanton ES

## SETTLEMENT AGREEMENT

In lieu of the formal Due Process Hearing in the above-referenced matter, the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent agree to resolve this matter pursuant to the following terms and conditions:

    1. Parent verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

    2. The Parent verifies that the student's date of birth is _____, and that the attending school is _____ and home school is _____.

    3. Parent agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the the student, parent, or their representative as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

_____

*Children First*

DCPS-3 79

JUL-27-2005  14:44        DCPS GENERAL COUNSEL                        2024425097    P.005

Page 2

4. Parent and DCPS agrees to the terms listed below.  Check the box / boxes that applies.

## ☒ Eligibility Determination /

- DCPS agrees to convene an MDT/IEP meeting no later than **02/12/200 7** days of execution of this agreement at which the student's eligibility for special education will be determined and if found eligible, an IEP will be developed and placement will be discussed.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a prior notice of placement within 5 school days if the placement is public and 30 calendar days if the placement is non-public.

## ☒ Conduct Evaluations & Hold MDT Meeting

- DCPS agrees to conduct, within ___**10 days**___ school / calendar *(circle one)* days of execution of this agreement, a
  psycho-educational evaluation,
  a speech/language evaluation,
  occupational therapy evaluation,
  physical therapy evaluation,
  hearing screening,
  vision screening,
  a social history evaluation
  If DCPS fails to complete the evaluation/evaluations within the above stated time frame, the parent can secure an independent psycho-educational evaluation, an independent speech/language evaluation, an independent occupational therapy evaluation, an independent physical therapy evaluation, an independent hearing screening, an independent vision screening,   or an independent social history evaluation *(circle applicable evaluation/ evaluations)*   at the expense of DCPS, consistent with DCPS cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 30, 2001.*

- Within 15 school days of the Special Education Coordinator at **2695 - 4372** school receiving the last completed evaluation, DCPS will convene an MDT/IEP meeting at which these evaluations will be discussed, an IEP will be developed, and a prior notice is issued if necessary.

## ☐ Fund Independent Evaluations

- DCPS agrees to fund the following independent evaluation **N/A**
  , a speech/language evaluation, occupational therapy evaluation, physical therapy evaluation, hearing screening, vision screening,  a social history evaluation *(circle applicable evaluation/evaluations)* at the expense of DCPS, consistent with DCPS

*Children First*

80

cost guidelines, not to exceed those specified in the *Superintendent's Directive Number 530.6, dated March 29, 2002*.

- DCPS agree to convene an MDT/IEP meeting within 15 school days of the Special Education Coordinator at _____ School receiving the last completed evaluation.  The MDT team will review these evaluations, revise the IEP, if necessary, and discuss placement.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐  **Compensatory Education**

- DCPS agrees to develop a compensatory education plan.

☐  **TUTORING**

- DCPS agrees to provide tutoring to compensate for missed instruction on a one-for-one basis.

☑  **MDT Meeting to Discuss Placement**

- DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☑  **Referral for Residential Placement**

- DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

5.  Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed.

6.  If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent agree to extend the deadlines or negotiate new timelines, whichever appropriate.  Parent will not unreasonably deny any such request for extension or renegotiation.

7.  Parent agrees to contact the Director of the Office of Compliance in Special Education when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a complaint alleging DCPS' failure to comply.

*Children First*

81

DCPS
Page 2

cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

- DCPS agree to convene an MDT/IEP meeting within 15 school days of the Special Education Coordinator at _____ School receiving the last completed evaluation.  The MDT team will review these evaluations, revise the IEP, if necessary, and discuss placement.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐ **Compensatory Education**

- DCPS agrees to develop a  compensatory education plan.

☐ **TUTORING**

- DCPS agrees to provide tutoring to compensate for missed instruction on a one-for-one basis.

☐ **MDT Meeting to Discuss Placement:**

- DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐ **Referral for Residential Placement**

- DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

  5.  Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed.

  6. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent agree to extend the deadlines or negotiate new timelines, whichever appropriate.  Parent will not unreasonably deny any such request for extension/renegotiation.

  7. Parent agrees to contact the Director of the Office of Compliance in Special Education when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a complaint alleging DCPS' failure to comply.

*Children First*

DCPS
Page 2

8. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, and including all claims that the parent now asserts or could have asserted as of the date of this agreement.

9. Both parties agree that they have 3 days to withdraw the settlement agreement. If the parent decides to withdraw the settlement agreement said agreement should be in writing.

Sincerely,

*Brenda S. Kelly, designee*

Principal or designee

Agreed to: _____

Parent _____  Date _____

*Parent participated by telephone 2/12/2007 at 1:30 PM Brenda Kelly 2/12/2007*

_____

*Children First*

TOTAL P.007

83



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

*Division of Special Education*
825 North Capitol Street, NE., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
EDWIN M. STANTON ELEMENTARY SCHOOL
2701 NAYLOR ROAD, B.E.
WASHINGTON, D.C. 20020
Brenda Kelly
(SEC)

## Referral Form

**Type of Referral:**

| | | | |
|---|---|---|---|
| — Clinical Evaluation | ☐ Psycho-education Evaluation | ☐ Medical Review | ☐ |
| — Clinical Review | — Neuropsychological Evaluation | ☑ — Audiological Evaluation | ☐ |
| — Psychiatric Evaluation | — Neuropsychological Review | ☐ — Psychiatric Review | ☐ |
| ☑ OT/PT Evaluation | ☐ Social History | ☑ Vision | |
| — OT/PT Review | ☐ Speech/Language Evaluation | ☑ Hearing | |

Referral Date: __02/12/2007__   Date Referral Form Received _____

MDT/IEP Date (projected): __02/23/2007__ Projected Meeting Time: __1:00 PM__

Student Name: __J█████ W█████__

DOB: ██████████   School: __Stanton__

Address: _____

Parent/Guardian __Ms. Michelle Williams__

Telephone: _____   _____
                    (home)                              (work)

Special Education Specialist (SES): __Brenda Kelly__
SES Supervisor: __La Chonda Kinzer__
Telephone: __202 645-7150__

DCPS Assessments (include dates):
Social History __10/10/2006__   Classroom Observation __2/9/2007__
Psycho educational __10/28/2006__   Speech/Language __11/17/2006__

Reason for Referral: ( Attach all anecdotal records/notes and copy of current psychological) _____
_____ __See attachments__ _____
_____
_____

Assigned Provider for Assessment or review: _____
Assignment Date: _____

Assigned Provider for meeting: _____

Received By: _____   Date: _____

84

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

| | MDT SEP |
|---|---|

MDT REFERRAL DATE: ▓▓▓▓▓▓▓▓    MEETING DATE: 02/12/2007

STUDENT: ▓▓▓▓ W▓▓▓▓  DOB: ▓▓▓▓ AGE: 7 GRADE: 1st SCHOOL: Stanton ES

STUDENT IDENTIFICATION NUMBER: ▓▓▓▓▓   TEACHER / HOMEROOM: Ms. Thomas

ADDRESS: _____
Street #    Street Name    Quadrant    Apartment #    City,    State,    Zip Code

PARENT(S)/GUARDIAN: _____ TELEPHONE (H): _____ (w): _____

**Summarize Area(s) of Concern:**

There are concerns regarding ▓▓▓▓ visual motor skills, handwriting and fine motor functioning. Conversely, questions surrounding his nonverbal intelligence.

**Team Recommendations:**

The team recommends nonverbal cognitive assessment and an O.T. assessment should be conducted.

### EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☒ Psychological | T. Benn | TBD (nonverbal instrument) | | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☒ Vision Screening | Vielka Scott | | | |
| ☐ Medical | | | | |
| ☐ Educational | | | | |
| ☒ Hearing Screening | Vielka Scott | | | |
| ☒ Other  Other: OT Toni Reynolds  Other: Ms. Lambert | | | | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
|---|---|---|---|
| ▓▓▓▓▓▓ | SEA▓▓▓▓ | | |
| ▓▓▓▓ | School Psychologist | | |
| Brenda Kelly | SEC | | |

The MDT meeting to discuss the evaluation results is scheduled on _____ at _____ in room _____

Place completed form in MDT folder.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT - SEP    APPENDIX - A

85

DCPS-5

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
- [ ] Initial Evaluation
- [x] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Other _____

Date _____ 02/12/2007 _____

Student _____ J___ W___ _____ DOB _____

School _____ Stanton ES _____

Current Disability Category _____ Mental Retardation _____

Setting _____ Combination General Education and Resource Classroom _____

Dear _____ Ms. Williams _____

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [x] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)
- [ ] Your child is not eligible for special education service(s).
- [x] Your child is eligible or continues to be eligible to receive special education services as a student with _____ Mental Retardation
- [x] Your child will begin receiving _____ Speech and Language _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
      from _____ to _____
- Your child is no longer eligible and will be exited from the special education program.
- Other: _____

**Description and Explanation of agency action proposed or refused.**

The MDT met to review all of the documentation and the following setting was proposed for the student: Combination general education and resource classroom at Stanton Elementary School.

**Description of Other Options Considered and reasons for rejection of each option**

Based on the documentation reviewed by the team at the MDT meeting, it was determined that the student could not be educated in the general education setting or the out of general education classroom: Documentation demonstrates that the student can access the general education curriculum in a combination setting / part-time with non-disabled peers.

Other relevant factors to the decision – _____

MDT Members:
- [ ] Principal or Designee
- [x] Parent Via telephone
- [ ] Student
- [ ] Social Worker
- [x] General Education Teacher
- [x] Special Education Teacher
- [x] Speech and Language
- [x] *LEA & Interpreter (*may be one)
- [x] Psychologist
- [x] Other: _____
  _____
  _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or if you have questions regarding the Procedural Safeguards,
please contact _____ Ms. Kelly _____ at _____ 645-7150 _____ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001

DCPS-6  86

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

✓ PUBLIC   ___ DPCS CHARTER   ___ LEA CHARTER   ___ NONPUBLIC   ___ PRIVATE/RELIGIOUS

### RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____    Meeting Held: **2/12/2007**

Student: ▮▮▮▮▮    DOB ▮▮▮▮ School: **Stanton**

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Rosa G. Thomas | Rosa G. Thomas | Teacher |
| Tara M. Benn, M.Ed. | Tara M. Benn | School Psychologist |
| Rodney T. Campbell | Rodney T. Campbell | Comp. Ed. Awards |
| Ingrid Liddell Grantious | Ingrid Liddell Grantious | Speech Pathologist |
| Arnold E. Dodd | Arnold E. Dodd | Social Worker |
| Ms. Michelle Williams | Participated by telephone | |
| Suruchi Lall | Suruchi Lall | Sp. Ed. Teacher |
| Brenda Kelly | Brenda Kelly | SEC |

____ Resolved     ✓ Unresolved

Meeting convened, all parties in attendance introduced themselves. Parent via telephone conference. Her advocate as a result of an HOD was present during the Dispute Resolution Meeting. The MDT agreed that a private placement would be considered/ discussed during the placement meeting after eligibility/IEP, if needed. The MDT agrees that J▮▮▮▮ will be referred for a hearing and visual exam and an audiological evaluation within the next 2 business days, which shall be completed by DCPS. However a vision & hearing screening was completed by DCPS.

DCPS-7

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          __ DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          __ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____          Meeting Held: 2/12/2007

Student: ▮▮▮▮ W ▮▮▮▮          School: Start

DCPS agrees to re-convene to share hearing, vision and audiological evaluations within 10 business days, and necessary related services while to added to the IEP as needed. Parent shares through telephone conference that she disagrees with the resolution of this meeting.

RESOLUTION MEETING NOTES          Page _____          July 11, 2005

88

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

## I. IDENTIFICATION INFORMATION

DCPS - IEP Page 1 of 4
Additional Comments: ☐

Student Name: Last ███ W███ First J███ MI

Student ID ███ Soc.Sec.No. ███ Age: ___ Grade 1st

Gender ☒ M ☐ F  Date of Birth ██/2000  Ethnic Group African American

Address 3340 22nd Street #Apt. G S.E.
Washington DC 20020

☒ Non-attending
Attending School Stanton ES    Home School Stanton ES
☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS/

Parent Ms. Willaims

Address of (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate

### II. CURRENT INFORMATION
Date of IEP Meeting: 02/12/2007
Date of Last IEP Meeting: N/A
Date of Most Recent Eligibility Decision: 02/12/2007

Purpose of IEP Conference:
☒ Initial IEP  ☐ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | Native Language |
| Parent | English | English | English | Native Language |
| Home | English | English | English | Native Language |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral ___
Rdg./ Written ___
Instrument: ___
Date: ___

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr/Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0 | 20 | 20 | Hr. | Week | Special Education Teacher | 02/13/2007 | 10 | monthly |
| Speech and Language | | 1 | 1 | Hr. | Week | Speech Therapist | 02/13/2007 | 10 | monthly |
| TOTAL | | 21 | 21 | Hours Per Week | | | | | |

### V. Disability(ies)
Mental Retardation
☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☒ 21-60% ☐ 61-100%
Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)
Print and sign your name below.

Brenda S. Kelly — Brenda Kelly SEC
Michelle Williams VIA the Conference
Suruchi Lall — Suruchi Lall Sp. Ed. Teacher
Annette Doig — Annette Doig School Psychologist
Tara T. Ben — Speech Pathologist
Ingrid L. ___

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature Parent does not agree with IEP. Date 07-02-2001 wants services implemented

District of Columbia Public Schools    Division of Special Education    Appendix - A    IEP Page 1 of 4

89

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON. D.C.

1 of 5

MDT

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**
Eligibility / IEP

MDT REFERRAL DATE: _____

MEETING DATE: 02/12/2007

STUDENT: _____ J███ W███ _____    SCHOOL: _____ Stanton ES _____

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Brenda Kelly | Brenda Kelly | SEC |
| Surichi Lall | Surichi Lall | Special Education Teacher |
| Ingrid L. Gagarios | Ingrid L. Gagarios | Speech Pathologist |
| Rodney T. Campfield | Rodney T. Campfield | Spec Comp. Ed. Aware |
| Tara M. Benn M.Ed. | Tara M. Benn | School Psychologist |
| Rosa G. Thomas | Rosa L. Thomas | Teacher |
| Michelle Williams | via telephone | Parent |

The meeting was convened and introductions were made. A copy of the Procedural Manual
was ~~given~~ shared with verbally to the parent with a brief explanation and a receipt for the Manual was signed. The

purpose of the meeting was stated: MDT met to review all of the documentation and

determined J████ s eligibility for special education.

Parent reports: J████ is not progressing. His teacher said
he is not progressing. He is not on level. He is
unavailable to keep up with his peers. J████ is a follower.
Ms. Thomas, J████ teacher stated that J████ is working
on readiness level. The MDT agrees that the student
should have an OT evaluation.

THE PARENT ☐ IS PRESENT ☒ IS NOT PRESENT AT THE MEETING    Via telephone conference
AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT    J████ W████
☒ IS ELIGIBLE FOR SPECIAL EDUCATION
☐ IS NOT ELIGIBLE FOR SPECIAL EDUCATION

DCPS-9

90

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

2 of 5

MDT REFERRAL DATE _____          MULTIDISCIPLINARY TEAM (MDT)
                                      CONTINUATION MEETING NOTES
                                      MEETING TYPE: Eligibility/IEP

STUDENT ████████████  SCHOOL Stanton ES          DATE 02/12/2007

---

General Education Teacher Reports:

Weakness: does not recognize color words
• does not recognize order of alphabets
• does not recognize sound of alphabets
• does not blend simple three letter words
• does not understand connection that alphabets/
to letters, letters to sounds/ sounds to words.
• does not recognize numbers 9-20
• does not recognize vocabulary words PP list
• uses reversals

---

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

3 of 5

MDT REFERRAL DATE _____       MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT J▮▮▮ ▮▮    SCHOOL _Stanton E.S._    DATE 2/12/2007

Social Worker Reports:

The social worker shared information from the "Social History" dated 10/10/2006. The Social History was completed by Sarah Maria Cohn, PhD a Licensed Psychologist. Student has a history of Asthma. He was a normal delivery full-term. He reached his developmental milestones with little delay.

His parents shared in the Social History that their is concerns regarding his speech and language delays. His parent shared during the meeting (via telephone) that the social history was completed by telephone with Nicole Sampson, PhD Licensed Psychologist. The Social History has both signatures with Maria Cohn, PhD & Nicole Sampson, PhD

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____

4 of 5

STUDENT ____ J___ W____    SCHOOL _____ Stanton ES _____    DATE ____ 02/12/2007

Speech and Language: J____ was administered a complete speech and language evaluation on 11/17/2006. Formal testing revealed that J____ demonstrates a severe delay in his overall receptive and expressive language abilities which is further supported by a moderate delay in receptive and expressive single word vocabulary skills. J____ will receive 1 hr. weekly to improve speech intelligibility, vocabulary, receptive and expressive language skills.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____     MULTIDISCIPLINARY TEAM (MDT)     5 of 5
                                   CONTINUATION MEETING NOTES
                                   MEETING TYPE: Eligibility/IEP

STUDENT J████ W████   SCHOOL Stanton ES   DATE 02/12/2007

Summary & Recommendations:

After reviewing all of the documentation, the MDT determined that the student is eligible for special education as mental retardation (MR)

Ms. Benn notes: -appears to meet the criterion for identifying Mental Retardation outlined in IDEIA 2004.

Specialized instruction is required in the following areas: Reading, Mathematics and Written Expression. 20 hours.

Related services are required in the following areas: Speech Therapy (1 hour per week).

The following accommodations/modifications need to be made: extended time, preferential seating, repeated directions, simplified directions test/directions read aloud to student and oral responses.

Based upon information presented the student does not require Extended School Year services nor is the student warranted compensatory education services, at this time.

Placement Discussion: Based upon the information reviewed by the MDT, the MDT determined that the student could be educated in a combination setting at the neighborhood school (Stanton). The MDT will meet

Advocate and Parent indicates that student's disability Classification should be multiple disability (Mental Retardation and Speech and Language Impaired, however DCPS indicates that student's classification is Mental Retardation (MR). ~~ruling out multiple disabilities~~ as his ~~disability classification~~. Parent and Advocate do not agree with the goals, hours and placement of the IEP, therefore will not sign. Parent and Advocate want Services

DISTRICT OF COLUMBIA PUBLIC SCHOOLS   7-02-01   DIVISION OF SPECIAL EDUCATION   MDT MEETING NOTES   APPENDIX A

94

**HP Officejet 6210**
Personal Printer/Fax/Copier/Scanner

**Log for**
Stanton Elemtary School
2026453564
Jan 31 2007 10:10AM

---

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jan 31 | 10:07AM | Received | 2022654264 | 2:41 | 8 | OK |

*Received Speed/Language 1/31/2007*

DCP5-105

## Stanton Elementary School

## 2701 Naylor Road S.E.
## Washington, D.C. 20020

**February 1, 2007**

**Via Facsimile**
Tyrka & Associates, LLC
1726 Connecticut Ave, NW
Suite 400
Washington, DC  20009

Re:  J W        DOB:

Dear Mr. Tyrka:

     I am sending you a copy of a facsimile dated January 31, 2
the Independent Speech & Language Evaluation. Ms. Kelly, Spe
Stanton ES, telephoned Ms. Tama Sterling, the Independent Speed
Examiner, on December 19, 2006 to inquire about the report. Ms.
evaluation had been sent to your office.  Ms. Kelly immediately (D
telephoned your office.  The receptionist stated that you were also

     Upon receipt of the Due Process Complaint Notice on Janu
stated that DCPS received the Speech and Language Evaluation on
Ms. Kelly telephoned your office for the fax confirmation because
received from your office on December 20, 2006.  Laura Fogliano
Speech and Language Evaluation and noted that the previous fax w
number.  Thus, the MDT was unable to convene on January 24, 200

This letter serves as a request for you and your client to meet to rev
and discuss eligibility.  The proposed meeting dates are:
 February 12, 2007 9:00 am
February 12, 2007 11:00 am
February 12, 2007  1:00 pm

If you have and questions or concerns, please feel free to contact me

Sincerely,

Brenda Kelly
Brenda Kelly
Norman Brooks

CC:   Rashida Wilson

96

DCPS-11

December 19, 2006

Called the law office of J█████ W███████ to check to see if they had received the evaluation for Speech and Language.  The law office is also waiting on the evaluations.

Brenda Kelly

MESSAGE CONFIRMATION                    MAR-28-2007 11:18PM WED

FAX NUMBER: 713 589-5454
NAME      : DANIEL MCCALL, ATTY.

NAME/NUMBER    :    12022654264
PAGE           :    026
ELAPSED TIME   :    07'16"
MODE           :    G3 STD    ECM
RESULTS        :    [ O.K ]

---

Office of the General Counsel
9th Floor
825 North Capitol St, NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

## FACSIMILE

**DATE:** March 28, 2007

**TO:** Douglas Tykra           **FAX:** (202) 265-4264

**CO:** _____    **TEL:** _____

**FROM:** Daniel L. McCall, Esq.
Attorney Advisor, 202-442-5564

No. Pages, Including Cover Sheet:    26

**RE:** J▅▅▅ W▅▅▅ v. DCPS

**COMMENTS:**

5 Day Disclosure

**CONFIDENTIALITY NOTICE**

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

98



**Office of the General Counsel**
**9th Floor**
**825 North Capitol St., NE**
**Washington, DC 20002**
**(202) 442-5000**
**Fax (202) 442-5098**

# FACSIMILE

**DATE:** March 28, 2007

**TO:** Douglas Tykra                    **FAX:** (202) 265-4264

**CO:** _____            **TEL:** _____

**FROM:** Daniel L. McCall, Esq.
Attorney Advisor, 202-442-5564

No. Pages, Including Cover Sheet:    26

**RE:** ▮▮▮▮ W▮▮▮▮ v. DCPS

**COMMENTS:**

5 Day Disclosure

---

**CONFIDENTIALITY NOTICE**

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

---

99

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

<strong>March 28, 2007</strong>

Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232
By Fax:  202-442-5097/5098

RE:    J███W██████ (D.O.B.█████) 

Attorney-Advisor:

A hearing has been scheduled for **9:00 a.m. on April 4, 2007**, to adjudicate a due process complaint filed on behalf of the above-captioned student, J████W██████ In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

Documents:

1.  03/28/07   Disclosure Letter
2.  03/28/07   Notice Compelling DCPS Witness(es)

**Administrative Record**

3.  10/02/06   Hearing Officer's Determination ("HOD")
4.  01/30/07   Due Process Complaint Notice
5.  03/14/07   Hearing Notice

**Evaluations**

6.  10/10/06   Independent Psychoeducational Evaluation (w/ Fax Confirmations)
7.  10/10/06   Independent Social History (w/ Fax Confirmations)
8.  11/17/06   Independent Speech and Language Evaluation (w/ Fax Confirmations)

**Correspondence**

9.  02/02/07   Letter, Tyrka & Associates, LLC to Brenda Kelly, SEC, Stanton ES
10. 03/08/07   Acceptance Letter to Rock Creek Academy

**Other Documents**

<strong>JW1</strong> 100

11. 2006      No Child Left Behind Elementary School AYP Lists

Witnesses:[1]

1. Ms. Michelle Williams, Parent; 3340 22nd Street SE, Apartment G, Washington, DC 20020; 301-735-4458, 202-350-8680, ext. 1054
2. Ms. Kendra Hill, Student Services, Rock Creek Academy; 4401 Connecticut Avenue NW, Washington, DC 20008; 202-378-1377
3. Ms. Sharon Millis, Special Education Advocate & Expert; Tyrka & Associates, LLC
4. Mr. Keith Coyle, Associate; Tyrka & Associates, LLC
5. Mr. Zachary Nahass, Associate; Tyrka & Associates, LLC
6. Ms. Camille McKenzie, Office Assistant; Tyrka & Associates, LLC
7. Mr. Michael Tchorni, Law Clerk; Tyrka & Associates, LLC

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

---

[1] Some witnesses may be testifying by telephone and/or use a designee.  The address and phone numbers for all employees or agents of Tyrka & Associates can be found in the letterhead for this correspondence.

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 03/28/2006 04:26
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

```
DATE,TIME                03/28  04:13
FAX NO./NAME             2024425097
DURATION                 00:12:56
PAGE(S)                  50
RESULT                   OK
MODE                     STANDARD
                         ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

*Recipient:*       OGC

*Fax Number:*

*From:*           Douglas Tyrka

*Regarding:*      J▉▉▉ W▉▉▉▉▉

*# of pages:*     50

*Notes:*          DISCLOSURE

102



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

March 28, 2007

Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

RE:    J███ W███ (D.O.B. ███ 

Attorney-Advisor:

Pursuant to 34 C.F.R. § 300.509(a)(2) and D.C. Mun. Regs. tit. 5 § 3031.1(b), Petitioner hereby compels the following necessary and material witnesses:

1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

3

JW2103

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
## <u>CONFIDENTIAL</u>

### Charles R. Jones, Esq., Due Process Hearing Officer
### 825 North Capitol Street, N.E.  8th Floor
### Washington, D.C.  20002
### Facsimile:  (202) 442-5556

| | |
|---|---|
| In the Matter of                                     ) | IMPARTIAL DUE PROCESS |
|                 ) | |
| J███ W███████          Student,          ) | HEARING OFFICER'S DECISION |
| Date of Birth: ███████                          ) | |
|                 ) | |
|       Petitioner,          ) | Hearing Date: September 18, 2006 |
|                 ) | |
|      vs.          ) | |
|                 ) | Held at:  825 North Capitol Street, N.E. |
| The District of Columbia Public Schools,  ) | Eighth Floor |
| Attending: Stanton Elementary School     ) | Washington, D.C. 20002 |
|      Respondent.          ) | |

## <u>AMENDED DECISION AND ORDER</u>

| | |
|---|---|
| **Parent:** | Ms. Michelle Williams<br>2412 Hartford Street, S.E., #101<br>Washington, D.C.  20020 |
| **Counsel for Parent:** | Douglas Tyrka, Esq.<br>Tyrka & Houck, LLP<br>1726 Connecticut Ave., N.W.<br>Suite 400<br>Washington, D.C.  20009 |
| **Counsel for School:** | Rashida J. Wilson, Attorney- Advisor<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E., 9th Floor<br>Washington, D.C. 20002 |

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

### State Enforcement and Investigative Division
### Special Education Due Process Hearing

## I. INTRODUCTION

On July 17, 2006, a Request for Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Douglas Tyrka, Esq. The request alleges DCPS failed to timely evaluate J.W. in all areas of suspected disabilities.

A Due Process Hearing was convened on September 18, 2006, at the District of Columbia Public Schools. ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Rashida J. Wilson, Esq., Attorney-Advisor, represented DCPS. Douglas Tyrka, Esq., represented the parent. Five Day Disclosure Letters were entered into the record, without any objection by either party. On behalf of the parent: Disclosure Letter dated August 16, 2006: Documents-1 through Documents-9. On behalf of DCPS: Disclosure Letter dated: September 11, 2006. Parent's counsel waived a formal reading of the Due Process Rights. The parties did not introduce any testimony in this case, as the matter was settled on the record.

## II. JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to *Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004,* 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III. ISSUES

Whether DCPS denied the student FAPE by failing to timely evaluate J.W. in all areas of suspected?

2.

105

IV.    SUMMARY OF RELEVANT EVIDENCE

At the commencement of the Hearing, DCPS could not meet its burden. The parties represented that they had discussed terms, but requested the Hearing Officer determined the relief. .

V.    FINDINGS OF FACT

The Hearing Officer makes the following findings of fact:

1.    DCPS failed to conduct warranted evaluations, convene a placement meeting and determine an appropriate educational placement. Under this set of circumstances, DCPS failed to provide a free appropriate public education.

Based upon the foregoing, IT IS HEREBY ORDERED:

1)  **DCPS shall, on or before September 25, 2006, send a notice of intent to conduct the following evaluations:  A Psycho-Educational Evaluation, a Speech and Language Evaluation and a Social History.   The aforementioned evaluations shall, within thirty- (30) calendar days of the issue of the HOD, be performed by DCPS.**

2)  **In the event DCPS fails to adhere to either of these deadlines, the parent is authorized to obtain independent evaluations pursuant to the Superintendent's Directive on the cost of outside consultant fees.**

3)  **DCPS shall, within fifteen- (15) school days of receipt of the evaluation(s), convene a MDT/IEP meeting to review all current evaluations, to review and revise IEP as warranted and to discuss and determine an appropriate educational placement for the 2006-2007 school years.**

4)  **In the event the appropriate placement is to a public school, DCPS shall issue a notice of placement within five- (5) schools days of the MDT/IEP team meeting.  If the appropriate placement is to a non-public facility, DCPS shall issue a notice of placement within thirty- (30) calendar days of the MDT/IEP team meeting.**

3.

5) DCPS shall also consider Compensatory Education for J.W. and, if warranted, develop a Compensatory Education Plan including an appropriate amount of hours, the form and format for compensatory educational relief.

6) All communications and notices shall be sent through the parent's counsel.

7) Any delay in the above time frames caused by the student or student's counsel shall result in an extension of one day for each day of delay.

VI.    APPEAL PROCESS

This is the **FINAL ADMINISTRATIVE DECISION.** Appeals may be made to a court of competent jurisdiction within ninety- (90) days from the date this decision was issued.

Date Filed: 10-03-06

Charles R. Jones, Esq., Hearing Officer

Date Issued: 10/2/06

4.

## DUE PROCESS COMPLAINT NOTICE
### In re J▓▓▓ W▓▓▓▓▓▓
### January 30, 2007

**Petitioner:**        Michelle Williams
**Student:**          J▓▓ W▓▓▓▓
**DOB:**
**Current School:**   Stanton Elementary School ("Stanton ES")
**Residence:**        3340 22nd Street, S.E., Apartment G
                      Washington, DC 20020

**Petitioner's Contact Information for Special Education Purposes:**
                      Tyrka & Associates, LLC
                      1726 Connecticut Ave. N.W. Suite 400
                      Washington, D.C. 20009
                      Tel: 202-265-4260
                      Fax: 202-265-4264

**Violations:**

1. Failure to comply with an October 2, 2006 Hearing Officer's Determination ("HOD").
2. Failure to conduct and review current evaluations in all areas of suspected disability.
3. Failure to develop an appropriate individualized education program ("IEP").
4. Failure to provide an appropriate placement.
5. Failure to provide all necessary specialized instruction and related services.

**Facts:**

**Failure to Comply with an October 2, 2006 HOD.**

1. An October 2, 2006 HOD ordered DCPS to:
   a) fund independent psycho-educational, speech and language, and social history evaluations of J▓▓▓ if a notice of intent to conduct these evaluations was not sent to counsel for the Petitioner on or before September 25, 2006;
   b) convene a multidisciplinary team ("MDT") meeting within 15 school days of receiving the last of these evaluations to:
      i) review all current evaluations of J▓▓▓
      ii) review and revise her IEP as warranted;
      iii) discuss and determine an appropriate placement for the 2006-2007 SY;
      iv) determine J▓▓▓ eligibility for compensatory education and, if warranted, develop an appropriate compensatory education plan.
2. DCPS did not send a notice of intent to conduct psycho-educational, speech and language, and social history evaluations of J▓▓▓ to counsel for the Petitioner on or before September 25, 2006.
3. DCPS received an independent:
   a) psycho-educational evaluation of J▓▓▓ in November 1, 2006;

b)  social history evaluation of J▮▮▮ on November 1, 2006;
c)  speech and language evaluation of J▮▮▮ on December 20, 2006.
4.  DCPS:
a)  did not convene an MDT on or before January 24, 2006;
b)  has not complied with all of the terms and conditions prescribed in the October 2, 2006 HOD.



**Failure to Conduct and Review Evaluations in All Areas of Suspected Disability.**

5.  The Petitioner initially requested that J▮▮▮ be referred for evaluations to determine his eligibility for special education and related services during the 2004-2005 SY.
6.  J▮▮▮ independent psycho-educational evaluation recommends current vision and hearing exams.
7.  DCPS has never conducted current vision and hearing exams of J▮▮▮
8.  Current hearing and vision exams of J▮▮▮ are warranted.
9.  J▮▮▮ independent speech and language evaluation recommends a current audiological exam.
10. DCPS has never conducted a current audiological exam of J▮▮▮
11. A current audiological exam of J▮▮▮ is warranted.



**Failures to Develop an Appropriate IEP and to provide necessary specialized instruction and related services.**

12. J▮▮▮ has been eligible for special education and related services since the 2004-2005 SY.
13. J▮▮▮ independent psycho-educational evaluation:
a)  notes that J▮▮▮'s current teacher, Ms. Thomas, believes that he "is 'totally lost' in the first grade and requires an exceptional amount of one-on-one instruction in order for him to grasp basic academic concepts[;]"
b)  provides current diagnoses of Mixed Receptive-Expressive Language Disorder (By History) and Mild Mental Retardation;
c)  recommends a current disability classification of Mentally Retarded ("MR").
14. J▮▮▮ independent psycho-educational evaluation recommends one-on-one tutoring in twice-weekly, 45 minute sessions to address his academic delays.
15. J▮▮▮'s independent speech and language evaluation recommends therapy in twice-weekly, 30 minute sessions.
16. DCPS has never developed an IEP for J▮▮▮
17. A current IEP for J▮▮▮ is warranted.



**Failure to Provide an Appropriate Placement.**

18. J▮▮▮ has been attending Stanton ES since the 2004-2005 SY.
19. J▮▮▮'s independent psycho-educational evaluation recommends "placement in a separate, structured classroom for his academic subjects with a low teacher-student ration (8-10 students – 1 teacher/1 aide)."
20. DCPS has never provided J▮▮▮ with an appropriate special education placement.
21. The Petitioner is referring J▮▮▮ for admission into appropriate private placements.

109

*[handwritten: agreed to read]*

**Proposed resolution:**

1. DCPS immediately to:
   a) fund and place J███ at an appropriate private school of the Petitioner's choosing with transportation;
   b) fund current hearing and vision exams and an audiological evaluation of J█████ at market rates.
2. DCPS to convene an MDT meeting within 10 days of receiving the last of J████s independent evaluations to:
   a) review all current evaluations of J████
   b) develop an appropriate IEP;
   c) develop an appropriate compensatory education:
      i) per the terms of the October 23, 2006 HOD;
      ii) additionally, to compensate J████for its failure to:
         (1) comply with the October 2, 2006 HOD, per the terms of the <u>Blackman-Jones</u> Consent Decree;
         (2) conduct and review current evaluations of J████in all areas of suspected disability since the 2004-2005 SY;
         (3) develop an appropriate IEP for J████since the 2004-2005 SY;
         (4) provide J████with any specialized instruction or related services since the 2004-2005 SY;
         (5) provide J████with an appropriate placement since the 2004-2005 SY;
3. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:
   a. immediately:
      i. fund and place J████ at an appropriate private school of the Petitioner's choosing with transportation;
      ii. fund current hearing and vision exams and an audiological evaluation of J████, at market rates.
   b. convene an MDT meeting within 10 days of receiving the last of J████s independent evaluations, and
   c. negotiate attorneys' fees for work performed prior to the resolution meeting
   is a necessary attendee at any resolution meeting.
2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.
4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

110

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*       Student Hearing Office

*Fax Number:*

*From:*       Douglas Tyrka

*Regarding:*       J███ W████████

*# of pages:*       5

*Notes:*       Due Process Complaint

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

112

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 01/30/2007 14:56
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
DATE,TIME              01/30  14:54
FAX NO./NAME           SHO
DURATION               00:01:25
PAGE(S)                05
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*    Student Hearing Office

*Fax Number:*

*From:*    Douglas Tyrka

*Regarding:*    ████████████

*# of pages:*    5

*Notes:*    Due Process Complaint

113

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *D. TYRKA*    Fax No.: *265-4264*

LEA Legal Counsel: *OGC*

RE:    W_____ J_____    and (LEA) DOB: _____
            Student's Name

FROM:    **SHARON NEWSOME**
            Special Education Student Hearing Office Coordinator

DATE SENT:    *3/14/07*

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on _*1/31/07*_. Please be advised that the hearing has been scheduled for:

DATE:    *4/4/07*

TIME:    *9:00 Am*

AT:    825 North Capitol Street, NE, Washington, DC
            8th Floor

ASSIGNED HEARING OFFICER: _____

[ ] **THIS IS A FINAL NOTICE OF HEARING:** If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[X] **THIS IS A PROVISIONAL NOTICE OF HEARING:** The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

**JW5  114**

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

atricia Smith, M.A., CCC-SLP

upazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

# PSYCHOEDUCATIONAL EVALUATION

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

| | |
|---|---|
| Name: | J█████ W█████ |
| Date of Testing: | October 10, 2006 |
| Date of Birth: | █████████, 2000 |
| Age: | 6 years, 7 months |
| Grade: | 1st grade |
| School: | Stanton Elementary School |
| Examiner: | Nicole Sampson, Ph.D. |
| Date of Report: | October 28, 2006 |

## REASON FOR REFERRAL

J█████ is a six-old youth who was referred for an initial evaluation by the office of Douglas Tyrka, Esq. The current testing was requested to determine J█████'s eligibility for special education services following concerns regarding his failure to make adequate academic progress in the classroom. J█████ cognitive and educational functioning was assessed in order to provide recommendations that will promote his school success. An adaptive functioning measure was also administered to J█████'s teacher during the course of this evaluation.

## TESTS ADMINISTERED

Beery-Buktenica Developmental Test of Visual Motor
    Integration-5th edition (VMI)
Interview with mother, Ms. Michelle Williams Branch
Interview with teacher, Ms. Thomas
NEPSY-A Developmental Neuropsychological Assessment
Vineland Adaptive Behavior Scales- Classroom Edition
Wechsler Intelligence Scale for Children- 4th Ed. (WISC- IV)
Woodcock-Johnson III, Tests of Achievement (WJ III)

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

## IDENTIFYING INFORMATION

J____ is a six-year-old, left-handed, youth who lives with his mother, step-father, and three siblings (age 9,4, and 2), in Washington DC. English is the language spoken in the home. J____'s biological father is presently incarcerated.

## BACKGROUND INFORMATION

Detailed background and historical information is described in the Social History accompanying this report. Briefly, J____ was born full-term via vaginal delivery after what was described as a complication-free pregnancy and labor. J____'s early development was described as "normal" with the exception of his language skills which were reportedly severely delayed. J____ was evaluated at Children's National Medical Center at the age of two (report not available to this examiner). Ms. Williams Branch stated that the findings supported the presence of significant speech delays. Speech therapy was recommended, but J____ attended only two sessions, as there was a long waiting list to be seen. Ms. Williams Branch stated that it was not until the age of four that J____ was intelligible to individuals other than her. Ms. Thomas, J____'s teacher, indicated that she presently has considerable difficulty understanding J____ and did not believe that he was speaking in full sentences, more like fragmented sentences.

Presently, J____ is enrolled in the first grade of Stanton Elementary School. He was promoted from kindergarten despite what appears to be very minimal understanding and acquisition of number and letter recognition. When asked to describe his current difficulties, Ms. Williams Branch stated that J____ struggles with the comprehension of all basic academic concepts. She is concerned that J____ does not receive enough individual attention in a classroom that has thirty-one other students enrolled. He does not understand the lesson plans at the first grade level, and he requires significant assistance tackling most tasks. J____ was described by Ms. Williams Branch as "not learning anything." She also noted that J____ still has a hard time expressing himself. When he does speak, he occasionally stutters. She added that J____ often cries when he does not know what to do or does not understand directions and instructions.

Ms. Thomas indicated that J____ is "totally lost" in the first grade and requires exceptional amount of one-on-one instruction in order for him to understand basic academic concepts. Ms. Thomas concurred that J____ struggles to comprehend basic information. He is still learning basic counting, and recognizing numbers and letters. He has no sound-syllable identification and often confuses numbers and letters. He says very little and when he does speak, it often takes a long time for him to express his thoughts. J____'s behavior is not problematic in the classroom, though he tends to be a follower of other children who are occasionally mischievous.

## PREVIOUS TESTING

This is J____'s initial psychoeducational evaluation. The speech-language evaluation that Ms. Williams Branch referred to was not available for this examiner's review. A concurrent speech-language evaluation is being conducted.

116

## TEST BEHAVIOR

Testing was conducted over the course of one session at J██████'s school. J██████ was a willing participant in the testing process. He engaged in no spontaneous conversation with the examiner and had difficulty answering questions that were asked of him. J██████ was difficult to understand, and the examiner frequently asked him to repeat himself. He did not understand some of the questions asked by the examiner (i.e., "What is the hardest thing about school?") and he did not understand some of the task expectations of some subtests. Instructions were either repeated or he was given visual cues and prompting to encourage his participation and understanding. J██████did demonstrate adequate attention/concentration and frustration tolerance, despite limited success with most testing items. He seemed to exert his best effort throughout testing, despite his questionable understanding task expectations. Given J█████'s adequate level effort and attention, the following appears to be a reliable estimate of J█████'s current ability levels.

## TEST RESULTS (See Appendix for tests and scores)

## COGNITIVE FUNCTIONING

The WISC-IV is divided into a number of subtests, each of which measures an important aspect of intellectual functioning. Four factor scores were derived from J████'s performance and his performance was compared to same-age peers. He achieved a Verbal Comprehension Index score of 67 (Extremely Low range, at the 1st percentile) which indicated well below age level verbal reasoning skills. His Perceptual Reasoning Index score, a measure of visual processing and problem solving, was 63 (Extremely Low range, at the 1st percentile). On the Working Memory Index (short-term auditory memory and attention), J██████achieved a score of 62, within the Extremely Low range, at the 1st percentile. J█████'s score on the Processing Speed Index, a measure of paper and pencil speed, was 80 (Low Average range, 9th percentile). His Full Scale I.Q. score of 60 was in the Extremely Low range, below the 1st percentile, with even development between his verbal and nonverbal/perceptual reasoning skills.

Within the Verbal Comprehension domain, J█████ scored within the Below Average range when he was required to orally define vocabulary words. He demonstrated Well Below Average proficiency when asked to describe similarities between pairs of objects or concepts (abstract reasoning). When answering questions to assess his practical problem-solving skills and commonsense reasoning, J██████achieved a Below Average score.

On the Perceptual Reasoning Index, J██████earned a score in the Below Average range, on a task requiring him to complete abstract geometric puzzles (nonverbal abstract reasoning). On a task measuring visual concept formation by having him identify items that belong together in a group of pictures, he achieved a Well Below Average range score. When asked to reproduce abstract block designs from a

model as a measure of his visual perceptual skills, J████ also received a Well Below Average range score.

On the Working Memory Index, J████ consistently scored within the Well Below Average range. He was asked to repeat progressively longer strings of numbers forward and backward (short-term auditory memory). He was able to repeat up to four numbers forward and no numbers backward (he did not understand the task expectations for digits-backward). The Arithmetic subtest was substituted for the Letter-Number Sequencing as J████ did not understand task expectations for this subtest. On the Arithmetic subtest, he was presented with math word/picture problems to solve without paper and pencil.

Within the Processing Speed Index, J████ demonstrated Well Below Average proficiency when matching symbols to a key under timed conditions. When asked to discriminate graphic symbols, J████ score improved to the Average range. This task has much less fine motor demand than the Coding subtest.

## NEUROPSYCHOLOGICAL FUNCTIONING

Additional cognitive measures were administered in order to better understand the way in which J████ processes, stores, and retrieves information from the environment. Tests administered included the NEPSY-A Developmental Neuropsychological Assessment, and the Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI), J████'s performance was compared to others his age.

*Phonological Processing:*

Phonological processing is the use of phonological information, the sound structure of oral language, in processing written and oral language. These skills were measured on the NEPSY Phonological Processing subtest where he was asked to match initial and final sounds in words to corresponding pictures. He obtained a Below Average score on this task, at the 9th percentile.

*Oral Language:*

J████s verbal fluency (retrieval efficiency) was measured on the NEPSY Verbal Fluency subtest, which required him to name as many examples as possible from a given category within a one-minute time limit. His overall performance fell within the Above Average range (84th percentile) when asked to name foods and animals (category trials). This task represented a relative strength for J████.

J████s ability to follow oral directions was also assessed via the NEPSY Comprehension of Instructions subtest. He was presented with a series of increasingly complex instructions requiring him to identify certain shapes or characteristics based upon the verbal statement. J████ performed within the Well Below Average range, 1st percentile, on this task.

5

*Verbal-Auditory Memory:*

J███'s verbal memory was assessed via the NEPSY Narrative Memory subtest. When asked to recall as much information as possible after a story was read to him, he scored within the Below Average range, 9th percentile. J███performed better on the cued recall rather than free recall aspects of this task.

*Visual-Motor Integration:*

On the Beery-Buktenica Developmental Test of Visual Motor Integration (VMI), J███was asked to copy a series of geometric figures that become increasingly complex in terms of shape, orientation, and perspective. He earned a score within the Average range (age equivalent= five years, six months). The supplemental subtests were also administered in order to measure J███'s visual perception and graphomotor control, separately. On the first subtest, he was asked to match the geometric figures to a reference figure by pointing (no written response). He scored within the Below Average range (age equivalent = five years, six months). On the second subtest, J███ was asked to draw the test figures within a specified pathway. His score on this test was also within the Below Average range (age equivalent= four years, eleven months). Broadly, the findings indicate scores that are slightly below age-level expectations appear to be the result of both weak visual perception and motor coordination skills. However, his overall visual motor integration score did place within the Average range.

## ACADEMIC ACHIEVEMENT
J███'s academic achievement levels in reading, math, and written language were evaluated on the Woodcock-Johnson III, Tests of Achievement (WJ III). Standard scores, percentiles, and functioning levels were obtained by comparing J███to others his age. It should be noted that the WJ III does not discriminate well at younger ages and may overestimate a child's academic functioning.

*Reading:*

When asked to read a list of upper and lower case letters followed by progressively more difficult words (sight-word reading), J███s score fell within the Low Average range, at the 9th percentile. J███incorrectly identified the letter 'A' as an 'I' and read the word "cat" as "my." He could identify uppercase and lower case letters.

*Mathematics:*

J███was unable to perform even the most simple math calculation. He demonstrated minimal skill in writing numbers. On the applied math task, J███ was asked to calculate problems that were accompanied by pictures and/or written information. This included conceptual story problems involving measurement, weight and money. His performance fell within the Low Average range, at the 20th

percentile.

### Written Language:

On a test of written spelling (pre-writing skills), he scored within the Average range, at the 61st percentile. J███████correctly printed both upper case and lower case letters, but was unable to spell basic words such as "in" or "he".

### Informal Assessement :

J█████was unable to answer questions such as his birthdate, phone number, or location of where he lived. He was unable to identify his left from his right. He was familiar with several shapes and colors. Though he could count and say the letters of the alphabet, he did not exhibit age-appropriate visual recognition of upper and lower case letters and numbers.

## ADAPTIVE FUNCTIONING

The Vineland Adaptive Behavior Scales were administered to Ms. Thomas. The scales were used to determine if J█████ has adaptive deficits, which, in combination with his level of cognitive functioning, warrant a diagnosis of Mental Retardation. According to the results of the Vineland Adaptive Behavior Scales, J██████ currently is functioning within the Low range of the Communication Domain, with mild deficits. He is functioning within the Moderately Low range of the Daily Living Skills Domain. Finally, within the Socialization Domain, he is functioning within the Moderately Low range. His overall Adaptive Behavioral Composite Score fell within the Low range, with mild deficits (SS=68). The results of the Vineland Adaptive Behavior scales indicate J██████has significant deficits across all three areas of adaptive functioning which is consistent with a diagnosis of Mental Retardation.

In a telephone interview, Ms. Williams Branch confirmed the presence of adaptive functioning deficits. She also acknowledged that she tends to "do a lot of things for him" that he should be able to do on his own. J██████ was described as "very emotional" and cries frequently when he does not understand what is expected of him. J██████'s lack of understanding of numbers and letters can interfere with his participation in age-appropriate games that involve counting. Of note, Ms. Williams Branch did indicate that J█████ can complete some basic self-care (tie his shoes, wash himself).

## SUMMARY OF FINDINGS

J██████presented as a six-year old youth who was cooperative, and a willing participant throughout the assessment process. He was difficult to understand, at times, said very little, and had difficulty answering many of the test items. The evaluation was requested as an initial evaluation to determine J██████'s eligibility for special education services. On the WISC-IV, J██████ achieved Extremely Low range scores in the areas verbal reasoning, nonverbal reasoning, and short-term auditory memory. His paper-and-pencil speed placed within the Low Average range.

7

J█████ history of speech-language delays may have contributed to his weak Verbal Comprehension score; however, his overall performance, which reflected impairment across both the verbal and visual reasoning realms, is more indicative of global cognitive limitations.

Neuropsychological testing indicated Above Average performance in the area of verbal retrieval of categorical information. However, his phonological processing, short-term verbal memory and receptive language scores fell within the Below Average to Well Below Average ranges. On measures of his visual-motor integration, visual perception, and motor coordination skills, J█████s scores ranged from Below Average to Average.

Standardized testing, informal assessment, and teacher report were utilized to assessment J█████'s academic achievement. His scores in math word/visual problems placed within the Very Low range. J█████earned Low Average scores on measures of early reading and writing skills; however, it is imperative to remember that the WJIII does not discriminate well in younger ages and may overestimate a child's functioning. Furthermore, several subtests of the WJIII could not be administered due to J█████'s lack of familiarity with numbers and letters. Based upon the observations of this examiner during testing and his teacher's report, J█████ is not able to perform adequately in his classroom. He frequently does not understand task expectations and requires one-on-one assistance to make basic gains. His skill levels in his present classroom are well below that of his peers. He is still learning to recognize the alphabet, and often does not understand the difference between numbers and letters.

Overall, these results indicate that J█████has significant deficits across several measures of verbal and nonverbal reasoning. These deficits do not appear to be the function of lack of concentration or attention, nor do they appear to be consistent with a diagnosis of a learning disability. J█████ did demonstrate some basic skill in areas such as verbal retrieval skills and visual motor integration skills; however, skills in these areas are not closely tied to higher level thinking skills. Both parent and teacher corroborate that J█████has significant adaptive functioning deficits in multiple areas that, in combination with his cognitive ability, warrant a diagnosis of Mild Mental Retardation.

## DIAGNOSTIC IMPRESSIONS
Axis I:    315.32 Mixed Receptive- Expressive Language Disorder, By History
Axis II:   317 Mild Mental Retardation


## RECOMMENDATIONS
1.  Based on the results of the evaluation, the multidisciplinary team should provide J█████special education services under the classification of Mentally Retarded. J█████requires placement in a separate, structured classroom for his academic subjects with a low teacher-student ratio (8-10 students- 1

121

teacher/1 aide).  J▉▉ will continue to fall farther behind if he remains in a larger classroom setting.

2. J▉▉ requires one-on-one tutoring to address his academic delays (2x/week/45 minute sessions).  Usage of a multisensory approach to reading and writing (i.e., Lindamood-Bell or Phonographix) is strongly recommended.

3. The findings from the Speech-Language evaluation should be utilized in conjunction with this assessment to assist in treatment planning.

4. Ms. Williams-Branch should schedule an appointment with J▉▉'s pediatrician to ensure there are no medical causes for J▉▉'s difficulties (e.g., exposure to lead).

5. Updated vision and hearing exams should be scheduled.

6. Multisensory approaches to teaching should be incorporated into lesson plans whenever possible (i.e., hands-on learning, videos).

7. J▉▉ should be taught information in small amounts that can be reviewed frequently until he has mastered the subject.  These small amounts should be repeated frequently.

8. Learning memory strategies and techniques may improve J▉▉'s immediate recall.  These strategies would include the use of verbal rehearsal, grouping or chunking information, making visual images, and mnemonics.

9. J▉▉ needs extra time for the completion of assignments and tests.  For optimal performance, he needs sufficient time to process directions, complete the required reading, and plan and organize responses.  This modification should be allowed for classroom assignments and examinations.

10. When appropriate, J▉▉'s hard work and determination should be acknowledged.  This will be critical not only in facilitating his academic progress, but in maintaining his self-esteem.

11. J▉▉ should be re-evaluated in one year to monitor and track his progress.

It has been a pleasure working with J▉▉ and his mother.  If you have any questions regarding this report, please feel free to contact Dr. Sampson or Dr. Cohn at (202) 333-6251.

Nicole Sampson, Ph.D.
Licensed Psychologist

Maria Zimmitti Cohn, Ph.D.
Licensed Psychologist
Director of Clinical Services

## APPENDIX

(Scores are based on national norms)

S-S/A= Scaled score by age; P/A= Percentile by age
SS= Standard score; G.E.= Grade equivalent
A.E.= Age equivalent

## COGNITIVE TEST

### Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV)

| | S-S/A | | S-S/A |
|---|---|---|---|
| Verbal Comprehension | | Perceptual Reasoning | |
| Similarities | 2 | Block Design | 2 |
| Vocabulary | 5 | Picture Concepts | 3 |
| Comprehension | 6 | Matrix Reasoning | 7 |
| | | | |
| Working Memory | | Processing Speed | |
| Digit Span | 3 | Coding | 4 |
| Arithmetic | 4 | Symbol Search | 9 |

Composite Scores

| Scale | SS | Percentile | Range |
|---|---|---|---|
| Verbal Comprehension | 67 | 1 | Extremely Low |
| Perceptual Reasoning | 63 | 1 | Extremely Low |
| Working Memory | 62 | 1 | Extremely Low |
| Processing Speed | 80 | 9 | Low Average |
| Full Scale | 60 | 0.4 | Extremely Low |

## EDUCATIONAL TESTS

### Woodcock-Johnson III: Tests of Achievement
(The Average Range is 90-110)

| | G.E. | S-S | P/A |
|---|---|---|---|
| Basic Reading Cluster | | | |
| Letter-Word Identification | K.3 | 80 | 9 |
| | | | |
| Broad Mathematics Cluster | | | |
| Applied Problems | <K.0 | 66 | 1 |
| | | | |
| Broad Written Language Cluster | | | |
| Spelling | K.4 | 89 | 23 |

## NEUROPSYCHOLOGICAL TESTS

__Beery-Buktenica Developmental Test of Visual-Motor Integration- 5th Ed.__
(The Average range is 90-110)

|                    | S-S | A.E. | P/A |
|--------------------|-----|------|-----|
| VMI                | 92  | 5-6  | 30  |
| Visual Perception  | 85  | 5-6  | 16  |
| Motor Coordination | 86  | 4-11 | 18  |

__NEPSY-A Developmental Neuropsychological Assessment__
(The Average range is 8-12)

|                            | S-S/A | P/A | Range              |
|----------------------------|-------|-----|--------------------|
| Verbal Fluency             | 13    | 84  | Above Average      |
| Phonological Processing    | 6     | 9   | Below Average      |
| Comprehension of Instructions | 3  | 1   | Well Below Average |
| Narrative Memory           | 6     | 9   | Below Average      |

## RATING SCALES/QUESTIONNAIRES

__Vineland Adaptive Behavior Scales-Classroom Edition__
(The Average range is from 85-115)

| Domain              | Standard Score | A.E. | Range              |
|---------------------|----------------|------|--------------------|
| Communication       | 66             | 2-11 | Low (Mild Deficit) |
| Daily Living Skills | 70             | 3-1  | Moderately Low     |
| Socialization       | 76             | 2-9  | Moderately Low     |

Adaptive Behavioral Composite Score: 68                    Low (Mild Deficit)

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 11/01/2006 15:48
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

```
DATE,TIME              11/01  15:45
FAX NO./NAME           OMC
DURATION               00:03:39
PAGE(S)                11
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**      Stanton ES & OMC

**Fax Number:**     645-3264

**From:**           Camille McKenzie

**Regarding:**      J████ W████

**# of pages:**     11

**Notes:**          Independent psychoeducational eval

125

```
┌─────────────────────────────────────────┐
│ TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
```

```
                              TIME  : 11/01/2006 15:53
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
DATE,TIME            11/01  15:49
FAX NO./NAME         2026453264
DURATION             00:03:43
PAGE(S)              11
RESULT               OK
MODE                 STANDARD
                     ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Stanton ES & OMC |
| *Fax Number:* | 645-3264 |
| *From:* | Camille McKenzie |
| *Regarding:* | J███ W████ |
| *# of pages:* | 11 |
| *Notes:* | Independent psychoeducational eval |

126

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

upazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

## SOCIAL HISTORY

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

| | |
|---|---|
| Name: | J███ W████ |
| Date of Testing: | October 10, 2006 |
| Date of Birth: | ████████████████ |
| Age: | 6 years, 7 months |
| Grade: | 1st grade |
| School: | Stanton Elementary School |
| Examiner: | Nicole Sampson, Ph.D. |
| Date of Report: | October 28, 2006 |

J███ is a six-year-old youth who lives with his mother, Ms. Michelle Williams Branch, step-father, Eric Branch, and three siblings: Tavion, age 9; Eric, age 4; and Brooke, age 2. English is the primary language spoken in the home. J███'s biological father, David Donaldson, has been incarcerated since 2005. Ms. Williams Branch was uncertain of his release date, but believes it to be in 2007. She has not been involved with Mr. Donaldson since J███ was approximately 18 months of age. Mr. Branch is fulfilling a paternal role in J███'s life.

Ms. Williams Branch served as informant regarding J███'s background and history. She described her pregnancy with J███ as generally uneventful. She delivered J███ full-term via vaginal delivery, weighing seven pounds, fifteen ounces. No complications were noted. Ms. Williams Branch described J███'s early motor development as normal with no concerns about the presence of any developmental delays (i.e., sitting up- 7 months, walking- 10 ½ to 11 months). However, Ms. Williams Branch indicated that J███'s language skills were severely delayed. She stated that J███ was essentially unintelligible until the age of four, when he could be then be understood by some. He was reportedly evaluated at Children's National Medical Center at the age of two and the presence of language delays was confirmed (report not available to this examiner). However, speech therapy services were confounded by a long waiting list. J███ only attended two sessions. Presently, Ms. Williams Branch indicated that J███ still

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

requires speech therapy as he now stutters and continues to have a difficult time expressing himself.  Medically, J█████has been diagnosed with asthma, and he has been prescribed an albuterol inhaler and Singulair.   He has history of frequent hospitalizations for acute asthma attacks, which started at the age of four months.  The frequency of his hospital visits has decreased with age.  He was also hospitalized once for a broken arm.  He has never been evaluated for any suspected learning difficulties until now, nor has he received any additional tutoring or assistance.  His most recent physical was in October 2006.  Ms. Williams Branch does not believe J███ has had a recent vision or hearing screening.

J████attended Head Start and was enrolled in kindergarten at Stanton Elementary School.  He is presently in the first grade at Stanton in a classroom with thirty-one other students.  It is unclear why J███ was promoted to the first grade despite his inadequate acquisition of the kindergarten curriculum.  Ms. Williams Branch noticed that J███ was having academic difficulties starting in Head Start.  At that time, Ms. Williams Branch observed that J███ was unable to keep up with his peers in learning even the most basic academic facts.  It was at that time that she requested an IEP be developed to address J████'s learning difficulties.  Ms. Williams Branch continues to be concerned with J████'s severe learning difficulties.  He is still unable to consistently recognize basic numbers and letters and thus, he cannot begin to understand introductory phonemic awareness (i.e., sound-symbol identification).  He needs close supervision to complete assignments and works at a very slow rate.  Directions and instructions need to be repeated often in order for him to understand the task at hand.

Socially, Ms. Williams Branch notes that J████ gets along well with others.  However, he is sensitive to teasing that occurs due to his stuttering.  He is a likeable little boy and does not routinely engage in fighting or other aggressive acts.   He does tend to be a follower rather than a leader and this may result in him following children who are being mischievous.  Ms. Williams Branch noted that J████s behavior was more problematic in the kindergarten classroom, where he was "acting up" more regularly due to his lacking of understanding of the class lessons.  At home, J████has a strong relationship with his mother and his siblings.  Ms. Williams Branch notes that J████ does instigate fights with his siblings, but these tend to be reflective of normal sibling relations.

Ms. Williams Branch is hopeful that J████ will receive additional assistance to address his learning and speech difficulties which, in turn, will translate into significant improvements in the classroom.

This social history information was obtained in conjunction with a psychoeducational evaluation.

Nicole Sampson, Ph.D.
Licensed Psychologist

Maria Cohn, Ph.D.
Licensed Psychologist
Director of Clinical Services

TRANSMISSION VERIFICATION REPORT

```
                              TIME : 11/01/2006 15:42
                              NAME : TYRKA & ASSOCIATES
                              FAX  : 2022654264
                              TEL  : 2022654260
                              SER.# : 000A6J693992
```

```
DATE,TIME          11/01  15:41
FAX NO./NAME       2026453264
DURATION           00:01:10
PAGE(S)            04
RESULT             OK
MODE               STANDARD
                   ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264
♦

*Recipient:*      Stanton ES & OMC

*Fax Number:*     645-3264

*From:*           Camille McKenzie

*Regarding:*      J█████ W█████████

*# of pages:*     4

*Notes:*          Independent Social history

130

```
TRANSMISSION VERIFICATION REPORT

                              TIME : 11/01/2006 15:44
                              NAME : TYRKA & ASSOCIATES
                              FAX  : 2022654264
                              TEL  : 2022654260
                              SER.# : 000A6J693992


DATE,TIME                     11/01  15:43
FAX NO./NAME                  OMC
DURATION                      00:01:10
PAGE(S)                       04
RESULT                        OK
MODE                          STANDARD
                              ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Stanton ES & OMC |
| *Fax Number:* | 645-3264 |
| *From:* | Camille McKenzie |
| *Regarding:* | J██████ Wi██████ |
| *# of pages:* | 4 |
| *Notes:* | Independent Social history |

131

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Jupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

# SPEECH AND LANGUAGE EVALUATION

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

Name:            J███ W████
Date of Birth:   ██████
Date of Evaluation: 11/17/2006
Age:             6 years, 8 months
School:          Stanton Elementary School
Examiner:        Tamela Sterling, M.S., CCC-SLP
Attorney:        Tyrka & Associates

## BACKGROUND INFORMATION

J███ is a 6-year-old African American male who was evaluated to assess current speech and language functioning to determine if he qualifies for speech and language services. This evaluation may be used to aid in the determination of an appropriate school placement for school year 2006-2007. J███ is from a home in which English is the primary language. According to his mother, J███ did not begin talking until he was four. Mother also states J███s intelligibility has improved since his last speech and language evaluation was completed at Children's Hospital around July 2003. This clinician did not have access to previous speech and language report to compare abilities for the purpose of this report. J███ is currently in the 1st grade at Stanton Elementary and is being assessed to establish the necessity for additional services for success in school. J███ is currently receiving no special education services.

## TEST ADMINISTERED

*Clinical Evaluation of Language Fundamentals-4th Edition (CELF-4)*
*Receptive One-Word Picture Vocabulary Test (ROWPVT)*
*Expressive One-Word Picture Vocabulary Test (EOWPVT)*
*Goldman-Fristoe Test of Articulation-- 2nd Edition*

## CLINICIAL OBSERVTIONS

J███ willingly accompanied examiner to testing, and was friendly during initial introductions. Teacher reports J███ still has difficulty getting through the alphabet and with is only counting to about six or seven. Teacher also states J███ has difficulty following classroom directions and speaking in complete sentences. J███ is currently in a classroom with about 24 students. Testing was conducted at Stanton Elementary School in Washington, D.C. in a quiet room with

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

minimal outside distractions. Rapport was established quickly with clinician and purpose of testing was explained. J█████ remained focused throughout 1 ½ hour testing period, with little re-direction required to stay on task. He responded well to positive reinforcement and benefited from repetition when it was allowed during testing. It appeared as though J█████put forth his best effort throughout testing and findings are judged to be a valid reflection of his true abilities.

## LANGUAGE SAMPLE
An informal language sample was obtained throughout this assessment during rapport building and in-between test and/or subtests. J█████only responded to direct basic questions which required only a one or two word response. He was observed to speak only in short 3 – 4 word utterances when interacting with his teacher and peers. J█████ demonstrated difficulty answering open 'wh' questions which required a more detailed response. Based on his spontaneous sample, J█████s ability to communicate did not appear age-appropriate.

## TEST RESULTS

**Language – *CELF-4***
**CELF–4 CORE LANGUAGE SCORE**
J█████ was administered four core subtests of the Clinical Evaluation of Language Fundamentals–Fourth Edition (CELF–4) from which his Core Language score was derived. The Core Language score is considered to be the most representative measure of J█████'s language skills and provides an easy and reliable way to quantify a student's overall language performance. The Core Language score has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J█████s Core Language score, the following subtests were administered:
Concepts & Following Directions
Word Structure
Recalling Sentences
Formulated Sentences

J█████received a Core Language score of 52 which places him in the very low range of functioning.

**CELF–4 RECEPTIVE LANGUAGE INDEX**
The Receptive Language index is a cumulative measure of J█████ performance on two or three subtests designed to best probe receptive aspects of language including comprehension and listening. The Receptive Language index has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J█████s Receptive Language index, the following subtests were administered:
Concepts & Following Directions
Word Classes 1–Receptive
Sentence Structure

J█████received a Receptive Language index of 65 this performance places him in the very low range of functioning.

3

## CELF–4 EXPRESSIVE LANGUAGE INDEX

The Expressive Language index is a cumulative measure of J█████s performance on the three subtests that probe expressive aspects of language including oral language expression. The Expressive Language index has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J█████'s Expressive Language index, the following subtests were administered:
Word Structure
Recalling Sentences
Formulated Sentences

J█████received an Expressive Language index of 57 this performance places him in the very low range of functioning.

## CELF–4 SUBTEST SCORES

| Subtest-- subtests have a mean of 10 and a standard deviation of 3. Scores between 7-13 indicate average functioning. | Scaled Score |
|---|---|
| **Concepts & Following Directions** -- evaluates the student's ability to interpret, recall, and execute oral commands of increasing length and complexity that contain concepts of functional language. The student identifies objects in response to oral directions. Analysis of data suggest J█████may have difficulty understanding and acting upon spoken directions, various concepts some in the area of, sequencing (directions involving concepts: first; middle; last; fourth; third; and second) and temporal directions (involving concepts: after; then; and before) | 1 Below Average |
| **Word Structure** – assess the student's ability to apply word structure rules (morphology) to mark inflections, derivations, and comparison; and select and use appropriate pronouns to refer to people, objects and possessive relationships. A below average score indicates J█████may have difficulty substituting pronouns for nouns, indicating number, time and possessive relationships; making comparisons of characteristics; describing pictures and events. | 4 Below Average |
| **Recalling Sentences** – assess auditory retention and the ability to recall and reproduce compound and complex sentences. The student imitates sentences presented by the examiner. A below average score indicates J█████has a diminished ability remembering spoken sentences of increasing complexity in meaning and structure which is required for following directions, note taking, learning vocabulary and subject content. | 4 Below Average |
| **Formulated Sentences** – assess the ability to create sentences using various grammatical forms. The student is asked to formulate a sentence, using target words or phrases, while using an illustration as a reference. Despite multiple attempts, re-phrasing and repetition of directions, clinician was unable to condition J█████for this particular subtest. J█████was unable to formulate complete grammatically correct sentences to complete this subtest. | 1 Below Average |
| **Word Classes – Receptive** – examines the ability to understand and perceive relationships between pictures. J█████was asked to | 8 Average |

134

| | |
|---|---|
| choose the items that best represent the desired relationship from a set of three and four pictures. This score indicates average functioning. | |
| **Sentence Structure** – evaluates the ability to interpret spoken sentences of increasing length and complexity, and select the pictures that illustrate referential meaning of the sentence. This below average score indicates J██ may have difficulty with sentence comprehension and the understanding of relationships among spoken language and matching to pictured references sentences that are spoken or read. | 4 Below Average |

## Vocabulary

The *EOWPVT*, was administered to assess J██s expressive vocabulary skills. J████ was required to name the object shown in test booklet provided by the examiner. This test has a mean of 100 and a standard deviation of +/- 15. Examples of pictures J████was able to name are: tiger; fruit; skateboard; fish tank; raccoon; and dentist. Examples of pictures he was unable to name are: wall; clouds; bridge; tire; penguin; bridge; and fireplace. This performance suggests J████is functioning below the average range for his age on this test of single-word vocabulary.

The *ROWPVT*, was administered to assess J██s receptive vocabulary skills. J████ was required to identify one picture from four choices which best represented the target word. This test has a mean of 100 and a standard deviation of +/- 15. Examples of pictures J████was able to identify are: juggler; pitching; melting; letter; liquid; and core. Examples of pictures he was unable to identify are: noise; oval; celebration; number; sailboat; hatching and pilot. This performance shows J████is functioning below the average range for his age on this test of single-word vocabulary.

| Test | Standard Score | Percentile |
|---|---|---|
| *Expressive One-Word Picture Vocabulary Test* | 71 | 3 |
| *Receptive One-Word Picture Vocabulary Test* | 72 | 3 |

## Articulation/Voice/Fluency/Oral Motor

The *Goldman Fristoe Test of Articulation 2nd Edition* was administered to determine how J███ uses individual sounds in single words. During formal testing J████ made no errors when using sounds in single words. His overall speech intelligibility is judged to be about 95% for single words and 80% for short phrases. As utterance length increases intelligibility decreases. When using longer utterances J████was observed deleting the final consonants from words which impacts overall speech intelligibility. It should also be noted that during testing, J████demonstrated some difficulty making necessary repairs to any breakdown in communication. Substituting /f/ for /th/ was observed but is considered a dialectical difference and the one substitution has little to no impact on overall intelligibility. Voice and oral motor skills fell in the normal range for his age and gender. J████'s hearing appeared to be within normal limits for conversational levels of speech.

## SUMMARY AND IMPRESSIONS

J████s a 6-year-old male who was evaluated to determine if he qualifies for speech and language services. J████s strengths are:

- understanding the relationships between pictures
- voice, and fluency are all within normal limits

J███'s weaknesses are in the areas of:
- receptive and expressive one word vocabulary skills which fall below the average range of functioning
- receptive language skills involving
  -concepts and following directions
  -interpreting spoken sentences of increasing length and complexity
- expressive language skills involving
  -formulating grammatically correct sentences
  -remembering spoken sentences of increasing length and complexity
  -word structure using irregular plurals, possessive pronouns, future tense, comparative and superlative, subjective pronouns, uncontractible copula (i.e., She is and They are) and irregular past tense appropriately

*Formal testing revealed J████ demonstrates a severe delay in his overall receptive and expressive language abilities which is further supported by a moderate delay in receptive and expressive single word vocabulary skills.*

## RECOMMENDATIONS

1. The results from this assessment should be compared with current educational and cognitive testing because most of J███'s speech and language scores indicate low overall functioning across the board. J████ may be functioning at his cognitive level therefore intensive or direct services may not be beneficial. Regardless, it is recommended J████ receive 30 minutes of speech and language therapy 2 times weekly (30 minutes individual and 30 minutes of small group) to increase overall receptive and expressive language abilities and to improve speech intelligibility. J████ should be evaluated annually to determine if he is benefiting from direct services.

2. J████'s profile indicates he has difficulty understand directions involving various concepts, therefore a classroom that is able to provide rephrasing and repeating directions is recommended to ensure understanding.

3. In the classroom, curriculum vocabulary should be provided in:
   - Context clues – include the word in a phrase(s) to help with understanding.
   - Functional settings – relate the word if possible to everyday life.

4. Ideal service delivery model would include small group and inclusion support where J████ can get the individual attention he requires to succeed academically.

5. J████ may also benefit from a multi-sensory approach to learning and a classroom where there are opportunities to demonstrate his knowledge through a variety of media. Instruction will need to be direct, specific and will need to incorporate review of material already mastered.

6

6. A full audiological exam is recommended to rule out any hearing difficulty due to continued reduced overall intelligibility and reduced ability to follow simple directions.

It was a pleasure evaluating J█████, if there should be any questions concerning this assessment, please feel free to contact me at 202-333-6251.

Tamela D. Sterling, M.S., CCC-SLP
Speech-Language Pathologist

137

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 12/20/2006 16:20
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

```
DATE,TIME                 12/20  16:17
FAX NO./NAME              OMC
DURATION                  00:02:23
PAGE(S)                   07
RESULT                    OK
MODE                      STANDARD
                          ECM
```

# TYRKA & ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     Stanton ES & OMC

*Fax Number:*    202-645-3264

*From:*          Camille McKenize

*Regarding:*     J███ W███████

*# of pages:*    7

*Notes:*         Independent Speech & Language

138

TRANSMISSION VERIFICATION REPORT

```
TIME  : 12/20/2006 16:23
NAME  : TYRKA & ASSOCIATES
FAX   : 2022654264
TEL   : 2022654260
SER.# : 000A6J693992
```

```
DATE,TIME          12/20  16:21
FAX NO./NAME       2026453264
DURATION           00:02:23
PAGE(S)            07
RESULT             OK
MODE               STANDARD
                   ECM
```

*This is the # it got sent to originally*

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Stanton ES & OMC |
| *Fax Number:* | 202-645-3264 |
| *From:* | Camille McKenize |
| *Regarding:* | J█████ W████████ |
| *# of pages:* | 7 |
| *Notes:* | Independent Speech & Language |

139



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Brenda Kelly, Stanton ES |
| *Fax Number:* | 202 645 3264 |
| *From:* | Laura Fogliano |
| *Regarding:* | J████ W█████ |
| *# of pages:* | 8 incl. cover |
| *Notes:* | Independent Speech and Language Evaluation. Original fax confirmation is included. Thanks for your patience! |

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

140

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME  : 01/31/2007 10:42
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────┐
│  DATE,TIME              01/31  10:39                        │
│  FAX NO./NAME           2026453264                          │
│  DURATION               00:02:31                           │
│  PAGE(S)                08                                  │
│  RESULT                 OK                                  │
│  MODE                   STANDARD                           │
│                         ECM                                │
└──────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Brenda Kelly, Stanton ES |
| *Fax Number:* | 202 645 3264 |
| *From:* | Laura Fogliano |
| *Regarding:* | J███ W███ |
| *# of pages:* | 8 incl. cover |
| *Notes:* | Independent Speech and Language Evaluation. Original fax confirmation is included. Thanks for your patience! |

141



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

Brenda Kelly
Stanton Elementary
2701 Naylor Road SE
Washington, DC 20020
Phone: 202-645-3255
Fax: 202-645-3264

**RE: J██████ W██████ (D.O.B. ██/██/00)**

Dear Ms. Kelly:

I am writing in reference to your letter dated February 1, 2007. In it, you state that on January 31, 2007, "Laura Fogliano faxed a copy of the Speech and Language Evaluation and noted that the previous fax was sent to the wrong number." Further, you allege that no fax was received from our office on December 20, 2006.

To the contrary, Ms. Fogliano's note to you made clear that the original fax had been sent to the correct number. Moreover, the fax confirmation that Ms. Fogliano sent to your office on January 31, 2007 clearly indicates that the Speech and Language Evaluation was sent to the correct fax number (202-645-3564) on December 20, 2006.

That being said, we have been waiting for an MDT invitation from you and would be happy to attend an MDT meeting on February 12, 2007 at 1 p.m. I would respectfully remind you that a due process complaint has been filed for this student and, as such, our attendance at an MDT meeting does not absolve you of your responsibility to convene a separate resolution session. Please send a meeting confirmation to our office at your earliest convenience. We look forward to hearing from you soon.

Sincerely,

Douglas Tyrka



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Brenda Kelly, Stanton ES |
| *Fax Number:* | 202 645 3264 |
| *From:* | Douglas Tyrka |
| *Regarding:* | J████ W████ |
| *# of pages:* | 3 incl. cover |
| *Notes:* | |

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

143

```
                    TRANSMISSION VERIFICATION REPORT

                                    TIME : 02/02/2007 11:00
                                    NAME : TYRKA & ASSOCIATES
                                    FAX  : 2022654264
                                    TEL  : 2022654260
                                    SER.# : 000A6J693992


    DATE,TIME              02/02  10:59
    FAX NO./NAME           2026453264
    DURATION              00:00:54
    PAGE(S)               03
    RESULT               OK
    MODE                 STANDARD
                         ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

**Recipient:**    Brenda Kelly, Stanton ES

**Fax Number:**   202 645 3264

**From:**        Douglas Tyrka

**Regarding:**   J██████ W████████

**# of pages:**  3 incl. cover

**Notes:**

144

March 8, 2007

Doug Tyrka, Esq.
1726 Connecticut Ave NW No.400
Washington, DC 20009

Re: J██████ W█████
DOB: ██████

Dear Mr. Tyrka,

Thank you for referring J██████ W█████ to Rock Creek Academy. We have reviewed this information and feel that Rock Creek Academy can provide the required and appropriate services for J█████ We will contact Ms. Michelle Williams to schedule a follow up interview and tour of our facility. Currently we have limited space available. We can enroll J█████ upon receipt of funding, pending space availability. Funding may be secured through parent payment, a DCPS Notice of Placement, or the results of a due process hearing or court order.

A copy of this referral packet has been forwarded to the office of Ruth Blake, Executive Director of the Non-Public Unit at DCPS.

If you have any questions or concerns regarding this referral, please contact me at the above listed number. Thank you for considering Rock Creek Academy as a possible placement for your client.

Sincerely,

Keren Plowden, MA
Executive Director of Student Services

Cc:    Ruth Blake, Director, Non Public, Charter, Interagency Program

**JW101**45

| | | Year : 2006 |
| | | Group : DCPS |
| **IMPROVEMENT STATUS BY SCHOOL** (1) | | Category : ELEMENTARY |

| SCHOOL | School Code | READING | MATH | ATTENDANCE |
|---|---|---|---|---|
| 1. ADAMS ES | 201 | - | - | - |
| 2. AITON ES | 202 | - | - | I |
| 3. AMIDON ES | 203 | - | I | - |
| 4. BANCROFT ES | 204 | C | - | - |
| 5. BARNARD ES | 205 | - | - | - |
| 6. BEERS ES | 206 | I | - | - |
| 7. BENNING ES | 207 | I | C | - |
| 8. BIRNEY ES | 208 | - | - | - |
| 9. BOWEN ES | 211 | C | C | - |
| 10. BRENT ES | 212 | - | - | - |
| 11. BRIGHTWOOD ES | 213 | I | - | - |
| 12. BROOKLAND ES | 346 | - | - | - |
| 13. BRUCE-MONROE ES | 296 | I | - | - |
| 14. BUNKER HILL ES | 219 | - | - | - |
| 15. BURROUGHS ES | 220 | - | - | - |
| 16. BURRVILLE ES | 221 | - | - | - |
| 17. CLARK ES | 223 | - | - | - |
| 18. CLEVELAND ES | 224 | - | - | - |
| 19. COOK JF ES | 226 | I | I | - |
| 20. COOKE HD ES | 227 | C | - | - |
| 21. DAVIS ES | 229 | - | - | - |
| 22. DRAPER ES | 230 | - | - | - |
| 23. DREW ES | 231 | - | - | - |
| 24. EATON ES | 232 | - | - | - |
| 25. EMERY ES | 235 | I | I | - |
| 26. FEREBEE-HOPE ES | 343 | I | - | I |
| 27. FLETCHER-JOHNSON EC | 348 | R | I | - |
| 28. GAGE-ECKINGTON ES | 281 | I | - | - |
| 29. GARFIELD ES | 238 | C | C | - |
| 30. GARRISON ES | 239 | I | I | - |
| 31. GIBBS ES | 240 | I | I | - |
| 32. GREEN ES | 244 | R | C | - |
| 33. HAMILTON CENTER | 567 | C | C | - |
| 34. HARRIS PR EC | 352 | C | C | I |

| | | | | |
|---|---|---|---|---|
| 35. HARRIS, C.W. ES | 247 | - | - | - |
| 36. HEARST ES | 258 | - | - | - |
| 37. HENDLEY ES | 249 | I | I | - |
| 38. HOUSTON ES | 251 | C | I | I |
| 39. HYDE ES | 252 | - | - | - |
| 40. JANNEY ES | 254 | - | - | - |
| 41. KENILWORTH ES | 256 | C | C | - |
| 42. KETCHAM ES | 257 | I | - | - |
| 43. KEY ES | 272 | - | - | - |
| 44. KIMBALL ES | 259 | C | - | - |
| 45. KING M L ES | 344 | I | - | - |
| 46. LAFAYETTE ES | 261 | - | - | - |
| 47. LANGDON ES | 262 | - | - | - |
| 48. LASALLE ES | 264 | - | - | - |
| 49. LECKIE ES | 266 | - | - | - |
| 50. LUDLOW-TAYLOR ES | 271 | I | I | - |
| 51. MALCOLM X ES | 308 | - | - | - |
| 52. MAMIE D. LEE SCHOOL | 265 | - | - | - |
| 53. MANN ES | 273 | - | - | - |
| 54. MAURY ES | 274 | - | - | - |
| 55. MCGOGNEY ES | 275 | R | I | - |
| 56. MERRITT ES | 277 | I | I | - |
| 57. MEYER ES | 278 | I | I | - |
| 58. MINER ES | 280 | R | I | - |
| 59. MONTGOMERY ES | 282 | - | - | - |
| 60. MOTEN CENTER | 241 | C | C | - |
| 61. MOTEN ES | 285 | I | R | - |
| 62. MURCH ES | 287 | - | - | - |
| 63. NALLE ES | 288 | - | - | - |
| 64. NOYES ES | 290 | - | - | C |
| 65. ORR ES | 291 | - | - | - |
| 66. OYSTER ES | 292 | - | - | - |
| 67. PARK VIEW ES | 293 | - | - | - |
| 68. PATTERSON ES | 294 | - | - | - |
| 69. PAUL ROBESON SCHOOL | 725 | - | - | - |
| 70. PAYNE ES | 295 | - | - | - |
| 71. PLUMMER ES | 299 | I | I | - |
| 72. POWELL ES | 300 | C | C | - |

| | | | | |
|---|---|---|---|---|
| 73. PROSPECT LC | 486 | C | C | - |
| 74. RANDLE-HIGHLANDS ES | 316 | - | - | - |
| 75. RAYMOND ES | 302 | C | - | - |
| 76. REED LC | 284 | I | - | - |
| 77. RIVER TERRACE ES | 304 | - | - | - |
| 78. ROSE SCHOOL | 726 | - | - | - |
| 79. ROSS ES | 305 | - | - | - |
| 80. RUDOLPH ES | 306 | - | - | - |
| 81. SAVOY ES | 307 | I | - | - |
| 82. SEATON ES | 309 | - | - | - |
| 83. SHADD ES | 310 | C | - | C |
| 84. SHAED ES | 311 | - | I | - |
| 85. SHARPE HEALTH SCHOOL | 312 | C | C | - |
| 86. SHEPHERD ES | 313 | - | - | - |
| 87. SIMON ES | 315 | - | I | - |
| 88. SLOWE ES | 342 | C | I | - |
| 89. SMOTHERS ES | 322 | - | - | - |
| 90. STANTON ES | 319 | R | I | - |
| 91. STEVENS ES | 320 | - | - | - |
| 92. STODDERT ES | 321 | - | - | - |
| 93. TAKOMA ES | 324 | - | - | - |
| 94. TERRELL MC ES | 353 | I | I | - |
| 95. THOMAS ES | 325 | I | - | - |
| 96. THOMSON ES | 326 | - | - | - |
| 97. THURGOOD MARSHALL ES | 351 | - | - | - |
| 98. TRUESDELL ES | 327 | R | - | - |
| 99. TUBMAN ES | 328 | C | I | - |
| 100. TURNER ES | 329 | - | - | - |
| 101. TYLER ES | 330 | C | C | - |
| 102. VAN NESS ES | 331 | I | I | - |
| 103. WALKER-JONES ES | 332 | C | C | - |
| 104. WATKINS ES | 333 | - | - | - |
| 105. WEBB ES | 335 | R | I | - |
| 106. WEST ES | 336 | - | - | - |
| 107. WHEATLEY ES | 337 | - | - | - |
| 108. WHITTIER ES | 338 | - | - | - |
| 109. WILKINSON ES | 354 | I | - | C |
| 110. WILSON JO ES | 339 | - | - | - |

| | | | | |
|---|---|---|---|---|
| 111.  WINSTON EC | 355 | I | I | - |
| 112.  YOUNG ES | 341 | - | - | - |
| | | | | |
| Number Not In Improvement Status | | 61 | 75 | 105 |
| Number In Need of Improvement | | 25 | 23 | 4 |
| Number In Corrective Action | | 19 | 13 | 3 |
| Number In Restructuring | | 7 | 1 | 0 |

*    No data are displayed for groups with less than 40 students.

(1)   - = School is not in improvement status,
      **I - In Need of Improvement** = The school failed to make AYP in this area for 2 consecutive years,

      **C - Corrective Action** = The school failed to make AYP in this area for 3 consecutive years,
      **R - Restructuring** = The school failed to make AYP in this area for 4 consecutive years

### NUMBER OF SCHOOLS IN VARIOUS READING AND MATH IMPROVEMENT CATEGORIES

| READING | MATH | | | | TOTAL |
|---|---|---|---|---|---|
| | Not In Improvement | In Need of Improvement | Corrective Action | Restructuring | |
| Not In Improvement | 58 | 3 | 0 | 0 | 61 |
| In Need of Improvement | 11 | 12 | 1 | 1 | 25 |
| Corrective Action | 5 | 3 | 11 | 0 | 19 |
| Restructuring | 1 | 5 | 1 | 0 | 7 |
| TOTAL | 75 | 23 | 13 | 1 | 112 |

149

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Assigned Hearing Officer ~ SHO & Attorney-Advisor ~ OGC |
| *Fax Number:* | |
| *From:* | Douglas Tyrka |
| *Regarding:* | J█████ W█████ (D.O.B. ████████ |
| *# of pages:* | 12 |
| *Notes:* | Petitioner's Motion for Default |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

03/28/2006   04:09   2022654264                TYRKA & ASSOCIATES                PAGE   02/12

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT AND INVESTIGATION DIVISION

|  |  |  |
|---|---|---|
| In re J███ W███████ | ) | **Assigned Hearing Officer** |
| **Special Education Student.** | ) | **Hearing of April 4, 2007** |
|  | ) |  |

## PETITIONER'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

The Petitioner respectfully moves for a default judgment for the Petitioner for the failure of the Respondent to file a response to the Petitioner's Complaint as required by 20 U.S.C. § 1415(c)(2)(i).

## BACKGROUND

On January 30, 2007, the Petitioner filed a due process complaint under 20 U.S.C. § 1415(b). At the time the Complaint was filed, the Respondent had not served the Petitioner with a prior written notice complying with 20 U.S.C. § 1415(c)(1) addressing all of the allegations in the Complaint. As of the date of the filing of this Motion, the Respondent has not served a response to the Complaint on the Petitioner.

## APPLICABLE LAW

The IDEA requires that:

[i]f the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include –
(aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
(bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
(cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
(dd) a description of the factors that are relevant to the agency's proposal or refusal.

151

03/28/2006  04:09   2022654264           TYRKA & ASSOCIATES                    PAGE  03/12

20 U.S.C. § 1415(c)(2)(B)(i)(I).

The IDEA requires that a "prior written notice," which would negate the need for a response under 20 U.S.C. § 1415(c)(2)(B)(i)(I), contain all of the following:

> (A) a description of the action proposed or refused by the agency;
> (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> (D) sources for parents to contact to obtain assistance in understanding the provisions of this part;
> (E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
> (F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(1).

The IDEA is silent on the question of the proper remedy for the failure of a local educational agency ("LEA") to file a response under 20 U.S.C. § 1415(2)(B)(i)(I).

## ARGUMENT

Because the Respondent's failure to serve a response undermines the entire hearing process and thereby denies the Petitioner due process, the Petitioner is entitled to a default judgment.

In Massey v. District of Columbia, the District Court for the District of Columbia specifically noted that DCPS' failure, inter alia, to issue a proper response called into question the adequacy of the entire administrative process:

> Surely Congress did not intend for parents to be left with no remedy when the school district fails to observe the procedural safeguards in the IDEA.
> ***
> DCPS appears incompetent to address, in the manner required by the IDEA, a parent's complaints about [its] failures. Therefore, the Courts find

2

152

03/28/2006   04:09   2022654264    TYRKA & ASSOCIATES    PAGE   04/12

that the plaintiffs have demonstrated that pursuing their claim through the administrative process would be inadequate.

400 F.Supp. 2d 66, 73 (2005) (citations omitted).

The Court in Massey stated that Congress intended there to be a remedy for DCPS' failure to serve a response. Unfortunately, the statute does not specify the remedy.

The federal courts have held that, where the IDEA is silent regarding a procedural rule, the most closely analogous state rule must be applied. In an administrative proceeding under the IDEA, the most closely analogous state rules are the District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a), which provide the remedy for a civil defendant's failure timely to file an answer to a complaint.

Because those rules require that a court enter a default when a defendant fails timely to file an answer, the hearing officer should grant the Petitioner a default for the Respondent's failure to serve a response.

I.    **IN THE ABSENCE OF A CLEAR PROCEDURE IN THE IDEA, THE MOST CLOSELY ANALOGOUS STATE RULES SHOULD BE APPLIED.**

The federal courts have ruled that where the IDEA is silent, the most closely analogous state rule should be applied, provided that the state rule is consistent with the policies of the IDEA. See, e.g., Spiegler v. Dist. of Columbia, 866 F.2d 461 (D.C. Cir. 1989)(applying local limitations period for appeals of administrative decision to federal actions brought following adverse administrative decisions under predecessor to IDEA).

In Spiegler, the Court of Appeals held that the District of Columbia 30-day statute of limitations for review of agency orders applied to federal cases challenging hearing

03/28/2008  04:09  2022354288    TYRKA & ASSOCIATES    PAGE  05/12

officers' decisions under the Education of the Handicapped Act ("EHA"), the predecessor

to the IDEA. 866 F.2d at 462-470. Congress had not provided a statute of limitations in

the text of the EHA, so the Court of Appeals applied the local limitations period because

it was closely analogous and consistent with the policies underlying the EHA. Id.

The Court in Spiegler applied a two-part analysis: 1) identifying the most closely

analogous state rule; and 2) determining whether the application of that rule was

consistent with the federal policies underlying the EHA. In performing the first part of

the analysis, the Court held that a substantive federal claim challenging the findings and

decision of an EHA hearing officer was "sufficiently analogous to an appeal from an

administrative decision to permit us to borrow the 30-day local limitations period for

such appeals." 866 F.2d at 466. In the second part of the analysis, the Court concluded

"that a 30-day limitations period, when combined with a duty by the District to inform

hearing participants of the short [limitations] period, was not so harsh as to be

inconsistent with [the EHA's underlying] policies." Id.

Though the Spiegler Plaintiffs had argued for the application of the District of

Columbia's default 3-year statute of limitations, the Court of Appeals found the 30-day

limitations period consistent with federal policies: "Because the Act emphasizes the

prompt resolution of disputes, we find at the outset that a shorter rather than longer

statute of limitations would be more consistent with the policies underlying the Act." Id.

at 467.

According to the Spiegler decision, in forming a remedy for the Respondent's

failure to serve a response to the complaint, the hearing officer should determine the state

03/28/2006  04:09   2022654264          TYRKA & ASSOCIATES              PAGE   06/12

rules most closely analogous to this situation, and should apply them if they are not

inconsistent with the federal policies underlying the IDEA.

## II. THE STATE RULES MOST CLOSELY ANALOGOUS TO THIS SITUATION ARE DISTRICT OF COLUMBIA SUPERIOR COURT RULES OF CIVIL PROCEDURE 12(A)(5) AND 55(A).

Generally, the two best sources for analogous rules in IDEA hearings are the

District of Columbia Office of Administrative Hearings Procedural Rules ("OAH rules"),

D.C. Mun. Regs. tit. 1 §§ 2800 et seq., and the District of Columbia Superior Court Rules

of Civil Procedure ("Civil Rules").

In Spiegler, the Court of Appeals used the OAH Rules to determine the

appropriate statute of limitations period for challenging the findings and decisions of an

impartial due process hearing officer. However, because the OAH Rules do not require

any response in a state administrative proceeding, they are not applicable to an action

initiated under the IDEA, which now requires a response containing very specific

information within 10 days of the filing of the complaint. Compare OAH Rule 2813.5

("[u]nless otherwise ordered, no responsive pleading is required in cases commenced by

a request for a hearing.") with 20 U.S.C. § 1415(2)(B)(i)(I)(requiring response to IDEA

complaint and listing necessary elements in response); D.C. Mun. Regs. tit. 1 §§ 2813.5.

The Civil Rules, on the other hand, deal extensively with every aspect of pleading

practice, including the procedures for serving initial and responsive pleadings and the

consequences of violations of those procedures. See Super. Ct. Civ. R. 3, 7, 8, 12 & 55.

The Civil Rules dictate the necessary contents of answers, the timelines for filing answers

and the penalties for failure to file. See Super. Ct. Civ. R. 12 & 55.

5

155

Because the OAH rules do not require responsive pleadings and the Civil Rules do, the Civil Rules are the state rules most closely analogous to the IDEA response requirement. The hearing officer should therefore apply the Civil Rules by analogy as long as they are consistent with the federal policies underlying the IDEA.

## III.   BY ANALOGY, THE CIVIL RULES REQUIRE THE HEARING OFFICER TO RULE BY DEFAULT FOR THE PETITIONER.

District of Columbia Superior Court Rule of Civil Procedure 12(a)(5) and 55(a) are the state rules most closely analogous to the Respondent's failure to serve a response, as argued supra. The rules require that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the Clerk or the Court shall enter the party's default." Super. Ct. Civ. R. 55(a); see also Super. Ct. Civ. R.12(a)(5)("Except where the time to respond to the complaint has been extended as provided in Rule 55(a), failure to comply with the requirements of this Rule shall result in the entry of a default by the Clerk or the Court sua sponte unless otherwise ordered by the Court.")

The courts do not have any discretion in the entry of a default for failure to respond to a complaint; "the Clerk or the Court shall enter the party's default." Super. Ct. Civ. R. 55(a)(emphasis added). The comment to Rule 12 makes clear the intent that default be automatic in those circumstances. See Super. Ct. Civ. R. 12, cmt ("[P]aragraph (5) has been added to preserve the existing Superior Court rule of automatic entry of default against a defendant who does not timely respond to the complaint.").

The District of Columbia Court of Appeals has addressed this issue, and has enforced the clear text of the Rules in favor of automatic and non-discretionary default. See Digital Broadcast Corp. v. Rosenman & Colin, LLP, 847 A.2d 384, 388-89 (D.C.

6

App. 2004)(holding that Rule 55(a) default is automatic and non-discretionary);

Restaurant Equip. and Supply Depot, Inc. v. Gutierrez, 852 A.2d 951, 954-56 (D.C. App.

2004)(holding that default for failure to file answer was automatic even where defendant

had filed motion to dismiss).

  An entry of default is not a final judgment terminating a proceeding. "[T]he entry

of default does not constitute a judgment, but simply precludes the defaulting party from

offering any further defense on the issue of liability." Lockhart v. Cade, 728 A.2d 65, 68

(D.C. 1999). "[T]he defaulted party retains the right to contest and mitigate unliquidated

damages." Digital, 847 A.2d at 389 n.7. In other words, the default resolves all liability

questions against the defaulting party, but does not determine ultimate relief.

  Because the serving of a "response" under the IDEA is a perfect analogue to the

filing of an answer under the Civil Rules, and the Respondent has in this case failed to

serve a response, by analogy to the Civil Rules the hearing officer must issue the

equivalent to a default against the Respondent. The equivalent to a default in IDEA

administrative hearings is a finding, as a matter of law, that the Respondent has

committed all of the violations identified in the Complaint.

  Where a violation is all that is necessary to justify relief, the hearing officer may

simply order the relief requested in the Complaint. In the alternative, where further

evidence is necessary before specific relief can be ordered, the hearing officer should

schedule a hearing for the sole purpose of adjudicating the issues relevant to relief.

7   157

Case 1:07-cv-01261-ESH     Document 12-6     Filed 10/31/2007     Page 32 of 48

**IV.    AN ORDER OF DEFAULT AFTER AN LEA HAS FAILED TO SERVE A RESPONSE IS WHOLLY CONSISTENT WITH THE POLICIES UNDERLYING THE IDEA IN THAT IT PROTECTS THE RIGHTS OF CHILDREN, ENCOURAGES PROMPT RESOLUTION OF DISPUTES, PROMOTES ADMINISTRATIVE EFFICIENCY AND PRESERVES PROCEDURAL EQUITY.**

The application of the Civil Rules to this situation and the consequential order of default against the Respondent comports with the policies underlying the IDEA.

The primary purposes of the IDEA are, of course, "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1).

Additionally, it is clear from the statute and the caselaw that certain policies underlie the procedural aspects of the IDEA. In Spiegler, the Court of Appeals noted that Congress' intent in passing the EHA was "to ensure the prompt resolution of disputes regarding the appropriate education for handicapped children." 866 F.2d 461, 467. The recent amendments to the IDEA, most notably the clauses regarding the complaint, the response and the resolution session, indicate a Congressional intent to improve administrative efficiency by narrowing issues and limiting unnecessary hearings. See 20 U.S.C. § 1415(b)(6), (c)(2)(B)(i)(I) & (f)(1)(B). Finally, Congress' respect for the adversarial process and intent to establish basic procedures to ensure fairness in hearings can be found in the IDEA's rights to counsel, to disclosure of evidence, to subpoenas, to cross-examination and to attorneys' fees; the Act's new clauses enabling the dismissal of inadequately drafted complaints; and the Act's new provisions regarding the training and competence of hearing officers. See 20 U.S.C. § 1415(c)(2)(A), (f)(3)(A) & (h).

03/28/2006  04:09   2022654264            TYRKA & ASSOCIATES              PAGE  10/12

These four purposes – protection of the rights of children with disabilities, prompt resolution of special education disputes, administrative efficiency and procedural fairness – are all furthered by an order of default against the Respondent for failing to serve a response.

Obviously, a ruling in favor of a parent or child, particularly a ruling that prevents the LEA from violating the IDEA and sandbagging a petitioner at hearing, helps to protect the rights of children with disabilities. It is equally obvious that a default for failure to respond to a complaint furthers prompt resolution and administrative efficiency, both in the short term, in that the parties and the hearing officer are not forced to litigate issues regarding which the respondent has offered no defense, and in the long term, in that the respondent will be more likely to serve a proper response in future cases.

The impact of a default on procedural equity deserves a bit more consideration, because the recent amendments to the IDEA have changed the balance of procedural obligations. Under the old version of the law, a petitioner needed only to file a minimal hearing request, and the respondent did not need to file a response. Under the current version of the law, by the time a respondent has failed to serve a response and thereby made itself subject to default, a petitioner has had to file a substantially more comprehensive complaint, which has had to withstand a judgment of its sufficiency. See 20 U.S.C. § 1415(b)(7) & (c)(2)(D). If the complaint is found sufficient, the petitioner is granted a hearing, but cannot raise any issue not identified in the complaint. See 20 U.S.C. § 1415(f)(3)(B). While petitioners now bear that new burden, respondents bear a new burden of their own – the response to the complaint.

159

A default against an LEA for failure to serve a response would enforce the policy of procedural fairness evident in the IDEA's new requirements of a reciprocal information exchange prior to the resolution session and the hearing. To decline to issue a default would confound Congress' clear intent to require LEAs to provide the same level of information that petitioners must provide, and would create a fundamentally unfair system in which a petitioner is denied his/her opportunity to make a case if he/she fails to provide information according to IDEA procedure, but an LEA is allowed to make its case in the opposite situation.

## CONCLUSION

Because a default against the Respondent in this case is wholly consistent with the policies underlying the IDEA, and the denial of a default would frustrate Congress' intent, the hearing officer should apply the most closely analogous state rule to this situation and grant the Petitioner a default by applying Civil Rules 12(a)(5) and 55(a) by analogy.

Respectfully submitted,

Douglas Tyrka
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

**DATE FILED:    March 28, 2007**

10

160

03/28/2006  04:09    2022654264                TYRKA & ASSOCIATES                          PAGE  12/12

## Certificate of Service

I hereby certify that a copy of this Motion was sent via facsimile to Counsel for

the Respondent on March 28, 2007.

Respectfully submitted,

Douglas Tyrka
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

11

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      OGC & SHO

*Fax Number:*

*From:*      Zachary Nahass

*Regarding:*    J██████W██████

*# of pages:*

*Notes:*      Motion for Summary Adjudication

2007 MAR 27  AM 9: 25
DC PUBLIC SCHOOL SYSTEM

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

162

2007 MAR 27 AM 9:26
DC PUBLIC
SCHOOL SYSTEM

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT AND INVESTIGATION DIVISION

| | |
|---|---|
| In re J█████ W█████████ | ) |
| Special Education Student. | ) |
| | ) |

## PETITIONER'S MOTION FOR SUMMARY ADJUDICATION

The Petitioner respectfully moves for summary adjudication on all claims in her January 30, 2007 due process complaint ("Complaint"). The Complaint alleges that DCPS has violated the Individuals with Disabilities Act ("IDEA") by failing to comply with an October 2, 2006 Hearing Officer Determination ("HOD"), failing to conduct and review current evaluations in all areas of suspected disability, failing to develop an appropriate individualized education program ("IEP"), failing to provide an appropriate placement, and failing to provide all necessary specialized instruction and related services.

As relief for this violation, the Petitioner respectfully requests that DCPS be ordered immediately to fund and place J█████ at Rock Creek Academy with transportation, and to fund current hearing and vision exams and an audiological evaluation of J█████ at market rates. Additionally, the Petitioner requests that DCPS be ordered to convene a multidisciplinary team ("MDT") meeting within 10 days of receiving the last of J████'s independent evaluations to: (1) review all current evaluations, (2) develop an appropriate IEP, and (3) develop an appropriate compensatory education plan per the terms of the October 23, 2006 HOD, and additionally to compensate J█████ for DCPS' failures: (a) to comply with the October 2, 2006 HOD, per the terms of the Blackman-Jones Consent Decree, (b) to conduct and

1

review current evaluations of J██████ in all areas of suspected disability since the 2004-2005 SY, (c) to develop an appropriate IEP for J██████ since the 2004-2005 SY, and (d) to provide J█████ with any specialized instruction or related services since the 2004-2005 SY.

## FACTS NOT IN DISPUTE

1. An October 2, 2006 HOD ordered DCPS, *inter alia,* to convene an MDT meeting within 15 school days of receiving the last of J█████'s independent psychoeducational, social history and speech and language evaluations. Exhibit 1.

2. DCPS received the last of these evaluations on December 20, 2006. Exhibit 2, 3 and 4.

3. DCPS did not convene an MDT meeting on or before January 24, 2007, the mandated 15 school-day deadline.

4. DCPS has never discussed and determined an appropriate placement for J█████ for the 2006-2007 SY, nor has it determined J█████'s eligibility for compensatory education as required by the October 2, 2006 HOD.

5. J█████'s independent psycho-educational evaluation recommends current vision and hearing exams. Exhibit 2.

6. J█████'s independent speech and language evaluation recommends a current audiological exam. Exhibit 4

7. DCPS has never conducted current vision, hearing or audiological exams.

8. J▉▉▉'s independent psycho-educational evaluation recommends one-on-one tutoring in twice-weekly, 45 minute sessions to address his academic delays. Exhibit 2.

9. J▉▉▉'s independent speech and language evaluation recommends therapy in twice-weekly, 30 minute sessions. Exhibit 4.

10. DCPS has never provided all recommended tutoring or speech and language therapy for J▉▉▉

11. J▉▉▉'s independent psychoeducational evaluation recommends that J▉▉▉ be placed in a separate, structured classroom for his academic subjects with a low student to teacher ratio (8-10 to 1). Exhibit 2.

12. DCPS has never provided J▉▉▉ with an appropriate special education placement.

13. Petitioner has obtained an acceptance for J▉▉▉ at Rock Creek Academy ("RCA"), a private, special education school in Washington, DC. Exhibit 6. RCA has the staff and resources to provide J▉▉▉ with the special education and related services he requires according to his recent evaluations. Id.

14. RCA can provide J▉▉▉ specialized instruction in a small, self-contained classroom for all his academic subjects, one-on-one tutoring for 45 minutes, twice a week, and 30 minutes of speech and language therapy twice a week. Id.

15. The teacher for J▉▉▉'s class will be Ms. Sherrod, who is licensed and certified to teach special education in the District of Columbia. Id.

16. J▉▉▉ will be the third student in a classroom that includes students with similar disabilities. Id.

17.    The Petitioner filed her due process complaint on January 30, 2007.

18.    DCPS has not served a response to the Petitioner's complaint.

### ARGUMENT

**I.    DCPS FAILED TO COMPLY WITH THE HOD ISSUED OCTOBER 2, 2006.**

It is undisputed that the October 2, 2006 HOD required DCPS to convene an MDT meeting on or before January 24, 2007. It is further undisputed that DCPS did not convene an MDT meeting on or before January 24, 2007. Furthermore, the MDT has never discussed and determined an appropriate placement for J███ for the 2006-2007 SY, nor has it determined J███'s eligibility for compensatory education as required by the October 2, 2006 HOD.

Moreover, DCPS has never served a written response to the Petitioner's Complaint as required by 20 U.S.C. § 1415(c)(2)(B)(i)(I), thus "indicat[ing] by its behavior that it has no valid defense[.]" Digital Broadcast Corp. v. Rosenman & Colin, LLP, 847 A.2d 384 (D.C. App. 2004); see also Massey v. D.C., 400 F.Supp. 2d 66, 73 (D.D.C. 2005).

Because the undisputed facts establish that DCPS has been and continues to be in violation of the October 2, 2006 HOD, the Petitioner is entitled to summary adjudication on her claim.

**II.    DCPS HAS FAILED TO CONDUCT AND REVIEW EVALUATIONS IN ALL AREAS OF SUSPECTED DISABILITY**

It is undisputed that J███'s independent psychoeducational evaluation recommends current vision and hearing exams, and that J███'s independent speech and

4

166

language evaluation recommends a current audiological exam. It is further undisputed that DCPS has not conducted vision, hearing or audiological exams for J██████

Under 20 U.S.C. § 1414(b)(3)(B), the local education authority ("LEA") is required to ensure that the child is assessed in all areas of suspected disability. Here, the recommendations of J█████s psychoeducational and speech and language evaluations indicate the evaluators' suspicion of disabilities that would be uncovered through additional evaluations. Nevertheless, DCPS has not performed the recommended evaluations.

The undisputed facts establish that, despite the IDEA's requirement that J████be assessed in all areas of suspected disability, and the undisputed suspicion of disabilities that would be identified through audiological, vision and hearing exams, DCPS has failed to perform such evaluations. As a result, DCPS is in violation of the Individuals with Disabilities Education Act (IDEA), and the Petitioner is entitled to the requested relief.

## III.    DCPS HAS NOT PROVIDED ALL NECESSARY SPECIAL EDUCATION AND RELATED SERVICES.

It is undisputed that J█████requires one-on-one tutoring in twice-weekly, 45 minute sessions to address his academic delays. J█████also requires speech and language therapy 30 minutes per week.  DCPS has never provided one-on-one tutoring or speech and language therapy for J█████ The undisputed facts establish that DCPS has been and is denying FAPE to J█████by failing to provide him with any tutoring or speech and language services; the Petitioner is therefore entitled to summary judgment on that claim.

IV.   **DCPS HAS NOT PROVIDED AN APPROPRIATE PLACEMENT FOR J█████ AND THE HEARING OFFICER SHOULD ORDER PLACEMENT TO ROCK CREEK ACADEMY, WHERE BRANDON CAN RECEIVE EDUCATIONAL BENEFIT.**

The undisputed facts conclusively establish that J███ requires placement in a full time, separate, structured classroom with a low teacher to student ratio. DCPS has not provided J███ such a placement. Because it is further undisputed that Rock Creek Academy ("RCA") can provide the specialized instruction and related services that Brandon requires, the Hearing Officer should order DCPS immediately to place J███ there.

RCA will provide the special education and related services called for in J█████ evaluations, including: specialized instruction in a small, separate self-contained classroom for all his academic subjects; one-on-one tutoring in forty-five (45) minute sessions twice per week; and thirty (30) minutes of speech and language therapy two times per week. RCA has identified an appropriate first-grade classroom for J████ which includes other students with similar disabilities. J████ will be the third student in the class taught by Ms. Sherrod, a certified, special education teacher.

Outside of J████'s classroom, RCA has three full-time licensed clinical psychologists on staff, and at least nine licensed social workers to provide psychological counseling services to its students. In the past, DCPS has placed children with similar disabilities at RCA without an HOD, and RCA has accepted students with similar disabilities who have been successful at RCA.

Where DCPS has failed to provide J████ with an appropriate special education placement, and RCA will provide the special education and related services that J█████

6

168

requires, the Petitioner is entitled to summary adjudication on her claim, and the Hearing

Officer should order J█████ placed at RCA.

## CONCLUSION

For these reasons, the Petitioner respectfully requests that she be granted

summary judgment on her Complaint, and that an HOD be issued ordering DCPS:

1. immediately to fund and place J████ at RCA with transportation;

2. immediately to fund independent vision, hearing and audiological evaluations of

    J████ at market rates;

3. to convene an MDT meeting within 10 days of receiving the last of J████'s

    independent evaluations in order to:

    a. review all of J████'s current evaluations,

    b. develop an appropriate IEP, and

    c. develop an appropriate compensatory education plan per the terms of the October

        2, 2006 HOD, and additionally to compensate █████ for DCPS' failure to comply

        with the terms of the October 2, 2006 HOD, per the terms of the Blackman-Jones

        Consent Decree, and for DCPS' failures to conduct and review current

        evaluations of J████ in all areas of suspected disability, to develop an appropriate

        IEP for J████, and to provide J████ with any specialized instruction or related

        service since the 2004-2005 SY.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

169

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2007, I sent a copy of the foregoing by facsimile to

Counsel for the Respondent.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

8

170

03/26/2006  21:11    2022654264              TYRKA & ASSOCIATES                    PAGE  10/38

10/03/2006  11:03    2024425556          STUDENT HEARINGS OFF              PAGE  02/05

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
### CONFIDENTIAL

## Charles R. Jones, Esq., Due Process Hearing Officer
825 North Capitol Street, N.E.  8th Floor
Washington, D.C. 20002
Facsimile:  (202) 442-5556

| | |
|---|---|
| **In the Matter of** ) | **IMPARTIAL DUE PROCESS** |
| ) | |
| J___ W___          Student, ) | **HEARING OFFICER'S DECISION** |
| Date of Birth: ___ ) | |
| ) | |
| Petitioner, ) | Hearing Date: September 18, 2006 |
| ) | |
| vs. ) | |
| ) | Held at:  825 North Capitol Street, N.E. |
| The District of Columbia Public Schools, ) | Eighth Floor |
| Attending: Stanton Elementary School ) | Washington, D.C. 20002 |
| Respondent. ) | |
| ) | |

## AMENDED DECISION AND ORDER

| | |
|---|---|
| **Parent:** | Ms. Michelle Williams<br>2412 Hartford Street, S.E., #101<br>Washington, D.C. 20020 |
| **Counsel for Parent:** | Douglas Tyrka, Esq.<br>Tyrka & Houck, LLP<br>1726 Connecticut Ave., N.W.<br>Suite 400<br>Washington, D.C. 20009 |
| **Counsel for School:** | Rashida J. Wilson, Attorney- Advisor<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E., 9th Floor<br>Washington, D.C. 20002 |

**Exhibit 1**

03/26/2006  21:11    2022554264                    TYRKA & ASSOCIATES                              PAGE  11/38

10/03/2006  11:03    2024425556          STUDENT HEARINGS OFF                    PAGE  03/05

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

### State Enforcement and Investigative Division
### Special Education Due Process Hearing

## I.  INTRODUCTION

On July 17, 2006, a Request for Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Douglas Tyrka, Esq. The request alleges DCPS failed to timely evaluate J.W. in all areas of suspected disabilities.

A Due Process Hearing was convened on September 18, 2006, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Rashida J. Wilson, Esq., Attorney-Advisor, represented DCPS. Douglas Tyrka, Esq., represented the parent. Five Day Disclosure Letters were entered into the record, without any objection by either party. On behalf of the parent:  Disclosure Letter dated August 16, 2006: Documents-1 through Documents-9. On behalf of DCPS: Disclosure Letter dated: September 11, 2006. Parent's counsel waived a formal reading of the Due Process Rights. The parties did not introduce any testimony in this case, as the matter was settled on the record.

## II.  JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to *Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004,* 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III.  ISSUES

Whether DCPS denied the student FAPE by failing to timely evaluate J.W. in all areas of suspected?

2.

172

03/26/2006  21:11    2022654264    TYRKA & ASSOCIATES    PAGE  12/38

10/03/2006  11:03    2024425556    STUDENT HEARINGS OFF    PAGE  04/05

IV.    SUMMARY OF RELEVANT EVIDENCE

At the commencement of the Hearing, DCPS could not meet its burden. The parties represented that they had discussed terms, but requested the Hearing Officer determined the relief.

V.    FINDINGS OF FACT

The Hearing Officer makes the following findings of fact:

1.    DCPS failed to conduct warranted evaluations, convene a placement meeting and determine an appropriate educational placement. Under this set of circumstances, DCPS failed to provide a free appropriate public education.

Based upon the foregoing, IT IS HEREBY ORDERED:

1) DCPS shall, on or before September 25, 2006, send a notice of intent to conduct the following evaluations:  A Psycho-Educational Evaluation, a Speech and Language Evaluation and a Social History.   The aforementioned evaluations shall, within thirty- (30) calendar days of the issue of the HOD, be performed by DCPS.

2) In the event DCPS fails to adhere to either of these deadlines, the parent is authorized to obtain independent evaluations pursuant to the Superintendent's Directive on the cost of outside consultant fees.

3) DCPS shall, within fifteen- (15) school days of receipt of the evaluation(s), convene a MDT/IEP meeting to review all current evaluations, to review and revise IEP as warranted and to discuss and determine an appropriate educational placement for the 2006-2007 school years.

4) In the event the appropriate placement is to a public school, DCPS shall issue a notice of placement within five- (5) schools days of the MDT/IEP team meeting.  If the appropriate placement is to a non-public facility, DCPS shall issue a notice of placement within thirty- (30) calendar days of the MDT/IEP team meeting.

3.

173

5)  DCPS shall also consider Compensatory Education for J.W. and, if
    warranted, develop a Compensatory Education Plan including an
    appropriate amount of hours, the form and format for compensatory
    educational relief.

6)  All communications and notices shall be sent through the parent's counsel.

7)  Any delay in the above time frames caused by the student or student's
    counsel shall result in an extension of one day for each day of delay.

VI.    APPEAL PROCESS

       This is the FINAL ADMINISTRATIVE DECISION.  Appeals may be made
to a court of competent jurisdiction within ninety- (90) days from the date this
decision was issued.

_____          Date Filed: 10-03-06
Charles R. Jones, Esq., Hearing Officer

Date Issued:  10/2/06

4.

174

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Helser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Mala McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Toupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

## PSYCHOEDUCATIONAL EVALUATION

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

Name:                      J█████ W█████
Date of Testing:           October 10, 2006
Date of Birth:             ███████████
Age:                       6 years, 7 months
Grade:                     1st grade
School:                    Stanton Elementary School
Examiner:                  Nicole Sampson, Ph.D.
Date of Report:            October 28, 2006

### REASON FOR REFERRAL

J█████ is a six-old youth who was referred for an initial evaluation by the office of Douglas Tyrka, Esq. The current testing was requested to determine J█████s eligibility for special education services following concerns regarding his failure to make adequate academic progress in the classroom. J█████s cognitive and educational functioning was assessed in order to provide recommendations that will promote his school success. An adaptive functioning measure was also administered to J█████s teacher during the course of this evaluation.

### TESTS ADMINISTERED

Beery-Buktenica Developmental Test of Visual Motor
            Integration-5th edition (VMI)
Interview with mother, Ms. Michelle Williams Branch
Interview with teacher, Ms. Thomas
NEPSY-A Developmental Neuropsychological Assessment
Vineland Adaptive Behavior Scales- Classroom Edition
Wechsler Intelligence Scale for Children- 4th Ed. (WISC- IV)
Woodcock-Johnson III, Tests of Achievement (WJ III)

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

**Exhibit 2**

## IDENTIFYING INFORMATION

J█████is a six-year-old, left-handed, youth who lives with his mother, step-father, and three siblings (age 9,4, and 2), in Washington DC.  English is the language spoken in the home. J█████'s biological father is presently incarcerated.

## BACKGROUND INFORMATION

Detailed background and historical information is described in the Social History accompanying this report.  Briefly, J█████was born full-term via vaginal delivery after what was described as a complication-free pregnancy and labor.  J█████'s early development was described as "normal" with the exception of his language skills which were reportedly severely delayed.  J█████was evaluated at Children's National Medical Center at the age of two (report not available to this examiner).  Ms. Williams Branch stated that the findings supported the presence of significant speech delays.  Speech therapy was recommended, but J█████attended only two sessions, as there was a long waiting list to be seen.  Ms. Williams Branch stated that it was not until the age of four that J█████was intelligible to individuals other than her.  Ms. Thomas, J█████'s teacher, indicated that she presently has considerable difficulty understanding J█████and did not believe that he was speaking in full sentences, more like fragmented sentences.

Presently, J█████is enrolled in the first grade of Stanton Elementary School. He was promoted from kindergarten despite what appears to be very minimal understanding and acquisition of number and letter recognition.  When asked to describe his current difficulties, Ms. Williams Branch stated that J█████struggles with the comprehension of all basic academic concepts.  She is concerned that J█████ does not receive enough individual attention in a classroom that has thirty-one other students enrolled.  He does not understand the lesson plans at the first grade level, and he requires significant assistance tackling most tasks.  J█████ was described by Ms. Williams Branch as "not learning anything."  She also noted that J█████still has a hard time expressing himself.  When he does speak, he occasionally stutters.  She added that J█████often cries when he does not know what to do or does not understand directions and instructions.

Ms. Thomas indicated that J█████is "totally lost" in the first grade and requires exceptional amount of one-on-one instruction in order for him to understand basic academic concepts.  Ms. Thomas concurred that J█████struggles to comprehend basic information.  He is still learning basic counting, and recognizing numbers and letters.  He has no sound-syllable identification and often confuses numbers and letters.  He says very little and when he does speak, it often takes a long time for him to express his thoughts.  J█████'s behavior is not problematic in the classroom, though he tends to be a follower of other children who are occasionally mischievous.

## PREVIOUS TESTING

This is J█████'s initial psychoeducational evaluation.  The speech-language evaluation that Ms. Williams Branch referred to was not available for this examiner's review.  A concurrent speech-language evaluation is being conducted.

176

3

## TEST BEHAVIOR

Testing was conducted over the course of one session at J⬛⬛'s school. J⬛⬛ was a willing participant in the testing process. He engaged in no spontaneous conversation with the examiner and had difficulty answering questions that were asked of him. J⬛⬛ was difficult to understand, and the examiner frequently asked him to repeat himself. He did not understand some of the questions asked by the examiner (i.e., "What is the hardest thing about school?") and he did not understand some of the task expectations of some subtests. Instructions were either repeated or he was given visual cues and prompting to encourage his participation and understanding. J⬛⬛ did demonstrate adequate attention/concentration and frustration tolerance, despite limited success with most testing items. He seemed to exert his best effort throughout testing, despite his questionable understanding task expectations. Given J⬛⬛'s adequate level effort and attention, the following appears to be a reliable estimate of J⬛⬛'s current ability levels.

## TEST RESULTS (See Appendix for tests and scores)

## COGNITIVE FUNCTIONING

The WISC-IV is divided into a number of subtests, each of which measures an important aspect of intellectual functioning. Four factor scores were derived from J⬛⬛'s performance and his performance was compared to same-age peers. He achieved a Verbal Comprehension Index score of 67 (Extremely Low range, at the 1st percentile) which indicated well below age level verbal reasoning skills. His Perceptual Reasoning Index score, a measure of visual processing and problem solving, was 63 (Extremely Low range, at the 1st percentile). On the Working Memory Index (short-term auditory memory and attention), J⬛⬛ achieved a score of 62, within the Extremely Low range, at the 1st percentile. J⬛⬛'s score on the Processing Speed Index, a measure of paper and pencil speed, was 80 (Low Average range, 9th percentile). His Full Scale I.Q. score of 60 was in the Extremely Low range, below the 1st percentile, with even development between his verbal and nonverbal/perceptual reasoning skills.

Within the Verbal Comprehension domain, J⬛⬛ scored within the Below Average range when he was required to orally define vocabulary words. He demonstrated Well Below Average proficiency when asked to describe similarities between pairs of objects or concepts (abstract reasoning). When answering questions to assess his practical problem-solving skills and commonsense reasoning, J⬛⬛ achieved a Below Average score.

On the Perceptual Reasoning Index, J⬛⬛ earned a score in the Below Average range, on a task requiring him to complete abstract geometric puzzles (nonverbal abstract reasoning). On a task measuring visual concept formation by having him identify items that belong together in a group of pictures, he achieved a Well Below Average range score. When asked to reproduce abstract block designs from a

177

4

model as a measure of his visual perceptual skills, J████ also received a Well Below Average range score.

On the Working Memory Index, J████consistently scored within the Well Below Average range. He was asked to repeat progressively longer strings of numbers forward and backward (short-term auditory memory). He was able to repeat up to four numbers forward and no numbers backward (he did not understand the task expectations for digits-backward). The Arithmetic subtest was substituted for the Letter-Number Sequencing as J████ did not understand task expectations for this subtest. On the Arithmetic subtest, he was presented with math word/picture problems to solve without paper and pencil.

Within the Processing Speed Index, J████demonstrated Well Below Average proficiency when matching symbols to a key under timed conditions. When asked to discriminate graphic symbols, J████s score improved to the Average range. This task has much less fine motor demand than the Coding subtest.

## NEUROPSYCHOLOGICAL FUNCTIONING

Additional cognitive measures were administered in order to better understand the way in which J████processes, stores, and retrieves information from the environment. Tests administered included the NEPSY-A Developmental Neuropsychological Assessment, and the Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI), J████s performance was compared to others his age.

### Phonological Processing:

Phonological processing is the use of phonological information, the sound structure of oral language, in processing written and oral language. These skills were measured on the NEPSY Phonological Processing subtest where he was asked to match initial and final sounds in words to corresponding pictures. He obtained a Below Average score on this task, at the 9th percentile.

### Oral Language:

J████s verbal fluency (retrieval efficiency) was measured on the NEPSY Verbal Fluency subtest, which required him to name as many examples as possible from a given category within a one-minute time limit. His overall performance fell within the Above Average range (84th percentile) when asked to name foods and animals (category trials). This task represented a relative strength for J████

J████s ability to follow oral directions was also assessed via the NEPSY Comprehension of Instructions subtest. He was presented with a series of increasingly complex instructions requiring him to identify certain shapes or characteristics based upon the verbal statement. J████ performed within the Well Below Average range, 1st percentile, on this task.

178

6

percentile.

*Written Language:*

On a test of written spelling (pre-writing skills), he scored within the Average range, at the 61st percentile. J▮▮▮ correctly printed both upper case and lower case letters, but was unable to spell basic words such as "in" or "he".

*Informal Assessement*
:

J▮▮▮ was unable to answer questions such as his birthdate, phone number, or location of where he lived. He was unable to identify his left from his right. He was familiar with several shapes and colors. Though he could count and say the letters of the alphabet, he did not exhibit age-appropriate visual recognition of upper and lower case letters and numbers.

**ADAPTIVE FUNCTIONING**
The Vineland Adaptive Behavior Scales were administered to Ms. Thomas. The scales were used to determine if J▮▮▮ has adaptive deficits, which, in combination with his level of cognitive functioning, warrant a diagnosis of Mental Retardation. According to the results of the Vineland Adaptive Behavior Scales, J▮▮▮ currently is functioning within the Low range of the Communication Domain, with mild deficits. He is functioning within the Moderately Low range of the Daily Living Skills Domain. Finally, within the Socialization Domain, he is functioning within the Moderately Low range. His overall Adaptive Behavioral Composite Score fell within the Low range, with mild deficits (SS=68). The results of the Vineland Adaptive Behavior scales indicate J▮▮▮ has significant deficits across all three areas of adaptive functioning which is consistent with a diagnosis of Mental Retardation.

In a telephone interview, Ms. Williams Branch confirmed the presence of adaptive functioning deficits. She also acknowledged that she tends to "do a lot of things for him" that he should be able to do on his own. J▮▮▮ was described as "very emotional" and cries frequently when he does not understand what is expected of him. J▮▮▮'s lack of understanding of numbers and letters can interfere with his participation in age-appropriate games that involve counting. Of note, Ms. Williams Branch did indicate that J▮▮▮ can complete some basic self-care (tie his shoes, wash himself).

**SUMMARY OF FINDINGS**
J▮▮▮ presented as a six-year old youth who was cooperative, and a willing participant throughout the assessment process. He was difficult to understand, at times, said very little, and had difficulty answering many of the test items. The evaluation was requested as an initial evaluation to determine J▮▮▮'s eligibility for special education services. On the WISC-IV, J▮▮▮ achieved Extremely Low range scores in the areas verbal reasoning, nonverbal reasoning, and short-term auditory memory. His paper-and-pencil speed placed within the Low Average range.

179

7

J████is history of speech-language delays may have contributed to his weak Verbal Comprehension score; however, his overall performance, which reflected impairment across both the verbal and visual reasoning realms, is more indicative of global cognitive limitations.

Neuropsychological testing indicated Above Average performance in the area of verbal retrieval of categorical information. However, his phonological processing, short-term verbal memory and receptive language scores fell within the Below Average to Well Below Average ranges. On measures of his visual-motor integration, visual perception, and motor coordination skills, J████s scores ranged from Below Average to Average.

Standardized testing, informal assessment, and teacher report were utilized to assessment J████'s academic achievement. His scores in math word/visual problems placed within the Very Low range. J████earned Low Average scores on measures of early reading and writing skills; however, it is imperative to remember that the WJIII does not discriminate well in younger ages and may overestimate a child's functioning. Furthermore, several subtests of the WJIII could not be administered due to J████'s lack of familiarity with numbers and letters. Based upon the observations of this examiner during testing and his teacher's report, J████is not able to perform adequately in his classroom. He frequently does not understand task expectations and requires one-on-one assistance to make basic gains. His skill levels in his present classroom are well below that of his peers. He is still learning to recognize the alphabet, and often does not understand the difference between numbers and letters. .

Overall, these results indicate that J████ has significant deficits across several measures of verbal and nonverbal reasoning. These deficits do not appear to be the function of lack of concentration or attention, nor do they appear to be consistent with a diagnosis of a learning disability. J████ did demonstrate some basic skill in areas such as verbal retrieval skills and visual motor integration skills; however, skills in these areas are not closely tied to higher level thinking skills. Both parent and teacher corroborate that J████ has significant adaptive functioning deficits in multiple areas that, in combination with his cognitive ability, warrant a diagnosis of Mild Mental Retardation.

## DIAGNOSTIC IMPRESSIONS
Axis I:  315.32 Mixed Receptive- Expressive Language Disorder, By History
Axis II:  317 Mild Mental Retardation

## RECOMMENDATIONS
1. Based on the results of the evaluation, the multidisciplinary team should provide J████special education services under the classification of Mentally Retarded. J████requires placement in a separate, structured classroom for his academic subjects with a low teacher-student ratio (8-10 students- 1

8

teacher/1 aide).  J███ will continue to fall farther behind if he remains in a larger classroom setting.

2. J███ requires one-on-one tutoring to address his academic delays (2x/week/45 minute sessions).  Usage of a multisensory approach to reading and writing (i.e., Lindamood-Bell or Phonographix) is strongly recommended.

3. The findings from the Speech-Language evaluation should be utilized in conjunction with this assessment to assist in treatment planning.

4. Ms. Williams-Branch should schedule an appointment with J███s pediatrician to ensure there are no medical causes for J███ difficulties (e.g., exposure to lead).

5. Updated vision and hearing exams should be scheduled.

6. Multisensory approaches to teaching should be incorporated into lesson plans whenever possible (i.e., hands-on learning, videos).

7. J███ should be taught information in small amounts that can be reviewed frequently until he has mastered the subject.  These small amounts should be repeated frequently.

8. Learning memory strategies and techniques may improve J███s immediate recall.  These strategies would include the use of verbal rehearsal, grouping or chunking information, making visual images, and mnemonics.

9. J███ needs extra time for the completion of assignments and tests.  For optimal performance, he needs sufficient time to process directions, complete the required reading, and plan and organize responses.  This modification should be allowed for classroom assignments and examinations.

10. When appropriate, J███'s hard work and determination should be acknowledged.  This will be critical not only in facilitating his academic progress, but in maintaining his self-esteem.

11. J███ should be re-evaluated in one year to monitor and track his progress.

It has been a pleasure working with J███ and his mother.  If you have any questions regarding this report, please feel free to contact Dr. Sampson or Dr. Cohn at (202) 333-6251.

Nicole Sampson, Ph.D.
Licensed Psychologist

Maria Zimmitti Cohn, Ph.D.
Licensed Psychologist
Director of Clinical Services

181

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
```

```
                                    TIME  : 11/01/2006 15:48
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 11/01  15:45 |
| FAX NO./NAME | OMC |
| DURATION | 00:03:39 |
| PAGE(S) | 11 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**     Stanton ES & OMC

**Fax Number:**    645-3264

**From:**          Camille McKenzie

**Regarding:**     J█████ W█████

**# of pages:**    11

**Notes:**         Independent psychoeducational eval

182

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
```

```
                              TIME  : 11/01/2006 15:53
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 11/01  15:49 |
| FAX NO./NAME | 2026453264 |
| DURATION | 00:03:43 |
| PAGE(S) | 11 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Stanton ES & OMC

*Fax Number:*   645-3264

*From:*          Camille McKenzie

*Regarding:*     J███ W███████

*# of pages:*    11

*Notes:*         Independent psychoeducational eval

183

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Toupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

## SOCIAL HISTORY

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

| | |
|---|---|
| Name: | J█████ W████████ |
| Date of Testing: | October 10, 2006 |
| Date of Birth: | ████████████████ |
| Age: | 6 years, 7 months |
| Grade: | 1st grade |
| School: | Stanton Elementary School |
| Examiner: | Nicole Sampson, Ph.D. |
| Date of Report: | October 28, 2006 |

J████ s a six-year-old youth who lives with his mother, Ms. Michelle Williams Branch, step-father, Eric Branch, and three siblings: Tavion, age 9; Eric, age 4; and Brooke, age 2. English is the primary language spoken in the home. J████ s biological father, David Donaldson, has been incarcerated since 2005. Ms. Williams Branch was uncertain of his release date, but believes it to be in 2007. She has not been involved with Mr. Donaldson since J████ was approximately 18 months of age. Mr. Branch is fulfilling a paternal role in J████ s life.

Ms. Williams Branch served as informant regarding J████ s background and history. She described her pregnancy with J████ as generally uneventful. She delivered J████ full-term via vaginal delivery, weighing seven pounds, fifteen ounces. No complications were noted. Ms. Williams Branch described J████ s early motor development as normal with no concerns about the presence of any developmental delays (i.e., sitting up- 7 months, walking- 10 ½ to 11 months). However, Ms. Williams Branch indicated that J████ s language skills were severely delayed. She stated that J████ was essentially unintelligible until the age of four, when he could be then be understood by some. He was reportedly evaluated at Children's National Medical Center at the age of two and the presence of language delays was confirmed (report not available to this examiner). However, speech therapy services were confounded by a long waiting list. J████ only attended two sessions. Presently, Ms. Williams Branch indicated that J████ still

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

**Exhibit 3**

184

03/26/2006  21:11     2022654264          TYRKA & ASSOCIATES          PAGE  24/38

requires speech therapy as he now stutters and continues to have a difficult time expressing himself. Medically, J███ has been diagnosed with asthma, and he has been prescribed an albuterol inhaler and Singulair.  He has history of frequent hospitalizations for acute asthma attacks, which started at the age of four months. The frequency of his hospital visits has decreased with age.  He was also hospitalized once for a broken arm.  He has never been evaluated for any suspected learning difficulties until now, nor has he received any additional tutoring or assistance.  His most recent physical was in October 2006.  Ms. Williams Branch does not believe J████ has had a recent vision or hearing screening.

J████ attended Head Start and was enrolled in kindergarten at Stanton Elementary School.  He is presently in the first grade at Stanton in a classroom with thirty-one other students.  It is unclear why J████ was promoted to the first grade despite his inadequate acquisition of the kindergarten curriculum.  Ms. Williams Branch noticed that J████ was having academic difficulties starting in Head Start.  At that time, Ms. Williams Branch observed that J████ was unable to keep up with his peers in learning even the most basic academic facts.  It was at that time that she requested an IEP be developed to address J████ learning difficulties.  Ms. Williams Branch continues to be concerned with J████ severe learning difficulties.  He is still unable to consistently recognize basic numbers and letters and thus, he cannot begin to understand introductory phonemic awareness (i.e., sound-symbol identification).  He needs close supervision to complete assignments and works at a very slow rate.  Directions and instructions need to be repeated often in order for him to understand the task at hand.

Socially, Ms. Williams Branch notes that J████ gets along well with others. However, he is sensitive to teasing that occurs due to his stuttering.  He is a likeable little boy and does not routinely engage in fighting or other aggressive acts.  He does tend to be a follower rather than a leader and this may result in him following children who are being mischievous.  Ms. Williams Branch noted that J██████ behavior was more problematic in the kindergarten classroom, where he was "acting up" more regularly due to his lacking of understanding of the class lessons.  At home, J████ has a strong relationship with his mother and his siblings.  Ms. Williams Branch notes that J████ does instigate fights with his siblings, but these tend to be reflective of normal sibling relations.

Ms. Williams Branch is hopeful that J████ will receive additional assistance to address his learning and speech difficulties which, in turn, will translate into significant improvements in the classroom.

03/26/2006  21:11    2022654264    TYRKA & ASSOCIATES    PAGE  25/38

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘

                                TIME  : 11/01/2006 15:42
                                NAME  : TYRKA & ASSOCIATES
                                FAX   : 2022654264
                                TEL   : 2022654260
                                SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────────┐
│  DATE,TIME                      11/01  15:41                   │
│  FAX NO./NAME                   2026453264                     │
│  DURATION                       00:01:10                       │
│  PAGE(S)                        04                             │
│  RESULT                         OK                             │
│  MODE                           STANDARD                       │
│                                 ECM                            │
└──────────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Stanton ES & OMC

*Fax Number:*     645-3264

*From:*           Camille McKenzie

*Regarding:*      J████ W█████

*# of pages:*     4

*Notes:*          Independent Social history

186

---

TRANSMISSION VERIFICATION REPORT

```
                              TIME : 11/01/2006 15:44
                              NAME : TYRKA & ASSOCIATES
                              FAX  : 2022654264
                              TEL  : 2022654260
                              SER.# : 000A6J693992
```

```
DATE,TIME              11/01  15:43
FAX NO./NAME           OMC
DURATION               00:01:10
PAGE(S)                04
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Stanton ES & OMC |
| *Fax Number:* | 645-3264 |
| *From:* | Camille McKenzie |
| *Regarding:* | J█████ W█████████ |
| *# of pages:* | 4 |
| *Notes:* | Independent Social history |

187

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, Psy.D.

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Helser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Toupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L.

## SPEECH AND LANGUAGE EVALUATION

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

Name:               J___ W___
Date of Birth:
Date of Evaluation:  11/17/2006
Age:                6 years, 8 months
School:             Stanton Elementary School
Examiner:           Tamela Sterling, M.S., CCC-SLP
Attorney:           Tyrka & Associates

## BACKGROUND INFORMATION

J___ is a 6-year-old African American male who was evaluated to assess current speech and language functioning to determine if he qualifies for speech and language services. This evaluation may be used to aid in the determination of an appropriate school placement for school year 2006-2007. J___ is from a home in which English is the primary language. According to his mother, J___ did not begin talking until he was four. Mother also states J___'s intelligibility has improved since his last speech and language evaluation was completed at Children's Hospital around July 2003. This clinician did not have access to previous speech and language report to compare abilities for the purpose of this report. J___ currently in the 1st grade at Stanton Elementary and is being assessed to establish the necessity for additional services for success in school. J___ is currently receiving no special education services.

## TEST ADMINISTERED

*Clinical Evaluation of Language Fundamentals-4th Edition (CELF-4)*
*Receptive One-Word Picture Vocabulary Test (ROWPVT)*
*Expressive One-Word Picture Vocabulary Test (EOWPVT)*
*Goldman-Fristoe Test of Articulation-- 2nd Edition*

## CLINICIAL OBSERVTIONS

J___ willingly accompanied examiner to testing, and was friendly during initial introductions. Teacher reports J___ still has difficulty getting through the alphabet and with is only counting to about six or seven. Teacher also states J___ has difficulty following classroom directions and speaking in complete sentences. J___ is currently in a classroom with about 24 students. Testing was conducted at Stanton Elementary School in Washington, D.C. in a quiet room with

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

**Exhibit 4** 188

2

minimal outside distractions. Rapport was established quickly with clinician and purpose of testing was explained. J███ remained focused throughout 1 ½ hour testing period, with little re-direction required to stay on task. He responded well to positive reinforcement and benefited from repetition when it was allowed during testing. It appeared as though J███ put forth his best effort throughout testing and findings are judged to be a valid reflection of his true abilities.

## LANGUAGE SAMPLE
An informal language sample was obtained throughout this assessment during rapport building and in-between test and/or subtests. J███ only responded to direct basic questions which required only a one or two word response. He was observed to speak only in short 3 – 4 word utterances when interacting with his teacher and peers. J███ demonstrated difficulty answering open 'wh' questions which required a more detailed response. Based on his spontaneous sample, J███ ability to communicate did not appear age-appropriate.

## TEST RESULTS

**Language – *CELF-4***
**CELF-4 CORE LANGUAGE SCORE**
J███ was administered four core subtests of the Clinical Evaluation of Language Fundamentals–Fourth Edition (CELF–4) from which his Core Language score was derived. The Core Language score is considered to be the most representative measure of J███'s language skills and provides an easy and reliable way to quantify a student's overall language performance. The Core Language score has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J███'s Core Language score, the following subtests were administered:
Concepts & Following Directions
Word Structure
Recalling Sentences
Formulated Sentences

J███ received a Core Language score of 52 which places him in the very low range of functioning.

## CELF–4 RECEPTIVE LANGUAGE INDEX
The Receptive Language index is a cumulative measure of J███'s performance on two or three subtests designed to best probe receptive aspects of language including comprehension and listening. The Receptive Language index has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J███'s Receptive Language index, the following subtests were administered:
Concepts & Following Directions
Word Classes 1–Receptive
Sentence Structure

J███ received a Receptive Language index of 65 this performance places him in the very low range of functioning.

189

3

## CELF–4 EXPRESSIVE LANGUAGE INDEX

The Expressive Language index is a cumulative measure of J██████'s performance on the three subtests that probe expressive aspects of language including oral language expression. The Expressive Language index has a mean of 100 and a standard deviation of 15. A score of 100 on this scale represents the performance of the typical student of a given age.

For J█████'s Expressive Language index, the following subtests were administered:
Word Structure
Recalling Sentences
Formulated Sentences

J█████received an Expressive Language index of 57 this performance places him in the very low range of functioning.

## CELF–4 SUBTEST SCORES

| Subtest-- subtests have a mean of 10 and a standard deviation of 3. Scores between 7-13 indicate average functioning. | Scaled Score |
|---|---|
| **Concepts & Following Directions** -- evaluates the student's ability to interpret, recall, and execute oral commands of increasing length and complexity that contain concepts of functional language. The student identifies objects in response to oral directions. Analysis of data suggest J█████may have difficulty understanding and acting upon spoken directions, various concepts some in the area of, sequencing (directions involving concepts: first; middle; last; fourth; third; and second) and temporal directions (involving concepts: after; then; and before) | 1 Below Average |
| **Word Structure** – assess the student's ability to apply word structure rules (morphology) to mark inflections, derivations, and comparison; and select and use appropriate pronouns to refer to people, objects and possessive relationships. A below average score indicates J█████ may have difficulty substituting pronouns for nouns, indicating number, time and possessive relationships; making comparisons of characteristics; describing pictures and events. | 4 Below Average |
| **Recalling Sentences** – assess auditory retention and the ability to recall and reproduce compound and complex sentences. The student imitates sentences presented by the examiner. A below average score indicates J█████has a diminished ability remembering spoken sentences of increasing complexity in meaning and structure which is required for following directions, note taking, learning vocabulary and subject content. | 4 Below Average |
| **Formulated Sentences** – assess the ability to create sentences using various grammatical forms. The student is asked to formulate a sentence, using target words or phrases, while using an illustration as a reference. Despite multiple attempts, re-phrasing and repetition of directions, clinician was unable to condition J█████for this particular subtest. J█████ was unable to formulate complete grammatically correct sentences to complete this subtest. | 1 Below Average |
| **Word Classes – Receptive** – examines the ability to understand and perceive relationships between pictures. J█████ was asked to | 8 Average |

190

4

| choose the items that best represent the desired relationship from a set of three and four pictures. This score indicates average functioning. | |
|---|---|
| Sentence Structure – evaluates the ability to interpret spoken sentences of increasing length and complexity, and select the pictures that illustrate referential meaning of the sentence. This below average score indicates J████ may have difficulty with sentence comprehension and the understanding of relationships among spoken language and matching to pictured references sentences that are spoken or read. | 4 Below Average |

## Vocabulary

The *EOWPVT*, was administered to assess J████'s expressive vocabulary skills. J████ was required to name the object shown in test booklet provided by the examiner. This test has a mean of 100 and a standard deviation of +/- 15. Examples of pictures J████ was able to name are: tiger; fruit; skateboard; fish tank; raccoon; and dentist. Examples of pictures he was unable to name are: wall; clouds; bridge; tire; penguin; bridge; and fireplace. This performance suggests J████ is functioning below the average range for his age on this test of single-word vocabulary.

The *ROWPVT*, was administered to assess J████'s receptive vocabulary skills. J████ was required to identify one picture from four choices which best represented the target word. This test has a mean of 100 and a standard deviation of +/- 15. Examples of pictures J████ was able to identify are: juggler; pitching; melting; letter; liquid; and core. Examples of pictures he was unable to identify are: noise; oval; celebration; number; sailboat; hatching and pilot. This performance shows J████ is functioning below the average range for his age on this test of single-word vocabulary.

| Test | Standard Score | Percentile |
|---|---|---|
| Expressive One-Word Picture Vocabulary Test | 71 | 3 |
| Receptive One-Word Picture Vocabulary Test | 72 | 3 |

## Articulation/Voice/Fluency/Oral Motor

The *Goldman Fristoe Test of Articulation 2nd Edition* was administered to determine how J████ uses individual sounds in single words. During formal testing J████ made no errors when using sounds in single words. His overall speech intelligibility is judged to be about 95% for single words and 80% for short phrases. As utterance length increases intelligibility decreases. When using longer utterances J████ was observed deleting the final consonants from words which impacts overall speech intelligibility. It should also be noted that during testing, J████ demonstrated some difficulty making necessary repairs to any breakdown in communication. Substituting /f/ for /th/ was observed but is considered a dialectical difference and the one substitution has little to no impact on overall intelligibility. Voice and oral motor skills fell in the normal range for his age and gender. J████'s hearing appeared to be within normal limits for conversational levels of speech.

## SUMMARY AND IMPRESSIONS

J████ is a 6-year-old male who was evaluated to determine if he qualifies for speech and language services. J████'s strengths are:

191

5

- understanding the relationships between pictures
- voice, and fluency are all within normal limits

J____'s weaknesses are in the areas of:
- receptive and expressive one word vocabulary skills which fall below the average range of functioning
- receptive language skills involving
   - concepts and following directions
   - interpreting spoken sentences of increasing length and complexity
- expressive language skills involving
   - formulating grammatically correct sentences
   - remembering spoken sentences of increasing length and complexity
   - word structure using irregular plurals, possessive pronouns, future tense, comparative and superlative, subjective pronouns, uncontractible copula (i.e., She is and They are) and irregular past tense appropriately

*Formal testing revealed J____ demonstrates a severe delay in his overall receptive and expressive language abilities which is further supported by a moderate delay in receptive and expressive single word vocabulary skills.*

## RECOMMENDATIONS

1. The results from this assessment should be compared with current educational and cognitive testing because most of J____'s speech and language scores indicate low overall functioning across the board. J____ may be functioning at his cognitive level therefore intensive or direct services may not be beneficial. Regardless, it is recommended J____ receive 30 minutes of speech and language therapy 2 times weekly (30 minutes individual and 30 minutes of small group) to increase overall receptive and expressive language abilities and to improve speech intelligibility. J____ should be evaluated annually to determine if he is benefiting from direct services.

2. J____'s profile indicates he has difficulty understand directions involving various concepts, therefore a classroom that is able to provide rephrasing and repeating directions is recommended to ensure understanding.

3. In the classroom, curriculum vocabulary should be provided in:
   - Context clues – include the word in a phrase(s) to help with understanding.
   - Functional settings – relate the word if possible to everyday life.

4. Ideal service delivery model would include small group and inclusion support where J____ can get the individual attention he requires to succeed academically.

5. J____ may also benefit from a multi-sensory approach to learning and a classroom where there are opportunities to demonstrate his knowledge through a variety of media. Instruction will need to be direct, specific and will need to incorporate review of material already mastered.

192

6

6.  A full audiological exam is recommended to rule out any hearing difficulty
    due to continued reduced overall intelligibility and reduced ability to follow
    simple directions.

It was a pleasure evaluating J███, if there should be any questions concerning this
assessment, please feel free to contact me at 202-333-6251.

Támela D. Sterling, M.S., CCC-SLP
Speech-Language Pathologist

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 12/20/2006 16:20
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

```
DATE,TIME                   12/20  16:17
FAX NO./NAME                OMC
DURATION                    00:02:23
PAGE(S)                     07
RESULT                      OK
MODE                        STANDARD
                            ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*        Stanton ES & OMC

*Fax Number:*       202-645-3264

*From:*             Camille McKenize

*Regarding:*        J██████ W█████████

*# of pages:*       7

*Notes:*            Independent Speech & Language

194

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
```

```
                              TIME   : 12/20/2006 16:23
                              NAME   : TYRKA & ASSOCIATES
                              FAX    : 2022654264
                              TEL    : 2022654260
                              SER.#  : 000A6J693992
```

```
   DATE,TIME              12/20  16:21
   FAX NO./NAME           2026453264
   DURATION               00:02:23
   PAGE(S)                07
   RESULT                 OK
   MODE                   STANDARD
                          ECM
```

*This is the # it got sent to originally*

*3564*

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**       Stanton ES & OMC

**Fax Number:**      202-645-3264

**From:**            Camille McKenize

**Regarding:**       J████ W█████

**# of pages:**      7

**Notes:**           Independent Speech & Language

195

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Brenda Kelly, Stanton ES |
| *Fax Number:* | 202 645 3264 |
| *From:* | Laura Fogliano |
| *Regarding:* | J███ W█████ |
| *# of pages:* | 8 incl. cover |
| *Notes:* | Independent Speech and Language Evaluation. Original fax confirmation is included. Thanks for your patience! |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

196

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT     │
└─────────────────────────────────────┘
                              TIME  : 01/31/2007 10:42
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

| DATE,TIME | 01/31  10:39 |
|---|---|
| FAX NO./NAME | 2026453264 |
| DURATION | 00:02:31 |
| PAGE(S) | 08 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**     Brenda Kelly, Stanton ES

**Fax Number:**     202 645 3264

**From:**     Laura Fogliano

**Regarding:**     J██████ W██████

**# of pages:**     8 incl. cover

**Notes:**     Independent Speech and Language Evaluation. Original fax confirmation is included. Thanks for your patience!

197

## VERIFIED STATEMENT OF KEDRA HILL

1) I am over 18 years of age and competent to testify regarding the matters described

   herein.

2) I am currently employed as the Coordinator for School Services at Rock Creek

   Academy ("RCA"), a private special education school in Washington, DC.

3) I have thoroughly reviewed J████'s current evaluations.

4) My understanding of J████'s needs and the basis of that understanding are as

   follows:

   a) According to his November 17, 2006 speech and language evaluation, J████

      should receive 30 minutes of speech and language therapy two times weekly to

      increase overall receptive and expressive language abilities.

   b) According to his October 28, 2006 psychoeducational evaluation, J████ requires

      specialized instruction in a separate, structured classroom for all of his academic

      subjects. In addition, J████ would benefit from one-on-one tutoring twice a

      week in basic reading and writing skills using a multisensory approach.

5) J████ has been accepted for admission into RCA, pending receipt of funding.

6) RCA can accommodate J████'s needs as identified in his most recent evaluations. In

   accordance with these evaluations, RCA will:

   a) provide J████ specialized instruction in a small, self-contained classroom for all

      his academic subjects;

   b) provide J████ one-on-one tutoring in basic reading and writing skills twice a

      week for 45 minutes each; and

   c) provide J████ 30 minutes of speech and language therapy twice a week.

**Exhibit 6**  1-98

7) RCA has identified a specific classroom for Brandon if funding is authorized.

8) Brandon will be the third student in a first grade classroom with a heavy focus on speech and language therapy.

9) Ms. Sherrod, the current teacher for this class, is fully certified and licensed to teach special education in the District of Columbia.

10) RCA has three full-time licensed clinical psychologists on staff.

11) RCA has at least nine licensed social workers on staff to provide psychological counseling services to its students.

12) RCA has admitted students with J████'s special education profile in the past, and these students have been successful in the program.

13) The District of Columbia Public Schools ("DCPS") has issued prior notices placing children with J████'s special education profile at RCA without resort to a due process hearing.

14) RCA can provide J████ with all of the instruction and services recommended in his recent evaluations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on *March 26, 2007*.

_____
Kendra Hill
Coordinator of School Services
Rock Creek Academy

199

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT       │
└─────────────────────────────────────────┘

                              TIME  : 03/14/2007 13:21
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROE6J471573


      DATE,TIME              03/14  13:21
      FAX NO./NAME           92654264
      DURATION               00:00:27
      PAGE(S)                01
      RESULT                 OK
      MODE                   STANDARD
                             ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



2007 MAR 14 PM 2:29
OFFICE OF THE
GENERAL COUNSEL

### HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:  Parent (or Representative): _D. TYRKA_      Fax No.: _265- 4264_

LEA Legal Counsel: _OGC_

RE:  _W███████_  and (LEA) DOB: _████████_
        Student's Name

FROM: __SHARON NEWSOME__
        Special Education Student Hearing Office Coordinator

DATE SENT: __3/14/07__

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on __1/31/07__. Please be advised that the hearing has been scheduled for:

DATE: __4/4/07__

TIME: __9:00 AM__

200



### STANTON ELEMENTARY SCHOOL

Norman K. Brooks                    Patricia T. Brantley
Principal                           Assistant Principal

2701 Naylor Road, S.E.    Washington, D.C. 20020    Phone (202) 645-3255    Fax (202) 645-3264

### FACSIMILE COVER SHEET

Date: 02/15/2007

To: Ann Williams                    Facsimile Number: 202/442-5098/7

From: Brenda Kelly                  Number of Page(s): 13  (including cover)
SEC

This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (202) 645-3255. Thank you for your cooperation.

Comments:

Meeting Notes for: J___ W___
DOB: _____
• Dispute Resolutions
• Eligibility

201



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

*www.k12.dc.us*

Date: February 12, 2007

Parent's Name: Ms. Williams

Parent's Address: _____

_____

Subject: Resolution Session for ___ �though ___ W▓▓▓▓

DOB: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Attending School: Stanton ES

## SETTLEMENT AGREEMENT

In lieu of the formal Due Process Hearing in the above-referenced matter, the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent agree to resolve this matter pursuant to the following terms and conditions:

     1. Parent verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

     2. The Parent verifies that the student's date of birth is _____, and that the attending school is _____ and home school is _____.

     3. Parent agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the the student, parent, or their representative as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

*Children First*

202

JUL-27-2005  14:44          DCPS GENERAL COUNSEL

2024425097      P.005

DCPS
Page 2

4. Parent and DCPS agree to the terms listed below.  Check the box / boxes that applies.

## ☒ Eligibility Determination /

- DCPS agrees to convene an MDT/IEP meeting no later than 02/12/200 7 days of execution of this agreement at which the student's eligibility for special education will be determined and if found eligible, an IEP will be developed and placement will be discussed.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a prior notice of placement within 5 school days if the placement is public and 30 calendar days if the placement is non-public.

## ☒ Conduct Evaluations & Hold MDT Meeting

- DCPS agrees to conduct, within 10 days school / calendar (*circle one*) days of execution of this agreement, a
  psycho-educational evaluation,
  a speech/language evaluation,
  occupational therapy evaluation,
  physical therapy evaluation,
  hearing screening,
  vision screening,
  a social history evaluation
  If DCPS fails to complete the evaluation/evaluations within the above stated time frame, the parent can secure an independent psycho-educational evaluation, an independent speech/language evaluation, an independent occupational therapy evaluation, an independent physical therapy evaluation, an independent hearing screening, an independent vision screening,  or an independent social history evaluation(*circle applicable evaluation/ evaluations*)  at the expense of DCPS, consistent with DCPS cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

(202) 645-4372

- Within 15 school days of the Special Education Coordinator at School receiving the last completed evaluation, DCPS will convene an MDT/IEP meeting at which these evaluations will be discussed, an IEP will be developed, and a prior notice is issued if necessary.

## ☐ Fund Independent Evaluations

- DCPS agrees to fund the following independent evaluation:  N/A
  , a speech/language evaluation, occupational therapy evaluation, physical therapy evaluation, hearing screening, vision screening,  a social history evaluation (*circle applicable evaluation/evaluations*) at the expense of DCPS, consistent with DCPS

*Children First*

203

DCPS
Page 2

cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

- DCPS agree to convene an MDT/IEP meeting within 15 school days of the Special Education Coordinator at _____ School receiving the last completed evaluation.   The MDT team will review these evaluations, revise the IEP, if necessary, and discuss placement.

- If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐  **Compensatory Education**

- DCPS agrees to develop a  compensatory education plan.

☐  **TUTORING**

- DCPS agrees to provide tutoring to compensate for missed instruction on a one-for-one basis.

☐  **MDT Meeting to Discuss Placement:**

- DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 30 calendar days if the placement is non-public.

☐  **Referral for Residential Placement**

- DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

   5.  Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed.

   6.  If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent agree to extend the deadlines or negotiate new timelines, whichever appropriate.  Parent will not unreasonably deny any such request for extension/renegotiation.

   7.  Parent agrees to contact the Director of the Office of Compliance in Special Education when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a complaint alleging DCPS' failure to comply.

*Children First*

204

NOV-21-2005   14:44           CPS GENERAL COUNSEL                    2024425097    P.007

DCPS
Page 2

8. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, and including all claims that the parent now asserts or could have asserted as of the date of this agreement.

9. Both parties agree that they have 3 days to withdraw the settlement agreement. If the parent decides to withdraw the settlement agreement said agreement should be in writing.

Sincerely,

*Brenda S. Kelly, designee*

_____
Principal or designee

Agreed to: _____        _____
           Parent                          Date

*Parent participated by telephone 2/12/2007 at 1:30 PM    Brenda Kelly    2/12/2007*

_____

***Children First***

TOTAL P.007

205

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

| DCPS - IEP Page 1 of 4 |
| --- |

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

## II. CURRENT INFORMATION

Date of IEP Meeting: 02/12/2007

Date of Last
IEP Meeting: N/A

Date of Most Recent
Eligibility Decision: 02/12/2007

Student Name: Last W███████  First J████  MI

Student ID ████████  Soc.Sec.No.  Age:  Grade 1st

Gender ☒ M ☐ F  Date of Birth ████████  Ethnic Group African American

**Purpose of IEP Conference:**
☒ Initial IEP  ☐ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Address 3340 22nd Street Apt. 6 S.E.
House No.   Street Name   Quadrant   Apartment #

Washington   DC   20020
City   State   Zip Code

☒ Non-attending

Attending School Stanton ES  Home School Stanton ES

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS/

Indicate Level of Standardized Assessment:
III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

Parent Ms. Williams

Address of (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate

| BEHAVIOR | TRANSPORTATION |
| --- | --- |
| ESY | TRANSITION |

House No.   Street Name   Quad.   Apt. No.   City   State   Zip Code
Telephone: Home   Work

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| Student | English | English | English | Native Language | Oral _____ |
| Parent | English | English | English | Native Language | Rdg./ Written _____ |
| Home | English | English | English | Native Language | Instrument: _____ Date: _____ |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr/ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Specialized Instruction | 0 | 20 | 20 | Hr. | Week | Special Education Teacher | 02/13/2007 | 10 | monthly |
| Speech and Language | | 1 | 1 | Hr. | Week | Speech Therapist | 02/13/2007 | 10 | monthly |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 21 | 21 | Hours Per Week | | | | | |

### V. Disability(ies)

Mental Retardation

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☒ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

| | | |
| --- | --- | --- |
| Brenda S. Kelly | Brenda Kelly | SEC |
| Michelle Williams | VIA tit&conference | |
| Suruchi Lall | Suruchi Lall | Sp. Ed. Teacher |
| Annette Dox ? | Annette Dox | Social Worker |
| Tara T. Benn | | School Psychologist |
| Ingrid L. Granados | | Speech Pathologist |

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _Parent does not agree with IEP_ Date

_wants services implemented_

206

N1058

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON. D.C.

1 of 5

MDT

**MULTIDISCIPLINARY TEAM**
**(MDT)**
MEETING NOTES
Eligibility/ IEP

MDT REFERRAL DATE: _____

MEETING DATE: 02/12/2007

STUDENT: _____ J███ V███

SCHOOL: _____ Stanton ES

PARTICIPANTS: (Print Name)

Brenda Kelly
Suruchi Lall
Ingrid L. Graanious
Rodney T. Campfield
Tara M. Benn, M.Ed.
Rosa G. Thomas
Michelle Williams

PARTICIPANTS: (Sign Name)

Brenda Kelly
Suruchi Lall
Ingrid L. Graanious
Rodney T. Campfield
Tara M. Benn
Rosa L. Thomas
via telephone

POSITION

SEC
Special Education Teacher
Speech Pathologist
Spec.Comp. Ed. Award
School Psychologist
Teacher
Parent

The meeting was convened and introductions were made.  A copy of the Procedural Manual
was ~~given~~ shared with verbally to the parent with a brief explanation and a receipt for the Manual was signed. The
purpose of the meeting was stated: MDT met to review all of the documentation and
determined J███ eligibility for special education.

Parent reports: J███ is not progressing. His teacher said
he is not progressing. He is not on level. He is
unavailable to keep up with his peers. J███ is a follower.
Ms. Thomas, J███s teacher stated that J███ is working
on readiness level. The MDT agrees that the student
should have an OT evaluation.

THE PARENT ☐ IS PRESENT ☒ IS NOT PRESENT AT THE MEETING  Via telephone conference

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT ___ J███ W███

☒ IS ELIGIBLE FOR SPECIAL EDUCATION
☐ IS NOT ELIGIBLE FOR SPECIAL EDUCATION

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: *Eligibility/IEP*

2 of 5

STUDENT J▬ W▬  SCHOOL *Stanton ES* DATE *02/12/2007*

General Education Teacher Reports:

Weakness: does not recognize color words
• does not recognize order of alphabets
• does not recognize sound of alphabets
• does not blend simple three letter words
• does not understand connection that alphabets
to letters, letters to sounds/ sounds to words.
• does not recognize numbers 9-20
• does not recognize vocabulary words PP list
• uses reversals

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____

3 of 5

STUDENT J███ █████   SCHOOL Stanton E.S.   DATE 2/12/2007

**Social Worker Reports:**

The social worker shared information from the "Social History" dated 10/10/2006. The Social History was completed by Sandra Maria Cohn, PhD a Licensed Psychologist. Student has a history of Asthma. He was a normal delivery full-term. He reached his developmental milestones with little delays.

His parents shared in the Social History that their is concerns regarding his speech and language delays. His parent shared during the meeting (via telephone) that the social history was *Completed* by telephone with Nicole Sampson, PhD Licensed Psychologist. The Social History has both signatures with Maria Cohn, PhD & Nicole Sampson, PhD

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

4 of 5

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT ____ J___ W_____ ____    SCHOOL _____ Stanton ES _____    DATE _____ 02/12/2007 ____

Speech and Language:  J_____ was administered a complete speech and language evaluation on 11/17/2006. Formal testing revealed that J_____ demonstrates a severe delay in his overall receptive and expressive language abilities which is further supported by a moderate delay in receptive and expressive single word vocabulary skills. J_____ will receive 1 hr. weekly to improve speech intelligibility, vocabulary, receptive and expressive language skills.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

*5 of 5*

MEETING TYPE: *Eligibility/IEP*

STUDENT = ▓▓▓▓▓▓▓▓▓   SCHOOL *Stanton ES*   DATE *02/12/2007*

*Summary & Recommendations:*

After reviewing all of the documentation,  the MDT determined that the student is eligible for special education as *mental retardation (MR)*

Ms. *Benn notes: appears to meet the criterion for identifying Mental Retardation outlined in IDEIA 2004.*

Specialized instruction is required in the following areas:  Reading, Mathematics and Written Expression. *20 hours.*

Related services are required in the following areas:  Speech Therapy (1 hour per week).

The following accommodations/modifications need to be made: extended time, preferential seating, repeated directions, simplified directions test/directions read aloud to student and oral responses.

Based upon information presented  the student does not require Extended School Year services nor is the student warranted compensatory education services, *at this time.*

Placement Discussion:  Based upon the information reviewed by the MDT, the MDT determined that the student could be educated in a combination setting at the *The MDT will meet* neighborhood school (Stanton).

*Advocate and Parent indicates that student's disability Classification should be multiple disability (Mental Retardation and Speech and Language Impaired, however DCPS indicates that Student's Classification is Mental Retardation (MR).* ~~ruling out multiple disabilities as his~~

*disability classification. Parent and Advocate do not agree with the goals, hours and placement of the IEP, will not sign. Parent and Advocate want Services*

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

✓ PUBLIC        ___DPCS CHARTER        __ LEA CHARTER        ___ NONPUBLIC        ___ PRIVATE/RELIGIOUS

### RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____          Meeting Held: 2/12/2007

Student: ▓▓▓ W ▓▓▓▓          DOB: ▓▓▓▓ School: Stanton

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| ROSA G. Thomas | Rosa G. Thomas | Teacher |
| Tara M. Benn, M.Ed. | Tara M. Benn | School Psychologist |
| Rodney T Campbell | Rodney T. Campbell | Comp. Ed. Awards |
| Fred Liddell Gracious | Fred Liddell Gracious | Speech Pathologist |
| Annette DODD | Annette Dodd | Social Worker |
| Ms. Michelle Williams | Participated by telephone | |
| Suruchi Lall | Suruchi Lall | Sp. Ed. Teacher |
| Brenda Kelly | Brenda Kelly | SEC |
| | | |
| | | |

____ Resolved                    ✓ Unresolved

Meeting convened, all parties in attendance introduced themselves. Parent via telephone conference. Her advocate as a result of an HOD was present during the Dispute Resolution Meeting. The MDT agreed that a private placement would be considered discussed during the placement meeting after eligibility/IEP, if needed. The MDT agrees that J▓▓ will be referred for a hearing and visual exam and an audiological evaluation within the next 2 business days, which shall be completed by DCPS. However a vision & hearing screening was completed by DCPS.

212.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          __ DPCS CHARTER          _ LEA CHARTER          _ NONPUBLIC          __ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____          Meeting Held: 2/12/2007

Student: _____ W _____          School: Start

DCPS agrees to re-convene to share
hearing, vision and audiological evaluations
within 10 business days, and necessary
related services while to added to the
IEP as needed. Parent shares through
telephone conference that she disagrees
with the resolution of this meeting.

213

HP Officejet 6210
Personal Printer/Fax/Copier/Scanner

Log for
Stanton Elemtary School
2026453564
Feb 15 2007 10:31AM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Feb 15 | 10:30AM | Fax Sent | 94425097 | 0:54 | 2 | Jammed |

OFFICE OF THE
GENERAL COUNSEL
2007 FEB 15 PM 5 38

214

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| W█████ J.          Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **DCPS** | ) | |
| **Stanton ES** | | |
| | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on **January 30, 2007**

3.  The deadline for the resolution meeting is **February 14, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

   1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
   3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

215

    4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **February 9, 2007**.

C.    ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **February 14, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney:Douglas Tyrka, Esq.**
**Parent: Michelle Williams**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **January 30, 2007**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: J██████W██████
School: **Stanton ES**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office. If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged. The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

217

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5693



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
                        **Special Education Coordinator**

Telephone Number: **(202) 645-3255**               Pages: **8**
         Fax Number: **(202) 645-3264**               Date: **January 30, 2007**

---

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due
Process Complaint Notice regarding:**

Student: ██████W██████

School: **Stanton ES**

**The complaint Intake Unit is responsible for only providing parties with
information notice that a Due Process Complaint has been filed with the Student
Hearing Office.  If you have questions about the attached Notice, regarding any
fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 724-
6556.**

                                        **Thank You,**
                                        **Marica P. Brown**
                                        **Staff Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**      Student Hearing Office

**Fax Number:**

**From:**           Douglas Tyrka

**Regarding:**      J███ W█████

**# of pages:**     5

**Notes:**          Due Process Complaint

2007 JAN 30 PM 2: 53
DC PUBLIC
SCHOOL SYSTEM

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

219

**DUE PROCESS COMPLAINT NOTICE**
In re J█████ W█████
**January 30, 2007**

| | |
|---|---|
| **Petitioner:** | Michelle Williams |
| **Student:** | J████ W████ |
| **DOB:** | |
| **Current School:** | Stanton Elementary School ("Stanton ES") |
| **Residence:** | 3340 22nd Street, S.E., Apartment G |
| | Washington, DC 20020 |

**Petitioner's Contact Information for Special Education Purposes:**
Tyrka & Associates, LLC
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to comply with an October 2, 2006 Hearing Officer's Determination ("HOD").
2. Failure to conduct and review current evaluations in all areas of suspected disability.
3. Failure to develop an appropriate individualized education program ("IEP").
4. Failure to provide an appropriate placement.
5. Failure to provide all necessary specialized instruction and related services.

**Facts:**

**Failure to Comply with an October 2, 2006 HOD.**

1. An October 2, 2006 HOD ordered DCPS to:
   a) fund independent psycho-educational, speech and language, and social history evaluations of J████, if a notice of intent to conduct these evaluations was not sent to counsel for the Petitioner on or before September 25, 2006;
   b) convene a multidisciplinary team ("MDT") meeting within 15 school days of receiving the last of these evaluations to:
      i) review all current evaluations of J████;
      ii) review and revise her IEP as warranted;
      iii) discuss and determine an appropriate placement for the 2006-2007 SY;
      iv) determine J████'s eligibility for compensatory education and, if warranted, develop an appropriate compensatory education plan.
2. DCPS did not send a notice of intent to conduct psycho-educational, speech and language, and social history evaluations of J████ to counsel for the Petitioner on or before September 25, 2006.
3. DCPS received an independent:
   a) psycho-educational evaluation of J████ on November 1, 2006;

220

TYRKA & ASSOCIATES                    PAGE  03/05

b) social history evaluation of J████ on November 1, 2006;
c) speech and language evaluation of J████ on December 20, 2006.
4. DCPS:
a) did not convene an MDT on or before January 24, 2006;
b) has not complied with all of the terms and conditions prescribed in the October 2, 2006 HOD.

**Failure to Conduct and Review Evaluations in All Areas of Suspected Disability.**

5. The Petitioner initially requested that J████ be referred for evaluations to determine his eligibility for special education and related services during the 2004-2005 SY.
6. J████'s independent psycho-educational evaluation recommends current vision and hearing exams.
7. DCPS has never conducted current vision and hearing exams of J████.
8. Current hearing and vision exams of J████ are warranted.
9. J████'s independent speech and language evaluation recommends a current audiological exam.
10. DCPS has never conducted a current audiological exam of J████.
11. A current audiological exam of J████ is warranted.

**Failures to Develop an Appropriate IEP and to provide necessary specialized instruction and related services.**

12. J████ has been eligible for special education and related services since the 2004-2005 SY.
13. J████'s independent psycho-educational evaluation:
a) notes that J████'s current teacher, Ms. Thomas, believes that he "is 'totally lost' in the first grade and requires an exceptional amount of one-on-one instruction in order for him to grasp basic academic concepts[;]"
b) provides current diagnoses of Mixed Receptive-Expressive Language Disorder (By History) and Mild Mental Retardation;
c) recommends a current disability classification of Mentally Retarded ("MR").
14. J████'s independent psycho-educational evaluation recommends one-on-one tutoring in twice-weekly, 45 minute sessions to address his academic delays.
15. J████'s independent speech and language evaluation recommends therapy in twice-weekly, 30 minute sessions.
16. DCPS has never developed an IEP for J████.
17. A current IEP for J████ is warranted.

**Failure to Provide an Appropriate Placement.**

18. J████ has been attending Stanton ES since the 2004-2005 SY.
19. J████'s independent psycho-educational evaluation recommends "placement in a separate, structured classroom for his academic subjects with a low teacher-student ration (8-10 students – 1 teacher/1 aide)."
20. DCPS has never provided J████ with an appropriate special education placement.
21. The Petitioner is referring J████ for admission into appropriate private placements.

221

01/30/2007  14:54    2022654264                TYRKA & ASSOCIATES                PAGE  04/05

**Proposed resolution:**

1. DCPS immediately to:
   a) fund and place J██████ at an appropriate private school of the Petitioner's choosing with transportation;
   b) fund current hearing and vision exams and an audiological evaluation of J████ at market rates.
2. DCPS to convene an MDT meeting within 10 days of receiving the last of J████'s independent evaluations to:
   a) review all current evaluations of J████
   b) develop an appropriate IEP;
   c) develop an appropriate compensatory education:
      i) per the terms of the October 23, 2006 HOD;
      ii) additionally, to compensate J████ for its failure to:
         (1) comply with the October 2, 2006 HOD, per the terms of the <u>Blackman-Jones</u> Consent Decree;
         (2) conduct and review current evaluations of J████ in all areas of suspected disability since the 2004-2005 SY;
         (3) develop an appropriate IEP for J████ since the 2004-2005 SY;
         (4) provide J████ with any specialized instruction or related services since the 2004-2005 SY;
         (5) provide J████ with an appropriate placement since the 2004-2005 SY;
3. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:
   a. immediately:
      i. fund and place J████ at an appropriate private school of the Petitioner's choosing with transportation;
      ii. fund current hearing and vision exams and an audiological evaluation of J████ at market rates.
   b. convene an MDT meeting within 10 days of receiving the last of U████'s independent evaluations, and
   c. negotiate attorneys' fees for work performed prior to the resolution meeting
   is a necessary attendee at any resolution meeting.
2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.
4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

222

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

223

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF 

HEARING DATE:    APRIL 4, 2007

TRANSCRIBED BY
LEGAL PERSONNEL, INC.    (301) 277-5711

1

224

APPEARANCES

HEARING OFFICER:                         Mr. Charles Jones


ATTORNEY ADVISOR FOR
     DISTRICT OF COLUMBIA
     PUBLIC SCHOOLS                      Daniel McCall

ATTORNEY FOR PARENT                      Douglas Tyrka

1      HEARING OFFICER:  Okay Good morning, today's date is April

2  4, 2007.  We're on the record. I'm Charles Jones, the Hearing

3  Officer and this is an Administrative Due Process Hearing

4  conducted under the Individuals with Disabilities Education

5  Improvement Act.  This is in the matter of J██ W████

6  Date of birth: ██████████████.  The school of attendance is

7  Stanton Elementary.  Can you both identify yourselves?

8      MR. MCCALL: Good morning Mr. Hearing Officer, Danny McCall,

9  attorney for DCPS.

10      MR. TYRKA: Good morning, Douglas Tyrka, attorney for the

11  parent.

12      HEARING OFFICER: do we waive the formal reading of the

13  rights?

14      MR. TYRKA: Yes.

15      HEARING OFFICER: All right so that I am clear on the status

16  of these motions.  Mr. Tyrka, why don't you explain since I

17  think you filed first. Is that right.

18      MR. TYRKA: I'm not actually of the sure if the first motion

19  was dismissed or the Motion Of Summary Judgment came first. Let

20  me start with DCPS's side and obviously you can chime in if I

21  get any of these wrong.

22      MR. MCCALL: As to the motions that we filed, the first one

23  to be dealt with would be the plea to the jurisdiction and

1    that's the Motion to Dismiss for lack of subject matter

2    jurisdiction.  The issues that include a claim of violation or

3    non-compliance with an HOD and the other issues are kind of

4    filed to appear to be new issues or separate issues, but they

5    all stem from basically from the HOD.  This is an identification

6    case and eligibility case. Child Find where the HOD said, you

7    got to do these evals DCPS, have a meeting within 15 schools,

8    after receiving the last of the evals that their independent and

9    consider and IEP, consider compensatory all that.  So what we've

10   filed was just our basic Motion to Dismiss for lack of subject

11   matter jurisdiction.  Now apart from that we also filed a

12   supplemental Motion to Dismiss if the Hearing Officer considers

13   the other issues the way there filed to be kind of separate and

14   apart from that or if the Hearing Officer finds is subject

15   matter jurisdiction.  The Motion to Dismiss is basically based

16   upon the fact under the IDEA, before DCPS can do anything in

17   terms of developing an IEP, we have to have informed written

18   consent from the parent to provide for the initial provision of

19   special ed and related services.  We don't have that in this

20   case.  The parent refused to sign the document, which DCPS uses

21   to get that consent.  And the way we do that is at the bottom of

22   IEP there is a checkbox, where the parent signs and checks,

23   whether they consent, the parent used to do that.  I gave you a

4

1    supplement letter and counsel was faxed that letter on the 29th

2    to clear up this matter because there—you know – counsel's

3    raised this before I believe in another case that the consent

4    document, you know may not be the best format.  So we have the

5    special ed coordinator, you know send the letter to the parent

6    to counsel to say look, we don't have informed written consent.

7    So there's no confusion, we have to have that before we can do

8    anything.  To my knowledge there has been no response to that.

9    And that was sent out on March 29th.  But basically no claim, no

10   other claim would be right until that occurs.  So, do you want

11   me to – do I need to go through the subject matter jurisdiction

12   motion, I believe I've already dealt with this Hearing Officer

13   before, I can go through it again.

14       MR. TYRKA: I think we might want to address all of the

15   filings so that the Hearing Officer clearly has the all.  I

16   thought that was initially the Hearing Officer's question. I'm

17   sorry.

18       MR. MCCALL: So those are the two motions that DCPS has

19   filed.  We also included our response in with the Motion to

20   Dismiss because basically we're saying we have complied with the

21   Hearing Officer directive in that we were directed to evaluate.

22   We allowed the petitioner to get independence and the problem

23   with the petitioner's filing is that the last independent we

5

1    were waiting for was the speech and language and we didn't

2    receive that until January 31st.  We then had — we had 15 school

3    days to hold a meeting.  We held a meeting February 12th.  At the

4    meeting we developed an SEP plan we thought there was some other

5    assessments that needed to be performed based upon the

6    independent recommendations. So we complied, we were well within

7    the 15 days and there is just really not a right claim in this

8    case.

9            HEARING OFFICER: Okay. So wait a minute.  I have from Mr.

10   Tyrka I have a Motion For Summary Adjudication and a Motion for

11   Default?

12           MR. TYRKA: Correct. And a Motion to Strike.

13           HEARING OFFICER: And a Motion to Strike.  His --.

14           MR. TYRKA: Yeah, that has more to do with his filings.

15           HEARING OFFICER: Right.

16           MR. TYRKA: I've gotten no opposition to either of my

17   motions from DCPS, as far as I know there is none.  And then

18   we've gotten DCPS's two Motions To Dismiss. I have an Opposition

19   to the first one and I have a Motion to Strike regarding the

20   second one as untimely.  And I do also want to address, I did

21   not realize that counsel had handed the Hearing Officer a copy

22   of this document dated March 29th.

23           MR. MCCALL: DCPS (Inaudible).

6

1  MR. TYRKA: Okay, I would certainly oppose any attempt to

2 present that as it was handed to me just now before the Hearing,

3 there is no fax confirmation. I just checked with my office, we

4 have no record - I have not personally seen it before. I've

5 checked with my office and we have no record of having received

6 it including going through the fax log and calling and checking

7 the fax number.

8  HEARING OFFICER: Okay, I'll deal with that in a moment.

9 Motion for Summary Judgment —Adjudication, Motion for Default.

10 And DCPS has a motion to - DCPS's Motion to Dismiss.

11  MR. TYRKA: That is the first one to dismiss.

12  HEARING OFFICER: Right.

13  MR. TYKRA: Right.

14  HEARING OFFICER:  And then you filed an opposition to that.

15  MR. TYRKA:  Correct. Is that --.

16  HEARING OFFICER:  And then DCPS has filed response and

17 supplement motion. So you only filed two you said, right.

18  MR. MCCALL: Yes, two. Two motions.

19  HEARING OFFICER:  That's that.

20  MR. MCCALL: And response included in the motion.

21  MR. TYRKA:  This motion is - I can --.

22  HEARING OFFICER:  That's the Motion to Strike.  To strike.

23 And then this follows this.

1        MR. TYRKA:  Got it?

2        HEARING OFFICER:  Do I have it all?

3        MR. TYRKA: Yeah and that came after that and it's relevant

4    to the --.

5        HEARING OFFICER:  Okay.  And this should be a duplicate.

6    Okay.

7        MR. TYRKA:  Yeah a copy.

8        HEARING OFFICER:  Okay jurisdiction argument.  Yeah there's

9    going to be an argument, I am familiar with that. Is there

10   anything new that's in the motion?

11       MR. MCCALL:  Other than whether you've seen the - you know

12   this is the one where we detail the analysis of Blackman Jones.

13   Why there is no jurisdiction there.

14       HEARING OFFICER:  Okay, I don't think I've sent that but I

15   will look at that.

16       MR. MCCALL:  And then the only case that counsel is really

17   relying on in D.C. was the Cox case. And we went through Cox and

18   - and clearly outlined where Cox is not even a case on point.

19       HEARING OFFICER:  I'll take those under (inaudible) too.

20       MR. TYRKA:  May I address the new section.  My argument .2B

21   addresses the new section.

22       HEARING OFFICER:  Okay.  Let me deal with the complaint,

23   because I think probably the Motion For Summary Adjudication,

1   Motion for Default.   What's the basis for the Motion for

2   Default?

3        MR. TYRKA:   (inaudible) response. DCPS still has failed to

4   give us the document a few days ago that says response and

5   Motion to Dismiss, but there is nothing in it that looks

6   anything like a response, except the Motion to Dismiss.

7   Regardless (inaudible).

8        HEARING OFFICER:   If this proceeds - this one --.

9        MR. TYRKA:   This precedes this, yes.

10       HEARING OFFICER:   Where is the motion to default.

11       MR. TYRKA:   I think I have all the dates if you want to

12   look at the sequence.   The summary judgment I think comes first.

13   March 26th and that's not imposed.   Then on the same day there is

14   the default and the first Motion to Dismiss.

15       HEARING OFFICER:   HmmHmmm.

16       MR. TYRKA:   That's the 28th.   Then my Opposition to the

17   Motion to Dismiss is on March 29th.   The second Motion to Dismiss

18   is on March 30th.   And my Motion to Strike is on (inaudible).

19       HEARING OFFICER:   So it's my understanding that your -

20   okay.   This response, this Supplemental Motion to Dismiss is

21   response to his response to your Motion to Dismiss as well as

22   another Motion to Dismiss?

23       MR. MCCALL:   No. No. What we did was basically we said

9

1    look, here's the case.  You have a motion for Summary

2    Adjudication and its based upon the HOD.  And what we filed was

3    a Motion to Dismiss an Opposition to that because there is no

4    jurisdiction to even hear that claim.  That covers that.  As to

5    if counsel is going to try to say the other pleadings contain

6    some separate issues, we filed the response to the complaint

7    included with a Motion to Dismiss to say, well if there are some

8    other claims, yeah if there are some other claims, what happened

9    we complied with the – the HOD to have the duty of ours – to

10   have the meeting and then to develop an IEP or even to consider,

11   we need that informed written consent and the parent has refused

12   to provide it.

13       HEARING OFFICER:  Okay. What will be helpful right now is

14   to go to the complaint.

15       MR. MCCALL:  Are we holding the jurisdiction in abeyance or

16   ruling on the record?

17       HEARING OFFICER: I'm holding it in abeyance because one I

18   got to define whether or not that is the only claim in the

19   complaint, and I've you state that even if it's not, they are so

20   linked to the HOD violation, that --.

21       MR. MCCALL:  They're intertwined.

22       HEARING OFFICER:  Right.  But I'm going to figure that out

23   first.  So the complaint is number 5.

1          MR. TYRKA:  It's my number 4.

2          HEARING OFFICER:  Okay.  There was an HOD on October 2nd,

3     which document is that?

4          MR. TYRKA: That is my number 3, I think.

5          HEARING OFFICER:  Three.

6          MR. MCCALL:  I don't have your disclosure.  Did you send it

7     to anyone in particular?

8          MR. TYRKA:  I can't --.  What we send them all to OGC,

9     March 28th at 4:13?

10          MR. MCCALL:  (inaudible) it's a settlement?  Is it

11     different from what's attached to--.

12          MR. TYRKA:  The Summary Adjudication.

13          MR. MCCALL:  The Summary Adjudication.

14          MR. TYRKA:  It's possible that everything that is in here,

15     they are not in the Summary Judgment - they probably not a lot

16     of things.

17          MR. MCCALL:  Mr. Hearing Officer, I was just discussing

18     with him, I don't have his disclosure in this case. So, --.

19          HEARING OFFICER:  You don't have it?

20          MR. MCCALL:  I don't have it.  What I'd like to do is, if I

21     may, copy his.

22          HEARING OFFICER:  Do you have the complaint?

23          MR. MCCALL: Yeah, I got the complaint.

1        HEARING OFFICER:  Okay, let's deal with the complaint and

2   then we'll go back and get a copied after that.

3        MR. MCCALL: Okay.

4        HEARING OFFICER:  Okay. The HOD appears to be non-contested

5   determination. DCPS will (inaudible)its burden and the Hearing

6   Officer only found that DCPS had failed to conduct the

7   (inaudible) evaluations at the placement meeting to determine

8   appropriate placement. Now was the student already eligible?

9        MR. MCCALL:  No.  That was the initial.

10       HEARING OFFICER:  Mr. Tyrka.

11       MR. TYRKA:  That's right.

12       HEARING OFFICER:  Okay. You're not disputing that. So was

13   the substance of this HOD in the complaint that lead to it

14   alleging Child Find violations as Mr. McCall indicated?

15       MR. TYRKA:  Under Child Find?

16       HEARING OFFICER:  I mean I --.

17       MR. TYRKA:  Including time to evaluate, yes.

18       HEARING OFFICER:  The time to evaluate. Okay. So he ordered

19   DCPS to conduct the evaluations. Independence was authorized,

20   they weren't done at the meeting.  Yeah because at this point he

21   didn't have an IEP, so actually the order is in correct, is that

22   right?

23       MR. MCCALL:  Yes.

12

1       MR. TYRKA:  Yes.  Okay.

2       HEARING OFFICER:  Okay, so. Let's go back to the complaint.

3  On October 2nd which the ordered fund independence – sent a

4  Notice Of Intent To Evaluate.  DCPS received the Independence

5  psycho ed on November 1; social history on November 1; did not

6  complete on MDT on the 24; is January 24th the date calculated

7  from what the HOD would direct?

8       MR. TYRKA:  Did they have it the last evaluation?

9       HEARING OFFICER: Correct.  Failure to conduct and review

10  evaluations in all areas of suspected disability.  Okay so then

11  is this all the second bolded title you second allegation.

12       MR. TYRKA: Yeah, we tried to split of our complaint to

13  (inaudible) the facts in our complaints by claim.

14       HEARING OFFICER:  Okay.

15       MR. TYRKA:  For the first one – one second.  Some of these

16  (inaudible) were done in facts too, in this case.

17       HEARING OFFICER:  HmmmHmmm.

18       MR. TYRKA: So you can see that this evaluations issue has

19  to do with the recommendations of the psycho ed and the speech

20  and language which have done since the HOD.

21       HEARING OFFICER:  So the vision and hearing screening.  The

22  recommended evaluations that were recommended by the psycho ed,

23  is that your second claim?

1    MR. TYRKA:  Psych ed and speech and language.

2    HEARING OFFICER:  Speech and language.

3    MR. TYRKA:  Psycho ed recommended vision and hearing,

4    speech and language recommended audiological.

5    HEARING OFFICER:  Okay. Failed to develop an appropriate

6    IEP and provide necessary specialized instruction and related

7    services.  Okay, when was the – when was the – and then failure

8    to provide appropriate placement. When was the meeting?

9    MR. MCCALL:  2/12.

10   HEARING OFFICER:  Was he found eligible?

11   MR. MCCALL:  Yes. MR. Gave him 20 hours of direct services.

12   Recommended 20 hours of direct services, one per week of speech,

13   and we recommended vision and hearing and audiological.  I got

14   (inaudible) for that, so that's underway.  Vision hearing's

15   complete.  Audiological is still underway.

16   HEARING OFFICER:  Okay, so Mr. Tyrka what's your --.

17   MR. TYRKA:  I haven't received the vision and hearing by

18   the way.

19   MR. MCCALL:  I haven't gotten it yet, it was supposed to

20   fax over this morning.

21   HEARING OFFICER: What did you say audiological is done?

22   MR. MCCALL:  Vision and hearing, -- all three.  Vision and

23   hearing is done.  That was supposed to be faxed over this

1    morning.   Audiological is underway.

2        MR. TYRKA:  So obviously I reject  (inaudible).

3        HEARING OFFICER:  Okay.  Just - hearing his representation,

4    that's all.  Okay, so now, Mr. Tyrka, let me hear your response

5    to Mr. McCall's argument that these other allegations in the

6    complaint actually are not separate and apart from the HOD

7    violations, claimed HOD violations.

8        MR. TYRKA:  Okay.  Well I do want to - I have a preliminary

9    question.

10        HEARING OFFICER:  HmmmHmmm.

11        MR. TYRKA: This most recent Motion to Dismiss was untimely.

12    I have a Motion for Striking.

13        HEARING OFFICER: Okay.

14        MR. TYRKA:  So, I don't understand the - this statement

15    that these are all wrapped together to have been part of a

16    timely filed Motion to Dismiss. So I'd ask the Hearing Officer

17    to answer that question first.  Because if they weren't then I

18    don't think they can be heard.

19        HEARING OFFICER:  Okay, well first of all, even if we

20    didn't make the argument--.

21        MR. TYRKA: Okay.

22        HEARING OFFICER:  That it wasn't, that it didn't flow from

23    the HOD, I would - in terms of me figuring out what the issues

1    that I'm adjudicating, I would make that determination, so I'm

2    not really look at whether - at this juncture—whether or not his

3    motion is - his second motion was timely.

4        MR. TYRKA:  Understood. Understood. I have a easy and

5    separate to response anyway.

6        HEARING OFFICER:  Okay.

7        MR. TYRKA: The evaluations have to do with the

8    recommendations in the psycho ed and the speech and language --.

9        HEARING OFFICER: HmmmHmmm.

10       MR. TYRKA: Both of which were performed since the last HOD>

11       HEARING OFFICER:  HmmmHmmm.

12       MR. TYRKA:  Therefore they are not part of that HOD.  That

13   HOD says do the evaluations, hold the meeting. The HOD didn't

14   say do evaluations and any evaluations recommended therein, so

15   therefore it is not part of the HOD.

16       HEARING OFFICER:  Was there a second request, for instance,

17   other than what was recommended by the eval for those

18   recommended evals?  In other words, did you send - after via

19   eval was conducted like the cover letter --.

20       MR. TYRKA:  No.

21       HEARING OFFICER:  For the eval say in addition to that we

22   want these evaluations done because they are recommended by this

23   evaluation?

16

1          MR. TYRKA:  No. I don't believe so.

2          HEARING OFFICER:  Okay.

3          MR. MCCALL:  That's how I write those claims.

4          HEARING OFFICER:  Okay, go ahead.

5          MR. TYRKA:  (Inaudible) another new one that we'll hear.

6     The IEP claim talks about, again, the recommendations of the

7     psycho ed, excuse me I'm sorry. The IEP claim is closely

8     related.  Excuse.

9          HEARING OFFICER:  HmmmHmmm.

10         MR. TYRKA:  As of the time of the complaint, they had not -

11         HEARING OFFICER:  Had the meeting.

12         MR. TYRKA:  Had the meeting.  However, it also addresses

13    the specific recommendations in the psycho ed for one-on-one

14    tutoring, the specific recommendations in the speech and

15    language for services.

16         HEARING OFFICER: HmmmHmmm.

17         MR. TYRKA: And there failure to do an IEP containing those

18    services.

19         HEARING OFFICER:  Okay.

20         MR. TYRKA:  And the placements, again is related, but is

21    substantially changed by the nature of the evaluations

22    themselves which recommend specific components.

23         HEARING OFFICER:  Okay.  You're Motion To Strike his second

1    Motion to Dismiss is based on the claim that it was untimely,

2    right.

3        MR. TYRKA:  Correct.

4        HEARING OFFICER:  Okay.

5        MR. TYRKA:  Well I have not, the times we're actually

6    responding to has substantially have not been exhausted, so I

7    could do--.

8        HEARING OFFICER:  A response to it.

9        MR. TYRKA:  Also do a response to it.  Which I'd be happy

10   to do.

11       HEARING OFFICER:  Okay, if you do by the second, you say.

12       MR. TYRKA: No, that was -- I filed mine on the second.

13       HEARING OFFICER: Oh, okay.

14       MR. TYRKA:  But the Motion was filed on the 30th, the 3rd

15   business day is actually today.

16       HEARING OFFICER:  Right.  That's not even the Motion To

17   Strike.

18       MR. TYRKA:  My substantive response?

19       HEARING OFFICER:  Yes.

20       MR. TYRKA:  Oh --.  Saying this is untimely.

21       HEARING OFFICER:  Untimely.

22       MR. TYRKA:  So I do have a substantive response, which I

23   can give orally or in writing.  But I think the Motion should

1   just be stricken.

2       HEARING OFFICER:  You want to give it orally?

3       MR. TYRKA:  We could. I asked the Hearing Officer that we

4   not spend time of that, I mean Hearing Officer's consistently

5   (inaudible) have rejected substantive Motions that were not

6   filed on a timely basis, I can even talk about a Motion for

7   Default if I don't file --.

8       HEARING OFFICER:  Well, the reason – but you may have

9   already addressed it, I think, because I just asked you. I would

10   have made that determination in determining what the issues in

11   the complaint were.  So, unless there is something else --.  I

12   just asked that question.

13       MR. TYRKA:  Sure.  The argument in the new Motion To

14   Dismiss are completely different than the first Motion.

15       HEARING OFFICER:  Oh no I thought the arguments – and see –

16   I'm right at a disadvantage because I haven't read them all, so

17   that's why I'm asking you what do they say.

18       MR. TYRKA:  My paraphrase and obviously DCPS can present

19   this – their position better, but my paraphrase of the Motions

20   that the first one is on the jurisdictional issue.

21       HEARING OFFICER:  Yes.

22       MR. TYRKA:  We're all familiar with it.

23       HEARING OFFICER:  HmmmHmmm.

1       MR. TYRKA:  And the second one is titled a Motion to

2   Dismiss, but the argument is that DCPS should not be found in

3   violation of anything because the parent refused to give consent

4   to services.  So I see them as totally separate arguments.

5       HEARING OFFICER:  Oh. Oh. Oh. Oh. Oh.  Okay. Because I

6   thought that the substance of this second motion was that in

7   essence there are no separate complaints.  There are no separate

8   allegations in the complaint or violations in the complaint

9   because they all stem from the HOD.

10      MR. TYRKA:  That's what I'm saying, I've never heard of

11  that particular argument before.

12      HEARING OFFICER:  Oh.

13      MR. TYRKA:  That's the second motion as I read it.

14      HEARING OFFICER:  Oh, okay.

15      MR. MCCALL:  That was the basis for filing, that is what I

16  said.

17      HEARING OFFICER: The original dismissal.

18      MR. MCCALL:  We filed the Motion to Dismiss.

19      HEARING OFFICER:  I'm with you. I'm with you.

20      MR. MCCALL:  Based on jurisdiction.

21      HEARING OFICER: I'm with you.

22      MR. MCCALL:  What we saw in – in this counsel's responses

23  was that he arguing that there are separate issues in a lot of

1    cases, so we said, let's make sure if there is some separate

2    issue, we're saying as a response to the complaint, we have

3    complied with that HOD.  And as to if the Hearing Officer finds

4    that there is some separate issue, we don't have consent,

5    statutorily, we can't proceed beyond that to develop the IEP

6    without that IEP.

7        HEARING OFFICER: To do the additional evaluations – what

8    consent was missing?

9        MR. MCCALL:  The consent for the initial provision of

10   special ed related services, that's 300.300 --.

11       HEARING OFFICER: Oh, okay.  So she didn't sign the

12   authorization to do forward with the providing the services.

13       MR. MCCALL:  Right.

14       HEARING OFFICER: So that would relate to his number --.

15       MR. MCCALL:  That's the IEP.  The development of the IEP

16   and placement.

17       HEARING OFFICER: This is just a suggestion, use it or not.

18   I do – at one time I'd said I'd face facts confuse but, I've

19   gotten a (inaudible) for some of that, only – only – thing that

20   I would add to this is because you're complaint does not a issue

21   section.  And I know that these are the issues, one , two, --.

22       MR. TYRKA: Violations of mere facts.  So I think I'll

23   (Inaudible) of the issues, but.

1       HEARING OFFICER:  Right. But the - but the complaint, the

2  form that DCPS uses has a section called issues.  And this is to

3  be adjudicated, it's in the standard complaint form, right?

4       MR. TYRKA:  I --.

5       HEARING OFFICER: So the only thing - decision Is that after

6  I go through this, those four - they are just four issues, would

7  just simply be re-stated in a section called issues to be

8  adjudicated.

9       MR. TYRKA:  I mean I can just rename the fact section

10  issues.

11      HEARING OFFICER:  HmmmHmmm. No, because there is a section

12  in the complaint form that says facts that you allege.  So then

13  they are facts and then the issues - and in the facts a lot of

14  people are explaining the issues, but when I go to the meat of

15  what have you alleged?  I go here first to the issues, then come

16  back to facts, if there is a question about what the issues -

17  what the interpretation of the issues are.  And use the facts to

18  do that.  That's just.

19      MR. TYRKA:  You know - -. I'm - I'm - and then what this

20  distinction when you draw between the issues as you are looking

21  for it and violations as we state them --.

22      HEARING OFFICER:  Violations are violations.

23      MR. TYRKA:  But I mean, so what I mean violations doesn't

1    (Inaudible).

2         HEARING OFFICER:  Oh, oh, okay, I'm sorry.

3         MR. TYRKA:  That's a real --.

4         HEARING OFFICER:  Okay, I've overlooked it. Okay.  These

5    are issues then.

6         MR. TYRKA:  Oh, okay.

7         HEARING OFFICER:  Then you've done it, I'm sorry.

8         MR. MCCALL:  I took the violations to be the issues.

9         HEARING OFFICER:  That they are. I just overlooked the

10   violations because I went right to the facts, because the

11   standard form has the facts first and then issues --.  That's

12   the reason why I --. I'm sorry. I'm sorry.

13        MR. MCCALL:  Ohhhhhhhh.

14        HEARING OFFICER:  Anyway, you've done it.  Okay.  Okay, let

15   me for a minute, let me then turn – what your response to them

16   Mr. McCall, to Mr. Tyrka's assertion that your second Motion is

17   untimely?

18        MR. MCCALL:  It was filed on the 30th, and I don't have the

19   SOP right in front of me.

20        MR. TYRKA:  Five business days.

21        HEARING OFFICER:  This is Friday.

22        MR. TYRKA:  It's unequivocal. Yeah.

23        HEARING OFFICER: It's not five days?

23

1      MR. TYRKA:  No. Thursday would be five days.  Last

2   Thursday, five business days. Five business days.

3      MR. MCCALL:  And.

4      MR. TYRKA:  Five business days.

5      HEARING OFFICER:  31st - The 30th was Friday.

6      MR. TYRKA:  One, two, three.

7      HEARING OFFICER:  Oh, Okay. Okay.

8      MR. MCCALL:  And if I remember that rule it is not

9   absolute.  It uses the May -- .

10      HEARING OFFICER:  It the uses the May --.

11      MR. MCCALL:  May. May.  Maybe in discretion.

12      MR. TYRKA: I quote in my Motion, first page.

13      HEARING OFFICER: So the only thing in here is the - the

14   only thing in his Motion is that they not implement services

15   because the parent hasn't signed off on it.

16      MR. TYRKA:  That's correct.

17      HEARING OFFICER:  That's the only thing.

18      MR. TYKRA: That's the only argument. I mean both. I'm sorry

19   I should not be speaking.  That's my understanding.

20      HEARING OFFICER: That's it yeah.  The only argument.  And

21   your only opposition is that it was untimely?  Okay.

22      MR. TYRKA:  But wait wait wait.

23      HEARING OFFICER:  What.  Substantively you've made, you can

1   still (inaudible) right. So let me peer through to the

2   underlying allegations about the HOD violation.  What do you

3   have on that, what do you have to present on that.

4        MR. TYRKA:  We have the -- .

5        HEARING OFFICER:  We're talking, the timeline starting on

6   where' the document that indicates the last --.

7        MR. TYRKA:  The last evaluation was the speech and

8   language, which is number, 8.

9        HEARING OFFICER:  Last eval was number 8.

10       MR. TYRKA:  And on 12/20 there is our fax confirmation.

11       HEARING OFFICER:  (inaudible).

12       MR. TYRKA:  12/20 is the fax confirmation.  Now you'll

13  notice there is a second one after that, two pages after that -

14  excuse me a few pages after that.

15       HEARING OFFICER:  Second fax confirmation.

16       MR. TYRKA:  Exactly.  We faxed it again on the January 31st

17  and with that faxing we also faxed our original fax confirmation

18  showing that it went to the same number.

19       HEARING OFFICER:  HmmmHmmm. Okay, so you sent it once

20  before, what was the reason it was sent twice?

21       MR. TYRKA:  I believe we got a call and they claimed that

22  we had never sent it.  And we sent it again.  And then we got

23  the strange letter following our re-sending claiming that we had

25

1    admitted that we had sent it to the wrong place, which was

2    exactly the opposition. We had established that we had sent it

3    to the correct place. And we responded to that letter with our

4    letter, our disclosure number 9, which is a --.

5         HEARING OFFICER:  Okay so.

6         MR. TYRKA:  Saying you're confused, that's not what we did.

7         HEARING OFFICER:  If was received on 12/20 the deadline for

8    the meeting, would have been -- .

9         MR. TYRKA:  15 days I think, but we can check that.

10        HEARING OFFICER:  School days?

11        MR. MCCALL:  Yes, school days.

12        HEARING OFFICER:  Which is the holiday - so when are you

13   starting counting until two days - I think they were out on the

14   22nd.  They didn't come back till the 8th.  So you wouldn't have

15   started counting until 13 school days into January.

16        MR. TYRKA:  Yes you get two days from the 22nd from

17   December, and then they come back on the 8th right?

18        HEARING OFFICER:  Yes.

19        MR. TYRKA:  So that's 7 days to the 12th.  12 days to the

20   19th.  And 15 days till the 24th.

21        MR. MCCALL:  What day was Martin Luther King Holiday?

22        MR. TYRKA:  Okay, yes.  Drop that out and then we go to the

23   25th.  And its filed on the 30th as you can see.

1        HEARING OFFICER:  Any dispute?  If you were to present

2   something - you said you were going to try to follow the

3   (inaudible) from the school?

4        MR. TYRKA:  No.  I'm sorry from our proposed school.

5        HEARING OFFICER:  Oh, your proposed school?

6        MR. TYRKA:  Yeah.

7        HEARING OFFICER: Okay. Okay.  Because that's the remedy you

8   seek?

9        MR. TYRKA:  Correct, among other things.

10        HEARING OFFICER:  And if you were going to call Ms. Millus,

11   that would depend upon what - what -.

12        MR. TYRKA:  Potentially on rebuttal, yeah.  Otherwise we'll

13   go through other documents, we've got - that's the HOD

14   violation.

15        HEARING OFFICER:  Right.

16        MR. TYRKA:  The evals we've already discussed, those are

17   from the recommendations that are in the existing evals.  The

18   IEP, well we have the failure to have a meeting and then we have

19   the recommendations of the evals.  And then the placement is the

20   same thing as the IEP.

21        HEARING OFFICER: Okay.  So this is where I'm going to

22   handle this.  I'll take this under advisement.  This is the

23   original Motion to Dismiss and its Opposition, the Motion to -

27

1    the second Motion to Dismiss is -- . I've heard you argument

2    about it being discretionary and five days prior okay?

3        MR. MCCALL:  HmmmHmmm. Yes.

4        HEARING OFFICER:  It's filed untimely, and I'm not going to

5    keep considering that, alright.

6        MR. MCCALL:  That doesn't the statutory basis.

7        HEARING OFFICER: What?

8        MR. MCCALL:  Whether I filed the Motion or not. It doesn't

9    statutory requirement.  The Hearing Officer found default called

10   the statute.

11       HEARING OFFICER: Of what, I'm sorry.

12       MR. MCCALL:  The statutory requirement that we can't

13   develop an IEP without informed consent.

14       HEARING OFFICER: True.  Doesn't change that at all.  Now

15   what I haven't addressed is the Motion for Summary Adjudication.

16       MR. TYRKA:  And Default.

17       HEARING OFFICER:  And Default.  Default for no response.

18       MR. TYRKA:  Correct.

19       HEARING OFFICER:  And - .

20       MR. TYRKA:  Summary Adjudication.

21       HEARING OFFICER:  What's the basis of Summary Adjudication.

22       MR. TYRKA:  The facts.

23       HEARING OFFICER:  The Facts.

1        MR. TYRKA:  I'll just do the facts.

2        HEARING OFFICER:  Okay.

3        MR. MCCALL:  Now the Motion --.

4        MR. TYRKA:  Because - but for efficiency but also,

5   sometimes there is a prior ruling by Mr. Smith that will affect

6   the statute requirements - so.

7        HEARING OFFICER:  So the motion you're saying you're not

8   going to consider was also our response, we attached all the

9   documents supporting our response.  So, whether the timeliness

10  of a response, you know it's not clear in the statute number

11  one, there isn't even any authority on default; in fact I would

12  say the comments say no, there is Hearing based upon the

13  question answer session.

14       HEARING OFFICER:  HmmmHmmm.

15       MR. MCCALL:  And we did file the response on the 30th with

16  all the documents supporting that.

17       HEARING OFFICER: Is there a reason it wasn't filed within

18  the required time of the complaint?

19       MR. MCCALL:  I filed it as soon as I got it Mr. Hearing

20  Officer.  As to --.

21       HEARING OFFICER: So what's going on as why you don't get it

22  until.

23       MR. MCCALL:  That's a bigger question than I can answer.

1    That's bigger than me. But I filed it as soon as I got it.  So I

2    mean we have a response. Number one, I strongly disagree with

3    anyone who says that there is the ability to default for not

4    filing a response.  I would even more strongly disagree if the

5    response filed and someone said there was an ability to default

6    because it wasn't filed sooner than it was.  Because clearly

7    Congress just put that in there to eliminate surprise to give

8    notice. And then the comment section, in the Federal Register,

9    Volume 71, Number 15, from Monday August 14th, 2006, the question

10   was asked to the Department of Ed, whether there is legal

11   significance of consequence for responding party who fails to

12   file the required response to a Due Process Complaint or to LEA

13   who fails to send both, the prior written notice and the Due

14   Process Complaint Notice. The Department of Ed responded, the

15   Act does not establish consequences for parents or the receiving

16   party to complaints that they found respond to Due Process

17   Complaint Notice, however either party failure to respond to or

18   file the requisite notices could increase the likelihood that

19   that the resolution meeting will not be successful in resolving

20   a dispute and that a more costly and time consuming due process

21   hearing will occur. The key to that answer is that they say it

22   will occur.  The Department is very clear, this will occur.  The

23   Hearing is going forward, either though either party didn't file

30

1  a response.  Whoever had to file it.  It will occur, but you are

2  just going to make it more time-consuming, you are going to make

3  it more costly.  They clearly ruled out a default in that

4  question/answer. It's not within the - the - the - specific

5  powers. The Hearing Officer it is not in the statute, it is not

6  in regulations, and it  -- and the analysis is, if the Hearing

7  Officer have authority or subpoenas and you have the sanction

8  power to be able to do that.  They - how could there be power

9  to—to—to—have the ultimate sanction default judgment. And even

10  beyond that, I mean that would be the most egregious situation,

11  whether it's absolutely no response. Here we filed a response,

12  I've even supplemented by having the SEC write a direct letter

13  the parent, to say look, this is what's going on, you just

14  didn't give us the written consent. Just sign it. That's all we

15  need to move forward.  I just don't see how a parent can come to

16  a school system and say, we want you to pay for a $50,000

17  private placement because I refused to sign the consent and

18  therefore you never got to development of the IEP and because

19  you're doing additional assessments and the 7-day period, even

20  if we say counsel's correct, that the period would start January

21  25th, that's 7 school days to when the meeting was held, February

22  12th.  So in 7 school days, this counsel's client was harmed so

23  severely they need a private placement.  I think that this case

31

1    is – is beyond shaky.

2         HEARING OFFICER: What the placement that was ultimately

3    determined? (inaudible) Stanton.

4         MR. TYRKA:  That was what was offered.

5         HEARING OFFICER:  Okay, did you file a subsequent

6    complaint?

7         MR. TYRKA:  We're here on this one.

8         HEARING OFFICER:  But there has not been a new one filed?

9         MR. TYRKA:  No.

10        HEARING OFFICER:  Okay, so.

11        MR. TYRKA:  I understand a response follows that.

12        HEARING OFFICER:  Yes, go right ahead.

13        MR. TYRKA:  This argument that the statement that the regs

14   or the comments of the regs are more accurately clearly state

15   that there is no authority for default. Does not past the lap

16   test for me. What it says is that it increases the possibility

17   that a Due Process Hearing will occur.  So all this stuff about

18   what I heard repeatedly that the key language here is that it

19   will occur. No it says increases the possibility that it will

20   occur. If they wanted to say what counsel is saying it says,

21   that would have said, it increases the possibility that at the

22   Due Process Hearing which will occur it will be less efficient.

23   But more to the point, if they wanted to be clear to say there

1    was no authority to grant that, they would be answering the

2    question. The question is what happens to an LEA who does this.

3    Who does what DCPS does categorically. And the answer was to

4    ignore that question.    Instead the parent will not suffer the

5    consequences.    Now, I said this before, we can read that one of

6    two ways.    We can read that either that by implication, they

7    were saying that there could be consequences for LEA or we can

8    read it as they punted.    And you know, to be frank, I think they

9    punted.    The fact that they completed ignored is very strange,

10    but there it is. Now again, as we said before, even if this has

11    been going on for a year and half, where is DCPS's appeal of

12    defaulted that I want. But we also have this Hearing Officer's

13    statement that in the absence of a response, in the actual

14    absence of a response that would be a different situation and

15    one that would merit a default. And these – the three people who

16    are in the room right now, we're in a Hearing Room last

17    Wednesday over a different child and that case is continuing

18    until this afternoon.    And as I understood the Hearing Officer's

19    ruling in that case, the reason that a default was not granted

20    in that case was because Mr. Smith had filed – had issued an

21    order denying the default.

22        HEARING OFFICER:  Is that this afternoon?

23        MR. TYRKA:  And this afternoon is (inaudible).    The

33

1    continuance of that case.  It is a very, very similar case.   In

2    the utter failure to serve a response.  The statement now that's

3    there's been – the statement now that's there's been a response

4    filed on the 30th – first off that wasn't as soon as counsel got

5    the case.  It was at least one day later, but whatever. The

6    statement that there has been a response, well let me address

7    that by the way.  If there is some strange scheduling or

8    staffing going on in OGC, that's not the parent's

9    responsibility.  If somehow the way they organize things up

10    there prevents them from getting Motions or any Disclosures that

11    are faxed in, you know makes these things difficult to --. I

12    don't know why they would do it that way, but that's not my

13    parent's responsibility.  This document that is supposedly a

14    response is nothing of the kind. It is a Motion to Dismiss that

15    counsel's stuck the response on.  You flip through it, it's

16    clearly a Motion to Dismiss.  The only thing it states here is

17    what counsel has been arguing that the parent refused to provide

18    consent.  And that may be substantive opposition in the

19    complaint, they put a (inaudible) as a basis for a Motion To

20    Dismiss--.

21        HEARING OFFICER:  That's all that's there? There's really

22    no --.

23        MR. TYRKA:  All this argument that counsel made a few

34

1    minutes ago saying that they didn't hold it because they didn't

2    receive the evaluation, I heard that a few minutes ago. None of

3    that is in this response.  There is no explanation whatsoever

4    for why the meeting was late.

5        MR. MCCALL:  That's at DCPS 11 for your benefit. It's

6    attached to it.  What I said was Mr. Hearing Officer is that

7    supports that response is attached.

8        HEARING OFFICER: Oh, that's your response.  Your response

9    being a culmination of documents.

10       MR. MCCALL:  We're require to - we're required to provide

11   in writing the reason why we have either a take an action or

12   refuse to an action and number 11 is letter of February 1st to

13   Mr. Tyrka from Ms. Kelly. And Ms. Kelly told Mr. Tyrka we did

14   not get your speech evaluation when you said we did.  And then

15   Mr. Tyrka's office finally faxed it again, and so we have the

16   new dates issued.  So.

17       MR. TYRKA:  So we finally faxed it again, the day they

18   called us and asked for it.

19       HEARING OFFICER:  So is there really a dispute in going

20   back to the Motion for Summary Adjudication, is there a dispute

21   in the facts?

22       MR. MCCALL:  As to that facts?

23       HEARING OFFICER:  As to why the meeting didn't occur?

1       MR. MCCALL:  Why it occurred.

2       HEARING OFFICER:  Why didn't it occur on the January 25th,

3  and occurred on the 12th, there is no real dispute on that?

4       MR. MCCALL:  Yes.

5       HEARING OFFICER:  And your document in 11, it supports

6  that, is that what you're saying.

7       MR. MCCALL:  Well counsel disputes it. That's our position

8  that obviously.

9       HEARING OFFICER:  Okay well then. I know that then - well

10  that is in dispute that you sent it on the 20th and it was

11  received the 20th of December and the allegation by DCPS is that

12  it wasn't received until 31st.

13      MR. TYRKA:  Yes. As long as we understand now, that was -

14  again not only was there no response until Friday, but even if

15  the thing that they are calling a response, which is clearly

16  not, does not --.

17      HEARING OFFICER:  Well it wasn't responded to I would

18  imagine until after the complaint was filed.  You filed the

19  complaint on what?  The 30th - the 31st?

20      MR. TYRKA:  I'm saying that is exactly the kind of thing

21  that should be in a response.  It should say we did not hold the

22  meeting because we did not get the evaluation.  That's what you

23  do in a response.

36

1          HEARING OFFICER:   HmmmHmmm.

2       MR. TYRKA:  Among many other things.  Now the statement

3    that what they had to do is to explain the reasoning, that is

4    not – what they had to do is very clearly laid out in fourteen

5    fifteen and have been reviewed by the Federal Courts as this

6    Hearing Officer is aware.

7          HEARING OFFICER:  So even if I did – even if I found that

8    there was default with regard to failure to file a response,

9    and/or even if I found that DCPS obtained the independence on

10   the 20th of December rather than January 31st, what is the basis

11   for me granting the relief which is a private placement to the

12   parent?

13      MR. TYRKA:  The (inaudibility) to determine the placement

14   for a child who needs one.  I mean I would still have to put on

15   evidence obviously but the school could meet his needs.

16         HEARING OFFICER:  HmmmHmmm.

17      MR. TYRKA:  I mean I've never – I've never (inaudible)

18   anything else.

19         HEARING OFFICER:  No other representations have been made

20   that – that the student has been found eligible.  I mean that is

21   one of the reasons I asked whether or not it is (inaudible)

22   complaint.

23      MR. TYRKA:  Because the evaluation --.

1          HEARING OFFICER:  Because  – but because – is it your

2    opinion that if I were to have found a violation that necessary

3    is that the relief I have to grant is the relief that you are

4    proposed are request?

5          MR. TYRKA:  No, not necessarily.  The Hearing Officer

6    always has discretion in relief.

7          HEARING OFFICER:  Okay.

8          MR. TYRKA:  I mean at any point we can come in, there can

9    actually be no dispute about a violation about an HOD to hold a

10   meeting and the Hearing Officer can say hold another meeting.

11   And the Hearing Officer can do that the rest of the child's

12   life. That's a distinct issue.

13         HEARING OFFICER:  All right.

14         MR. MCCALL:  You're saying he can order on an HOD of non-

15   compliance to again hold a meeting to double up on that order.

16   The order was to hold a meeting.

17         MR. TYRKA:  Leading aside that DCPS is running

18   jurisdictional argument.

19         MR. MCCALL:  That's what you're the – the argument you just

20   gave --.

21         MR. TYRKA:  Leading aside, DCPS is running jurisdictional

22   argument, what I'm saying is that DCPS – the Hearing Officer

23   never has to order a private placement, (inaudible).

1       HEARING OFFICER:  Okay.

2       MR. TYRKA:  I understand.  And in many cases, I might

3   contest that decision not to do that, --.

4       HEARING OFFICER:  Right.

5       MR. TYRKA:  You know, who knows.  But that is certainly

6   discretionary.  I think it is.

7       HEARING OFFICER:  So. Okay. The only real place where there

8   is potential testimony, if we hold all of that in abeyance is

9   whatever testimony there is about when the documents were

10  received, the last eval was received.

11      MR. TYRKA:  Well - I. Yeah, I guess so. I can speak to

12  DCPS's (inaudible) put on a case, but DCPS defense case but,

13  that's the way I see it.  I see it we have the HOD, the delivery

14  of the evaluations, the content of the evaluations, --.

15      HEARING OFFICER:  Now you objected to this document, was

16  that the only one you objected to in terms of what he presented.

17      MR. TYRKA:  We didn't go through disclosures.

18      HEARING OFFICER:  Yeah, okay.  Let's go to the disclosures.

19  Okay, DCPS presented  the witness list and 12 documents, right.

20      MR. MCCALL:  I have one at 13.

21      HEARING OFFICER:  I don't know what that was.

22      MR. MCCALL:  Supplemental 13.

23      HEARING OFFICER:  When did you - is the today the first day

1    you tried to present that?

2        MR. MCCALL:  No, I gave that to Mr. Tyrka - I didn't give

3    it to him, the SEC sent it to him the 29th.

4        MR. TYRKA:  That's not true.  And by the way, sending

5    something to me is not disclosing it to me as potential evidence

6    first off. So the first time it was given to me as a potential

7    piece of evidence was this morning at 9 o'clock. I don't think

8    there is any dispute about that.

9        MR. MCCALL:  As to a disclosure, from me yes.  But the SEC

10   sent it to him.  And the reason we're presenting it is, I'm just

11   trying to show Mr. Tyrka, is to say look, your client just needs

12   to sign the consent.  And we can't keep litigating these cases -

13   -.

14       MR. TYRKA:  One month 17 days after the meeting, DCPS says

15   gee, you know I want to hammer this home to you, M'ame. We have

16   to get consent.

17       HEARING OFFICER:  Other than document, is there anything

18   else that you have a problem with?

19       MR. TYRKA:  No.

20       HEARING OFFICER:  Everything was disclosed timely

21   otherwise, right?

22       MR. TYRKA:  Yes.  I didn't have any problem with any of the

23   others.

1          MR. MCCALL:  I don't' have petitioner's so I can't --.

2          MR. TYRKA:  I have a problem that the notes are --.

3          HEARING OFFICER:  Yeah.

4          MR. TYRKA:  The notes for both these meetings are

5     incomplete.  The resolution meeting and the IEP meeting, did not

6     contain the advocates notes.

7          HEARING OFFICER:  Did you disclose him with the Advocates'

8     notes?

9          MR. TYRKA:  No.

10         HEARING OFFICER: You didn't.  Okay.

11         MR. TYRKA:  And the additional issue that I contend they

12    are irrelevant --.

13         HEARING OFFICER:  The resolution meeting notes. Is that

14    what you're talking about?

15         MR. TYRKA:  The resolution meeting notes and the IEP.

16         HEARING OFFICER:  And the IEP, okay.  Right.

17         MR. TYRKA:  And I contend, now I have relevancy objections

18    to all of these. I want to address the reasoning with the

19    Hearing Officer, some of the Hearing Officer want to hear those

20    at this stage and some do not.  But, --.

21         HEARING OFFICER:  Yes, right now.  Because this looks like

22    this is the way it's going.

23         MR. TYRKA:  Okay, I will contest the relevance of - I

1    believe it's all of them, but give me a second.  The relevance

2    of everything but 10 and - 10 through 12.  I would also --.

3         HEARING OFFICER:  Except 10 through 12?

4         MR. TYRKA:  The relevance of everything except 10 through

5    12.

6         HEARING OFFICER:  Okay.

7         MR. TYRKA:  I would contest 12 because there is no

8    indication that this is a regular business record or anything

9    other than a document created for litigation.  And --.

10        HEARING OFFICER:  (inaudible) Kelly whom? All from Stanton.

11        MR. MCCALL:  SEC.

12        MR. TYRKA:  And at the end of 12, where he got two

13   scheduling memoranda, and actually one of these is a

14   confidentiality problem in that. Actually both of these are.  I

15   think that was accidentally stapled.  And this is my copy, is

16   that - may I see DCPS's.

17        MR. MCCALL:  Yeah, I don't have that.

18        MR. TYRKA:  Okay.  That occurred in my office then.  That's

19   got staples too.

20        HEARING OFFICER:  So I've gotten your concerns about the

21   relevancy of those documents, that weren't disclosed so I won't

22   accept that one there.

23        MR. TYRKA:  (Inaudible) or the marks on that one.

1       HEARING OFFICER:  Right. It will be --.

2       MR. TYRKA:  I think you gave me another one I think.

3       HEARING OFFICER:  However, you can give it me.  I won't

4 consider it. It will be noted that it was attempted to --.

5       MR. TYRKA:  Now we do have a issue with the Motion to

6 Dismiss, which was untimely, attached to that were a bunch of

7 documents.  There is a lot of duplication there. I think the

8 only thing that was in there that was not - I think counsel can

9 tell us.--.

10      HEARING OFFICER:  Was it that letter from March 29th, was

11 not in it.

12      MR. TYRKA:  Not in it.

13      HEARING OFFICER:  Okay.

14      MR. TYRKA:  I don't think.

15      HEARING OFFICER:  That's the only thing that would be --.

16      MR. TYRKA:  Yeah, exactly. I don't think there is anything

17 in there that was not in the disclosure.

18      HEARING OFFICER:  Mr. McCall you have a chance to look at

19 Mr. Tyrka's document.

20      MR. MCCALL:  Yes.

21      HEARING OFFICER:  Any objections to these.

22      MR. MCCALL:  I object to 10 and 11.  Those are the last

23 two?

1        HEARING OFFICER:  HmmmHmmm. Ten.

2        MR. MCCALL:  Ten's hearsay.

3        HEARING OFFICER:  Okay.

4        MR. MCCALL:  Eleven I'm not sure what it is.

5        HEARING OFFICER:  Proven status by school, what's that?

6        MR. TYRKA:  This is off of DCPS's website.

7        HEARING OFFICER:  HmmmHmmm.

8        MR. TYRKA:  This is there NCLB and those things.

9        HEARING OFFICER:  Okay. I don't know what the codes are.

10       MR. TYRKA:  I'm not sure why it's--.

11       HEARING OFFICER:  You're not sure why it's there?

12       MR. TYRKA:  I'm not sure what the objection to number 10 is

13  hearsay, it's --. First of all I think its interesting because

14  DCPS is often objecting that we don't acceptance letter in our

15  disclosure, but --.

16       MR. MCCALL:  Out of court statement.

17       HEARING OFFICER: (Laughter)

18       MR. TYRKA:  You surprise me that I am actually familiar

19  with the definition of hearsay.  But I don't understand why --

20       MR. MCCALL:  That's why I was objecting.

21       MR. TYRKA:  Although I'm always open to education, such

22  quality attorneys, but the I don't understand why it's hearsay

23  because we're just trying to establish that as far as we

44

1  understand the child has been accepted.

2       HEARING OFFICER:  Okay.  Where?  Okay. You're putting all

3  of this on, all the motions taking them under consideration.

4  Moving to underlying issues.  You don't need to call any witness

5  but the school. Are you calling anyone?

6       MR. MCCALL:  Yes we would call the SEC and anyone else we

7  can find who still showed up on Spring break.  No other

8  witnesses that we were going to call.  Other than the SEC, I bet

9  the SEC, I've - pretty sure.

10      HEARING OFFICER:  And then you said, depending on what they

11  - their testimony is, you calling them.

12      MR. TYRKA:  That would be possibly, there is a preliminary

13  issue which I'm to object as far as the documents and also to a

14  testimony to any evidence in support of an argument that would

15  not made and in DCPS's response.  And considering there was no

16  argument made in DCPS response, any kind of timely response and

17  that the only argument made that you can label the response was

18  that consent was not given.  I guess that's going to cover quite

19  a lot of things including all the occurrences of this meeting.

20      MR. MCCALL:  Can we address that real quick Mr. Hearing

21  Officer because I know we got off the track when I was getting

22  ready to ask to address that, we started talking about the

23  response.  What the problem is - the problem is with counsel's

45

1    interpretation of the response and what it does and doesn't do,

2    under 300.508, when you get into the section of the response or

3    e, it basically says the response for Due Process Complaint, if

4    the LEA has not sent a prior notice under 300.503 to the parent

5    regarding the subject matter contained in the parent's due

6    process complaint, then within the ten days we have the file the

7    document we know as the response in this Hearing. All you do is

8    go back to 300.503 and that tells you what the requirements are

9    for the prior notice.  Prior notice that meets the requirements

10    of paragraph B of the section must be given to the parents of

11    the child with disability a reasonable time for the public

12    agency.  (Inaudible) to initiate or change the identification,

13    evaluation or educational placement of the child will the

14    provision of FAPE to the child or refuse to initiate the change

15    the blah, blah, blah.  Content and Notice.  The notice required

16    under paragraph A of this section must description of the action

17    proposed or refused by the agency, a explanation of why the

18    agency proposed or refused to take the action.  A description of

19    each evaluation procedure assessment record or report the agency

20    uses as a basis or proposed refused action.  The statement that

21    the parent of the child with disability protection under

22    procedural safeguards part notice (inaudible).  Description of

23    the procedure safeguards can be obtained.  Now, what I said was

46

1    what we did in our response was to attach all the documents, the

2    written documents that support the reasons why we have taken or

3    refused to take action in this case.  And the real issue here is

4    this meeting and when it was held and why it was held on that

5    day. Now if counsel if truly going to come here and represent

6    this Hearing Officer that he is surprised if he's going to say,

7    I didn't know that Ms. Kelly position was we didn't get the

8    speech on December 20th.  He can't do that he already said that

9    he understood that and that it was correspondence, in fact his

10   own correspondence back is discussing that.  So I attached 11,

11   that's the prior written notice.  It's already been given in

12   writing to counsel to the parent that look, we didn't hold this

13   meeting when you say we should have because we didn't have the

14   last speech evaluation. Fax it to us, they did fax it us.

15   January 31st.  We held the meeting February 12th.  Well within 15

16   school days. Now, what I said was earlier, even if the Hearing

17   Officer says that we got it December 20th, the meeting would have

18   been the deadline January 25th and so you're talking about 7

19   school days between then and the February 12th meeting.  There is

20   not a case that I am aware of in this nation, that says 7 school

21   days without even, even if you said no, that the child just had

22   to have a full time program, a very detailed program, there is

23   not a case in this nation is going to say 7 days is the file

47

1    FAPE.  And there is not one going to say a Hearing Officer can

2    order by the (inaudible) for that. So, I just think the case is

3    just (inaudible).

4        HEARING OFFICER: Mr. Tyrka I'm looking at your JW9 it's not

5    dated, but it seems as though there a 8 that is handwritten at

6    the top to a letter to Ms. Kelly.

7        MR. TYRKA:  Yes.

8        HEARING OFFICER:  Can you walk me through what this - Ok.

9    First of all --.

10       MR. TYRKA:  Sorry about the date, it has a fax confirmation

11   on it.

12       HEARING OFFICER:  Okay.

13       MR. TYRKA:  So, it's February 2nd. This is in response a

14   letter sent by DCPS, which is no disclosures, I think number 10

15   or something.

16       MR. MCCALL:  Eleven.

17       MR. TYRKA:  Eleven.  There is a response to that letter.

18   So the sequence was we filed our complaint.

19       HEARING OFFICER:  Okay. Yeah, I understand that, but this -

20   though walk me through your letter. I'm writing in reference to

21   your letter dated the first. In it you state that on January

22   31st, Laura Foliano.

23       MR. TYRKA:  Foliano.

1      HEARING OFFICER:  Foliano, who is in your office.

2      MR. TYRKA:  Correct.

3      HEARING OFFICER:  Okay.

4      MR. TYRKA:  And so I am quoting Ms. Kelly's letter.

5      HEARING OFFICER:  HmmmHmmm.  Fax copy of the speech

6 language evaluation noted that the previous fax was sent go the

7 wrong number. Further you allege that no fax was received from

8 our office on 20th.  To the contrary her note to you made clear

9 that the original fax had been sent to the correct number.  Is

10 her letter in here?

11      MR. TYRKA:  Ms. Foliano's.

12      HEARING OFFICER:  Yeah.

13      MR. TYRKA:  Well, I mean, it's a – it's the fax.  It's the

14 confirmation number I was mentioning before that there are

15 multiple confirmations there.  So that's off the end of excuse

16 me, number 8. It's all but the speech and language/

17      HEARING OFFICER:  End of 8.

18      MR. TYRKA:  Speech and language.  So we have – so we

19 started with a first of the fax confirmations. The fax

20 confirmation from 12/20.

21      HEARING OFFICER:  12/20. Right.

22      MR. TYRKA:  Then we have another copy of that.

23      HEARING OFFICER:  Right.

1      MR. TYRKA:  This now would Ms. Foliano's note on it saying,

2  pointing out to Ms. Kelly--.

3      HEARING OFFICER:  HmmmHmmm.

4      MR. TYRKA:  That's where we sent our first one.

5      HEARING OFFICER:  Right.

6      MR. TYRKA:  Now and we faxed all of that again, that was on

7  the January 31st.

8      HEARING OFFICER:  And that's why late (inaudible).

9      MR. TYRKA:  Right.

10      HEARING OFFICER:  HmmmHmmm.

11      MR. TYRKA:  Apparently Ms. Kelly misunderstood what Ms.

12  Foliano was saying and took it as some sort of admission that we

13  had done something wrong, when in fact we were pointing out the

14  opposition.

15      HEARING OFFICER:  Right.

16      MR. TYRKA:  So I just wanted to clear that up.  I think the

17  two questions again.

18      MR. MCCALL:  I just want to say one thing.

19      MR. TYRKA:  Actually I've listened a lot from DCPS, I'd

20  like to respond to what he said.

21      HEARING OFFICER:  I'll finish with Mr. Tyrka and then I'll

22  come back to what--.

23      MR. MCCALL:  Oh, I thought it was my time to respond to

50

1    that.  I apologize.

2      MR. TYRKA:  I know it was talking about a prior written

3    notice, but a letter Ms. Kelly constitutes – well first off,

4    there is nothing prior about it. It came after the complaint. So

5    I don't know how it can ever be presented as a prior written

6    notice. Second off, a prior written notice has specific

7    requirements and those are enumerated in the statute and the

8    regulation and I can read through them, but the Hearing Officer

9    is familiar with.  It includes a reference to all the evals use,

10   alternatives considered and why they were rejected.  It must

11   (inaudible) as response requirements which DCPS also has not

12   met.  As everyone in this room knows because we argue this all

13   the time and I've put it in writing many times, Massey D.C.C.

14   400 Fed 2nd 66, makes it abundantly clear, DCPS has made this

15   argument.  They've made this argument before in Federal Court

16   saying that we don't have hit it exactly right. We can do these

17   other things and in fact what Massey is about – Massey was a

18   case where after the complaint, DCPS took a prior notice form

19   and gave that to the petitioner and said okay, here you go.  And

20   then they went Federal Court and they said this prior notice

21   form serves as a response. And the court said no for a number of

22   reasons.  One, it was served after – it was actually the case.

23   It was served after the complaint, so it wasn't a prior written

1    notice.

2        HEARING OFFICER:    HmmmHmmm.

3        MR. TYRKA: At the time of the complaint you had not done a

4    prior notice. And then it says two, it did not contain the

5    information required in the response, and I think that the

6    Hearing Officer is familiar from Massey, you know. Judge Lambert

7    went on at length about the – he made perfectly clear that there

8    was no out.   The language he used when he said, I am aware of no

9    exception for close enough in the IDEA. They must comply exactly

10   with these requirements, et cetera, et cetera, et cetera.   He

11   went on and on about this.   There is no room for doubt about

12   what is required. And I'll ask the questions that I've asked

13   before. One, does anybody here think that there is a judge in

14   this country who upon getting this case would no response would

15   say the Hearing Officer did not have discretion to grant a

16   default, because if there is, then we have to ask ourselves then

17   what are these Motions to Dismiss.   Because DCPS regularly files

18   Motions to Dismiss against me. There is nothing in the law

19   authorizing a Motion to Dismiss. It doesn't say that anywhere

20   that this is the procedure they follow.   The Hearing officer has

21   never head me make the argument that they can't do a Motion to

22   Dismiss because there is no specific procedure in the law

23   because that is a ridiculous argument.   I wouldn't make it and I

52

1    would dream of showing up in Federal Court and making it, and I

2    think that is why DCPS hasn't done so.  They've never challenged

3    any of my defaults. So I (inaudible) Judge Randy would do that.

4    And the other question is if I had acted, if this petitioner and

5    this attorney had acted as DCPS has acted in this case, and it

6    come down to the wire, would we be having a 2-hour about it, or

7    would it be a five-minute discussion in which somebody said to

8    me, you screwed up get out of here.  I don't think there is any

9    question about that.  If I had filed a complaint that didn't

10   come remotely close to meeting the requirements of the statute,

11   DCPS filed a timely motion on it, I failed to respond

12   completely, and then filed to me a couple of days before saying,

13   oh, oh, oh, here this fixes it up, when you still didn't fix it

14   up, and I admit I was arguing (inaudible) would not be hurt.

15   That was rhetorical.  I'll (inaudible).

16       HEARING OFFICER: (Laughter). Okay, so all right.  You were

17   objecting to the SEC being able to testify because of the non-

18   response.

19       MR. TYRKA:  Well I am objecting to any testimony regarding

20   arguments not given in the response. Now, I don't think that--.

21       HEARING OFFICER: And you're saying that DCPS not receiving

22   the eval on the 20th was not in the response.

23       MR. TYRKA:  Correct. I contend that there is nothing – that

1    there is no response period.

2        HEARING OFFICER:  Okay.

3        MR. TYRKA:  But then even if you look at that, excuse me

4    March 30th document as a response --.

5        HEARING OFFICER:  HmmmHmmm.

6        MR. TYRKA:  The only thing it says in there is failure to

7    give consent.

8        HEARING OFFICER:  Failure to give consent.

9        MR. TYRKA:  That's it.

10       HEARING OFFICER:  Right. So, what - would you proffer on

11   your testimony on that issue.

12       MR. MCCALL:  My proffer?  We haven't even covered the fact

13   that we did respond to yet.  I'm going -- .

14       HEARING OFFICER: We covered that very much, did you respond

15   to the complaint?

16       MR. MCCALL: No. Yeah, because we didn't cover the fact that

17   what I said was Mr. Tyrka was already on notice of it.

18       HEARING OFFICER: HmmmHmmm.

19       MR. MCCALL:  We already addressed in writing.  Mr. Tyrka

20   was well aware that the response was.  And just to clear up the

21   facts issue. If you look on the top of DCPS 11.

22       HEARING OFFICER: HmmmHmmm.

23       MR. MCCALL:  This is where the fax come from Stanton

54

1    Elementary School.

2        HEARING OFFICER:   HmmmHmmm.

3        MR. MCCALL:   And the fax number 202-645-3564.

4        HEARING OFFICER: HmmmHmmm.

5        MR. MCCALL:   And if you look in Mr. Tyrka's fax transmittal

6    receipts, the faxes were sent to 202-645-3264.

7        HEARING OFFICER:   Well the final fax that I presume she got

8    --.

9        MR. MCCALL: What the letter says --.

10       MR. TYRKA: The 31st.

11       HEARING OFFICER: HmmmHmmm.

12       MR. MCCALL: Is that Laura Foliano faxed a copy of the

13   speech and language evaluation and noted that the previously fax

14   was sent to the wrong number.   Counsel was very involved in that

15   dispute.   And it references the complaint and the issue.

16       HEARING OFFICER: HmmmHmmm.

17       MR. MCCALL: You can't come into these hearings and saying

18   you don't have a response when you've been involved in a written

19   dialogue about the very thing you're saying you're not getting a

20   response on.   With that, I take great issue with. There is no

21   magic to the document that titled response.   If there's all this

22   written dialogue back and forth, specifically detailing the

23   issues, why something didn't occur, counsel writing back

1    disputing that. It's clear.  All the notices has been satisfied.

2        HEARING OFFICER: Okay, so my question again, you proffer in

3    the testimony is any different that what's in the letter?

4        MR. MCCALL: It may be in terms of also there is the issue

5    of the clarifying.  Counsel also raised an issue as additional

6    evaluations that were recommended. I assumed that he – I haven't

7    heard him say, at least that the stipulates that they are

8    underway. I know you said that you haven't received a vision and

9    hearing.

10       HEARING OFFICER: HmmmHmmm.

11       MR. MCCALL: That should have been faxed over this morning.

12   I can try to get that to counsel today.  The audiological is

13   underway, but they are not even right at this point.  They were

14   a recommendation in independent, taken up on the 12th so her

15   testimony would go to what occurred on the 12th as well. And that

16   was a messy (inaudible) plan was developed.  So as I said

17   earlier, the case has jurisdictional issue problems, if he's

18   saying there are new issues, they have right (inaudible)

19   problems, not being right.

20       HEARING OFFICER: Okay. So in light of Mr. Tyrka, in light

21   of the discrepancy or alleged discrepancy between that one digit

22   in the fax number.

23       MR. TYRKA: That would have been an interesting thing to

56

1    have heard within ten days after the complaint. But once again,

2    we're sitting here on the day of the hearing with DCPS making

3    its argument. And no, there is nothing.  First off, again,

4    Massey made clear that you cannot just pitch out any bunch of

5    documents and call it a response.  But there is nothing in that

6    letter that says you were one digit off, your fax number says 2,

7    and in fact ours is 5.  And to the contrary if we go through all

8    the evaluations here, they all went to 1-202-645-3264, including

9    the second sending--.

10    HEARING OFFICER: And they went different dates, right?

11    MR. TYRKA:  They went different dates.

12    HEARING OFFICER:  Speech language was the last.

13    MR. TYRKA:  Yeah.  The psycho, but there were ones before.

14    HEARING OFFICER:  Before that.

15    MR. TYRKA:  Before December 20th and there were ones after

16    December 20th.  And apparently DCPS got all of those. Now I can

17    probably call a witness, I know given the document that counsel

18    gave me this morning, I did a check with my office to make sure

19    we hadn't received it, because I didn't know of it and I was

20    told that there was check (inaudible) stamped on their fax

21    number. I can call a witness to say what Stanton --.

22    HEARING OFFICER:  I'm sorry there was?

23    MR. TYRKA:  A member of my staff called Stanton and said, I

57

1  want to confirm your fax number because we were checking our fax

2  file.

3      HEARING OFFICER:  Oh, okay.

4      MR. TYRKA:  I can call a witness on that issue.  But again

5  these are things that should have been. To say I'm not getting -

6  -. The argument I had before was this big thing saying we didn't

7  get it. Well we had fax confirmation saying that they had gotten

8  it.  So there is nothing more to talk about it.  Now I'm getting

9  told something else, oh, we've been sending everything to the

10  wrong fax number.  That's a brand new argument.  And the other

11  stuff was certainly not mentioned.

12      HEARING OFFICER:  Okay. You want to call your school

13  witness.  What is it Rock Creek?

14      HEARING OFFICER:  Can I ask Mr. Hearing Officer is the

15  parent going to appear in this case. We've been doing

16  preliminary stuff, now we're getting into substance.  I would

17  ask that parent appear and prosecute this case.

18      MR. TYRKA:  There is no requirement that the parent be

19  present to prosecute this case.

20      MR. MCCALL:  There is.  And I can go get the SEP, basically

21  it says that the parent - the Hearing Officer has discretion to

22  dismiss the case if the parent doesn't appear. Want me to go get

23  it?

58

1      MR. TYRKA:  I'm happy to see because you let me hear this

2  arguments for months and --.

3      HEARING OFFICER:  You want to go get the SOP.

4      MR. MCCALL:  Yeah, I think it is in that. Are you red-eye.

5  700.3  Failure to appear.

6      HEARING OFFICER: Oh. Okay.

7      MR. MCCALL: If the party who requested the Hearing,

8  complainant does not appear at the Hearing may dismissed by the

9  Hearing Officer.  This is what I represented earlier.  It is

10  discretionary language.  And the SOP for the Hearing Officer to

11  dismiss the complaint.  It's no different than being in a state

12  court or federal court.  If you don't appear the judge is going

13  to issue a show cause, why the case should not be dismissed for

14  failure to appear.  If they are nice I guess, they could just

15  dismiss it.  So, all I wanted to say is and I say this in every

16  case, I expect that if a parent is going to sue, I expect them

17  to be here to answer to the complaint. It's the least they can

18  do, I think.

19      MR. TYRKA: That's if no appears.  It's plainly the purpose

20  of that.  The party didn't say, in person, there is no other

21  context in which the actual plaintiff.  Contrary to DCPS regular

22  statement, actually.  There is no other context in which is the

23  actual plaintiff is required to appear when --.

1          HEARING OFFICER: There is no allegation that he doesn't

2    represent the parent.  You're only making allegation, that you

3    understand the SOP to mean that the – the client needs to be

4    here, him or herself.

5          MR. MCCALL:  The SOP says the party, the complainant.

6    Counsel can't be the party.

7          HEARING OFFICER:  HmmmHmmm.

8          MR. MCCALL:  That's conflict of interest.

9          HEARING OFFICER: What's your interpretation of what the SOP

10   means?

11         MR. MCCALL:  Is there an interpretation?

12         HEARING OFFICER: I mean it's a question of interpretation.

13         MCCALL: No  I – don't.

14         HEARING OFFICER:  You're representing one interpretation

15   Mr. Tyrka is another.

16         MR. MCCALL: That's like saying red is green.  You can't an

17   attorney being a party. An attorney can't be a party.

18         HEARING OFFICER: No, but you could have and typically we do

19   have counsel proceed with hearing even if the parent is not

20   here.

21         MR. MCCALL: I don't disagree that that has occurred.

22         HEARING OFFICER: Yes.

23         MR. MCCALL: And I raised that initially when I arrived in

60

1    DCPS.

2        HEARING OFFICER: HmmmHmmm.

3        MR. MCCALL: It is unique to DCPS.  There is a great number

4    of hearings, I know them in a system trying to move quickly.

5    But, --.

6        HEARING OFFICER: And I'll entertain that, I will allow the

7    proceed without the parent being present. It doesn't seem to be

8    a dispute as to whether he has been retained by the parent.

9        MR. MCCALL: Well it is discretionary.  You don't have to,

10    but I raised it.  And I'd like to add to that when we go through

11    the case, you'll see in the documents a pattern with this

12    parent.  This parent appears at nothing.  Doesn't appear at IEP

13    meetings, doesn't appear at resolution meetings, doesn't appear

14    at this hearing. It is a non-appearing parent and an attorney

15    filing.

16        HEARING OFFICER: Who was at the meeting, Ms. Millis.

17        MR. TYRKA: Ms. Millis was there in person, the parent was

18    available by phone.  She was on speakerphone. We're talking

19    about the MDT?

20        HEARING OFFICER: Yes.

21        MR. TYRKA:  Actually they were the same (inaudible)?

22        HEARING OFFICER:  The MDT and resolution were the same

23    (inaudible)?

1        MR. TYRKA:  Back to back, yeah.

2        HEARING OFFICER:  Okay.  You're calling the school?

3        MR. TYRKA:  Yes, please.

4        HEARING OFFICER:  Can I see the disclosure Mr. Hearing

5    Officer, I don't have a copy of that.

6        MR. TYRKA:  Hi, Ms. Webb?  Hi this is Doug Tyrka calling

7    you from J▆▆▆ W▆▆▆▆▆ Hearing.  Good.  You're on the record

8    right now and in a moment I am going to put you on speakerphone.

9    In the room with me are Mr. Ruff who is the Hearing Officer, he

10   is going to swear you in and opposing counsel who is Mr. McCall.

11   Okay, just a minute. Can you hear us okay.

12       HEARING OFFICER:  Who is this?

13       MR. TYRKA:  Tony Webb.

14       HEARING OFFICER:  Toni who?

15       MR. TYRKA:  Toni Webb.  She's Ms. Hill's designee.

16       MR. MCCALL:  I'm going to object to non-disclosure to Mr.

17   Hearing Officer.

18       MR. TYRKA:  We're putting this on the disclosure letter

19   that says (inaudible) designees.

20       HEARING OFFICER:  Okay, can you include that in the inquiry

21   please?

22       MR. TYRKA:  Sure.

23       HEARING OFFICER:  That she's a designee.  Hello this is Mr.

1    Ruff, the Hearing Officer can you state your name for us please?

2        MS. WEBB: Yes, Toni Webb.

3        HEARING OFFICER: How do you spell that?

4        MS. WEBB: T-o-n-i    W-e-b-b.

5        HEARING OFFICER: I'm going to have to put you under oath.

6    Do you swear or affirm the statement you make today will be the

7    truth? Do you or not?

8        MS. WEBB: Yes I do.

9        HEARING OFFICER: All right, Mr. Tyrka is going to ask you

10   questions.

11       MR. TYRKA: Hi Ms. Webb can you please tell us your title

12   there at Rock Creek?

13       MS. WEBB:  (Inaudible) of the Sixth Grade Program Director.

14       MR. TYRKA:  Just give me a second, I am writing that down

15   on the witness list here.  And that's at Rock Creek Academy?

16       MS. WEBB:  Yes it is.

17       MR. TYRKA:  Do you know where Ms. Kendra Hill is today?

18       MS. WEBB:  No, I'm just aware that she is not in the

19   office.

20       MR. TYRKA:  Okay. Is that why you're testifying?

21       MS. WEBB:  Yes it is.

22       MR. TYRKA:  Mr. Hearing Officer, do you need to hear

23   anything more.

1        MS. WEBB:  I beg your pardon.

2        MR. TYRKA:  I'm sorry, I have a question for the Hearing

3    Officer.

4        MR. MCCALL: Can I take the witness on voir dire?

5        MR. TYRKA: Did Ms. Hill --.

6        HEARING OFFICER: Just a moment.  Go ahead.

7        MR. TYRKA: Have you been appointed to testify on Ms. Hill's

8    behalf?

9        MS. WEBB:  Yes I have.

10        HEARING OFFICER: Okay, Ms. Webb, Mr. McCall the attorney

11    for DCPS needs to ask you some questions first before you

12    provide other testimony, go ahead.

13        MR. MCCALL: Ms. Webb, this is Danny McCall, how are you?

14        MS. WEBB: Fine, thank you.

15        MR. MCCALL: Can you hear me okay?

16        MS. WEBB: Barely yes.

17        MR. MCCALL: Okay, let me move a little closer.  You're

18    title is Program Director, correct?

19        MS. WEBB:  Yes.

20        MR. MCCALL: And who is Kendra Hill?

21        MS. WEBB: Kendra Hill works in the Student Services

22    Division.

23        MR. MCCALL: And what is her role in student services?

1      MS. WEBB:  She screens potential students for Rock Creek

2   and along with current policy makes determination as to whether

3   or not placement is appropriate for the student. She also does

4   student tours, and assembles the intake packages.

5      MR. MCCALL: Okay. And do you any of those things?

6      MS. WEBB: No I do not.

7      MR. MCCALL: Were you involved with this student in any of

8   those activities?

9      MS. WEBB:  I've met the student during the tour?

10     MR. MCCALL: And that's all?

11     MS. WEBB: Yes.

12     HEARING OFFICER: Okay.  She's indicated she was designated

13  to testify on her behalf.  And I'll allow her testimony.

14     MR. MCCALL: Well I'm going to object.  I'm going to object

15  as to relevance.

16     HEARING OFFICER: Okay, so noted.

17     MR. MCCALL: But you know what it be based on.

18     MR. TYRKA: Can I have my disclosures back, unless --. I'm

19  not sure which of you have it.

20     HEARING OFFICER: You gave it to him.  His copy.

21     MR. MCCALL: I gave it back.

22     HEARING OFFICER: Oh no.

23     MR. TYRKA: Hi Ms. Webb, this is Doug Tyrka again.

1      MS. WEBB:  Hi.

2      MR. TYRKA: Are you familiar with the student J█████

3 W█████████

4      MS. WEBB: Familiar with him in what sense?

5      MR. TYRKA: Do you know who he is?

6      MS. WEBB: Well I met him, and I actually received a packet

7 on him, but beyond meeting with I'm not familiar with him?

8      MR. TYRKA: Okay. What's in the packet that you've received?

9      MS WEBB: I received a copy of his most recent evaluation,

10 IEP's and correspondences between Rock Creek, your office and

11 his mother.

12      MR. TYRKA: Can you tell me what the evaluations were

13 please?

14      MR. MCCALL: Objection I'm going to object to testimony.

15      MR. TYRKA: I'm sorry Ms. Webb, can you hold for section, we

16 have an objection.

17      HEARING OFFICER:  We're going to put you on mute, alright.

18      MS. WEBB: HmmmHmmm.

19      MR. MCCALL: I'm going to object again to relevance.

20      HEARING OFFICER: HmmmHmmm.

21      MR. MCCALL:  This witness is not going to have anything

22 relevant to say about the student. She testified clearly, I

23 don't know anything about this student.

1          HEARING OFFICER: She testified that she met the student and
2     he was there.
3          MR. MCCALL: I agree. I'm sorry.  She did she met him.  She
4     did say other than that she didn't know anything about the
5     student.
6          HEARING OFFICER: And she said she reviewed the documents.
7     So I don't know. Did she not say that?  Did I miss that.
8          MR. TYRKA:  I believe she said she received the packet.
9          HEARING OFFICER: Oh, okay.
10         MR. TYRKA: I can ask that question.
11         HEARING OFFICER: Okay, go ahead.
12         MR. TYRKA:  All right, Ms. Webb have you reviewed the
13    packet you received?
14         MS. WEBB: Yes I have.
15         HEARING OFFICER: Go ahead.
16         MR. TYRKA: Okay. And I'm sorry, I think you were telling me
17    what was in the packet as far as the evaluations go.
18         MS. WEBB: Yes.  About three evaluations, a psycho ed and a
19    social history and a speech and language eval.
20         MR. TYRKA: And were those from 2006?
21         MS. WEBB: Yes.
22         MR. TYRKA: I want to ask some questions about your
23    familiarity with Rock Creek's programs and services.

67

1      MS. WEBB: HmmmHmmm.

2      MR. TYRKA: In particular, for J⬛⬛. Well first I'd like

3  to ask, if Rock Creek can accept J⬛⬛, have you identified a

4  classroom for him?

5      MS. WEBB: Yes I have.

6      MR. TYRKA: And who's the teacher for that classroom?

7      MS. WEBB: Ms. Shanny Sherod, teacher.

8      MR. TYRKA: And can you tell me her qualifications, please?

9      MS. WEBB: She is a certified special ed teacher.

10     MR. TYRKA: And do you know how many students are in the

11 class?

12     MS. WEBB: Yes, there are currently 2 students, Pre-k and

13 Kindergarten. And that class ranges from pre-k to 1st grade.

14     MR. TYRKA: Okay and is Rock Creek capable of providing

15 J⬛⬛ one-on-one tutoring in reading and writing skills twice a

16 week?

17     MS. WEBB: One-on-one exclusively?

18     MR. TYRKA: Yes.

19     MS. WEBB: No, I wouldn't say that he'd received exclusively

20 one-to-one, because there would be two other students in that

21 classroom.

22     MR. TYRKA: No, I am asking are you capable of providing

23 that?

1       MS. WEBB: If it is mandated, then yes.

2       MR. TYRKA: Okay. And is Rock Creek capable of providing

3  speech and language therapy twice a week?

4       MS. WEBB: Yes.

5       MR. TYRKA: And can you tell me what certifications of –

6  well you have speech and language pathologists on staff there?

7       MS. WEBB: Yes we do a number of them.

8       MR. TYRKA: And are they certified?

9       MS. WEBB: Yes they are.

10      MR. TYRKA: If you give me a minute.  Do you know the

11 disabilities of the two children in class?

12      MS. WEBB: Yes, one is MR and the other is LV, NLV.

13      MR. TYRKA: Speech language impaired or speech language

14 disabled?

15      MS. WEBB: No.

16      MR. TYRKA: Speech learning disabled, excuse me.

17      MS. WEBB: Okay.

18      MR. TYRKA: Alright, based on your read of the packet that

19 you received and your understanding of the class that J███████

20 would be entering, do you know of any reason why J██████ could

21 not receive there the instructions and services indicated in

22 those evaluations?

23      MR. MCCALL: I'm going to object.

69

1      MS. WEBB: No there is no reason that I can think of.

2      HEARING OFFICER: Just a moment, we are going to need to put

3  you on mute again, all right?

4      MR. MCCALL: First of all--.

5      HEARING OFFICER: HmmmHmmm.

6      MR. MCCALL: We haven't heard any real background to lay a

7  foundation for this witness expertise in coming to any ultimate

8  conclusions as to the student. What we're talking is the Part II

9  Burlington test, whether this school is proper.

10     HEARING OFFICER: HmmmHmmm.

11     MR. MCCALL: Carter B. Florence.  There has been no

12  testimony about this witness's qualifications in - all we've

13  heard so far basically, I think we can just shortcut this, she

14  wasn't (Laughter).  She wasn't involved in any of the decision-

15  making.  She's only met the student.  So, you know we can

16  shortcut.  I don't see anyway this witness is going to be

17  brought into that role up to that level to meet that Part II

18  Burlington test.  Basically she's just there and she met them,

19  she got documents, that's not going to do it.

20     HEARING OFFICER: Well, I think the question is very narrow

21  in terms of looking at her, reviewing the evaluations and

22  services recommended in the evaluations, whether or not they

23  could provide what she sees in the evaluations.

1    MR. MCCALL: I think the question was phrased a little

2    differently.

3        HEARING OFFICER: The only difference was what?

4        MR. TYRKA: The only difference was my phrasing was the

5    phrasing in the negative.  I said you know of any reason Rock

6    Creek could not provide --.

7        HEARING OFFICER: Right.

8        MR. TYRKA: The instruction services prescribed in the

9    evaluation.

10       HEARING OFFICER: I'll note your objection and I'll allow

11   the question to be answered.

12       MR. TYRKA: I'm sorry about that and you've already gave

13   your answer, but my last question was do you know of any - based

14   on your understanding of and your read of the packet and your

15   understanding of the program and services there, do you know of

16   any reason J█████ could not receive the instruction and services

17   prescribed in his evaluations there?

18       MS. WEBB: No.  No I do not.

19       MR. TYRKA: I'm not sure I asked you this, is it your

20   understanding that Rock Creek is prepared to accept J█████

21   pending funding?

22       MS. WEBB: Yes.

23       MR. TYRKA: I have no further questions.

1          HEARING OFFICER: Mr. McCall you do have anything for her?

2          MR. MCCALL: Just a couple.  Ms. Webb can you hear me?  Can

3     you hear me Ms. Webb?

4          MS. WEBB: Yes, there does seem to be some inference.

5          MR. MCCALL: This is Danny McCall, tell me if you can still

6     here me?

7          MS. WEBB: Yes I can hear you.

8          MR. MCCALL: Okay.  I asked you earlier if you were involved

9     in any of the decision-making on this student and you indicated

10    that you were not, is that correct?

11         MS. WEBB: That is correct.

12         MR. MCCALL: And that you've only met this student.

13         MS. WEBB: That is correct.

14         MR. MCCALL: And how long was the meeting?

15         MS. WEBB: Probably for about 10 minutes.

16         MR. MCCALL: Okay, clearly you haven't done any type of

17    assessment on this student? Correct.

18         MS. WEBB: I beg your pardon?

19         MR. MCCALL: You haven't performed any type of assessment

20    on this student?

21         MS. WEBB: No I have not did assessments.

22         MR. MCCALL: And when did you receive this packet as counsel

23    referred to in his questioning.

1          MS. WEBB: Approximately 6 days ago.

2          MR. MCCALL: And you said there were 3 evaluations in the

3     packet?

4          MS. WEBB: Yes.

5          MR. MCCALL: Is that all?

6          MS. WEBB: Yes, that's it.

7          MR. MCCALL: So you haven't even the seen the information

8     from the MDT meeting have you?

9          MS. WEBB: No I have not.

10         MR. MCCALL:  You have no idea what was planned for this

11    student by DCPS?

12         MS. WEBB: By MDT are you speaking about the notes from IEP,

13    his most recent IEP meeting?

14         MR. MCCALL: Yes M'ame.

15         MS. WEBB: Yes I do have those notes in this packet.

16         MR. MCCALL: All right, so you have more than just the 3

17    evals?

18         MS. WEBB: Yes, but I stated that earlier.

19         MR. MCCALL: No, you said you had 3 evals?

20         MR. TYRKA: Objection, argumentative.

21         HEARING OFFICER: Okay.

22         MR. MCCALL: Let's clear it up.

23         HEARING OFFICER: Let's clear the question.

1    MR. MCCALL: Okay, let's go back then Ms. Webb, we're going

2    to clear this up, because I only understood you to say you only

3    have 3 evaluations.  What did you get in the packet?

4    MS. WEBB: I received the most recent IEP which I previously

5    stated, I received 3 evaluations and I also received

6    correspondence between Rock Creek and the attorney's office

7    which I also previously stated.

8    MR. MCCALL: And when you say you've received the most

9    recent IEP's what are you referring to?

10    MS. WEBB: I'm referring to the IEP that is dated,

11    2/12/2007.  There is also an IEP that was done, let's see,

12    look's like there may have been an addendum, the date for the

13    IEP also is 2/12/2007, and there are several sets of notes, MDT

14    notes.

15    MR. MCCALL: And you don't have a goal or objective page,

16    correct?

17    MS. WEBB: Yes I do.

18    MR. MCCALL:  You have a goal and objective page?

19    MS. WEBB: Yes, there are several goals and objectives here.

20    MR. MCCALL: In what areas?

21    MS. WEBB: Reading--.

22    MR. TYRKA: I'm going to stop at this point.

23    HEARING OFFICER: HmmmHmmm.

74

1    MR. TYRKA:  I'm sorry Ms. Webb I have an objection and I'm

2   going to put you on mute.

3    HEARING OFFICER: Put you on mute. Hold on.

4    MR. TYRKA: Well there hasn't been a decision yet about

5   whether these documents are going to be admitted into evidence.

6   I mean you've already asked for the scope of my direct.

7    HEARING OFFICER: Are they (inaudible) the motion?

8    MR. TYRKA: DCPS has (inaudible) I didn't understand whether

9   the Hearing Officer had ruled on DCPS's disclosures or not.

10    HEARING OFFICER: Oh, yeah, yeah, yeah, they are admitted

11   because they are timely disclosed.  The issue of relevance was

12   brought up.  So what – where completely are you going with it?

13    MR. MCCALL: I'm trying to find out – number one I'm just

14   trying to find out she had?

15    HEARING OFFICER: Okay.

16    MR. MCCALL: To base her opinions on.  If I can get through

17   that, then maybe I can get into some substance.

18    MR. TYRKA: But they were admitted though.

19    MR. MCCALL: Ms. Webb are you still there?

20    MS. WEBB: Yes I am.

21    MR. MCCALL: Okay, you said you had a reading IEP goal and

22   objection page?

23    MS. WEBB: Reading, mathematics, and speech and language

1   communications, -- yes, reading, mathematics, and speech and

2   language communications.

3       MR. MCCALL: And real quick, what is your background, what

4   degrees do you hold.

5       MS. WEBB: I have a Masters' Degree in Special Education, I

6   have an undergraduate in communications with specialization in

7   group dynamics and I am currently pursuing a Ph.D. in

8   Educational Sociology.

9       MR. MCCALL: And your Masters' in Special Ed, have you

10  taught in public schools?

11      MS. WEBB: I've taught in a private special needs school for

12  8 years.  Yes. I have a permanent certification for public

13  schools, K through 12, special education.

14      MR. MCCALL: Okay.  And you attended IEP meetings?

15      MS. WEBB: Yes, many times.

16      MR. MCCALL:  Are you familiar with the requirement for

17  informed consent for the initial provision of special education?

18      MR. TYRKA: Objection. Relevance to that?

19      HEARING OFFICER: Way outside the scope.

20      HEARING OFFICER: Okay.  Never mind on that question.

21      MR. MCCALL: The Hearing Officer doesn't think it's valid,

22  I'll just move forward.

23      MR. TYRKA: I didn't say outside the scope, I said it wasn't

1    relevant. I said outside the scope.

2         MR. MCCALL: And looking at the goals and objectives, were

3    you asked to give an opinion as to whether those were okay to

4    use with student, proper to use with this student?

5         MR. TYRKA: Objection.  Outside the scope again.

6         HEARING OFFICER: Use what?

7         MR. MCCALL: Proper.  There is no appropriateness standard

8    in a private school, the only standard is applied is proper.

9         HEARING OFFICER: What is your question, I'm sorry?

10        MR. MCCALL: To whether or not she was asked to give an

11   opinion when this student was presented as to whether these

12   goals and objectives proper for them to use with this student?

13        MR. TYRKA: I'm objecting because it is outside the scope

14   and relevance.  It's not one of the issues in the complaint, and

15   hasn't been raised.

16        MR. MCCALL: He asked the witness on direct, do you see any

17   reason why we couldn't use these --.

18        MR. TYRKA: What I said was evaluations?

19        HEARING OFFICER: Okay, Mr. McCall, how much farther are you

20   going with it?

21        MR. MCCALL: That was it, I was just going to explore that?

22        HEARING OFFICER: Okay, that's it, we're done that you very

23   much.

77

1          MS. WEBB: You're welcome.

2          MR. TYRKA: Thank you Ms. Webb.

3          MS. WEBB: You're welcome.

4          HEARING OFFICER: Okay, with regard, you proffered on - is

5     it Becker's testimony, you didn't receive the last eval, was

6     this on the 20th of December. Is there something else you wanted

7     to present, to proffer

8          MR. MCCALL: That what was we proferred?  I mean we can call

9     her.

10         HEARING OFFICER: I mean I don't think that is a dispute

11    that that is the allegation.

12         MR. MCCALL: And that's all she would say, other than, she

13    would say that at the meeting --.

14         HEARING OFFICER: She would say what's in her letter which

15    is in disclosures—which has been disclosed.

16         MR. MCCALL: And that there was a meeting on the 12th.

17         HEARING OFFICER: Right.

18         MR. MCCALL: And that we considered the independence and

19    that there were recommendations for vision and hearing --.

20         HEARING OFFICER:  HmmmHmmm.

21         MR. MCCALL:    Audiological, SEP plan was developed --.

22         HEARING OFFICER: All at the meeting?

23         MR. MCCALL:  All at the meeting.  Developed, the vision and

78

1   hearing is complete and that the audiological is underway.

2      HEARING OFFICER: Is that reference in the notes?  That you

3   submitted?

4      MR. MCCALL: I believe that is referenced in the MDT notes,

5   if not it may be letters.  It references that the MDT agrees

6   that J█████ will be referred for hearing and vision exam and

7   audiological evaluation within the next two business days which

8   shall be completed by DCPS.  And in it says, however, a vision

9   and hearing screening was completed by DCPS. So we found the

10  vision and hearing screening. What I said was, it was supposed

11  to faxed to me.  There was one already completed, and there was

12  problem of locating the report.  I can get that to counsel.  But

13  the audiological is underway, and that's as of the 12th, so it's

14  not right.

15     HEARING OFFICER: All right, so is there any need for

16  anything else that you can submit it on the record?

17     MR. MCCALL: Obviously I would ask the witness as to

18  educational harm.  And I am preferring and there has been no

19  showing of educational harm in this case.  My witness will

20  testify that there has been no educational harm. I can have her

21  come and say that, but if we're looking at just moving this

22  along quickly, that's what she will say.  Because that is what

23  they're telling me.

1        MR. TYRKA: I'm not sure how there is no showing of

2    educational harm, we have evaluations that dictate a special

3    education setting set aside - special education setting for all

4    subjects and that was not provided to the student.

5        HEARING OFFICER: Okay, but the - my understanding is that

6    the reason that it hasn't been provided since the 12th because

7    the parent hasn't consented to it being provided, but we're

8    really talking - I mean is there any dispute between the 25th of

9    January and the 12th of February that no services were provided?

10       MR. TYRKA: Wait. Wait. Wait.

11       HEARING OFFICER: What?

12       MR. TYRKA: That was huge jump to a big argument that one,

13   DCPS had not established, two -- .

14       HEARING OFFICER: Did not establish what?

15       MR. TYRKA: About what has happened since the 12th.  Two - I

16   mean that motion was stricken.

17       HEARING OFFICER: Well the documents are in the disclosure

18   as to whether or not there was a meeting.

19       MR. TYRKA: But the only time that DCPS has made this

20   argument that the reason he hasn't been educated is because the

21   parent's failure to consent was in their Motion to Dismiss.  And

22   there is no response in which that is made.  And I've never -

23   and I said, I have a substantive response to all of that, but I

80

1    was waiting on that to see if the ruling on the Motion to

2    Dismiss.  That Motion To Dismiss was stricken.

3          HEARING OFFICER: HmmmHmmm.

4       MR. TYRKA:  So this, I have plenty to say about that. I

5    think it completely and totally false. And I think it is absurd

6    actually to - is noted specifically as consenting to it.  So, I

7    think that is ridiculous.  But the bigger issue is that if DCPS

8    wants to say in its response case, that it has provided, that it

9    has made available FAPE, then it could do that.  But it never

10   said it in its response and it still hasn't done it here.  That

11   was not an issue in our complaint, but I would rebut that if

12   that's going to be a presentation. Because I'm certainly not

13   going to walk out of here without having been able to rebut that

14   if that is going to be considered in the case.

15         HEARING OFFICER: That you would be --.

16      MR. TYRKA: (Inaudible).

17         HEARING OFFICER: That you would not be able to rebut.

18      MR. TYRKA: If there is some idea that DCPS has made case,

19   that they have made FAPE available at any time, then I would

20   like to rebut that.  But I haven't heard that, but I haven't

21   even heard that statement here.  I saw it in their Motion To

22   Dismiss.

23         HEARING OFFICER: Well.  I mean.  To some extent - to some

1    extent, I've judge the whole thing on as of the date of the

2    complaint.   I mean there are facts in the disclosure which

3    indicate what occurred after the complaint was filed, but the

4    essence of the complaint was what occurred as of the day of the

5    complaint.   You have an 11 o'clock. Okay.   So, go ahead.

6        MR. MCCALL: Just briefly, as to the FAPE issue.   FAPE in

7    this case is what the HOD ordered. Once an HOD is issued that

8    become FAPE for the student.   The showing of FAPE is the showing

9    of compliance with the HOD.   And all we said all along in this

10   case is we have complied.

11       HEARING OFFICER: HmmmHmmm.

12       MR. MCCALL: You know, we got the last eval the 31st,

13   scheduled a meeting the 12th, and based on the recommendation

14   independence, we you know had a new SEP plan that's underway,

15   part of its already complete.   What counsel has to show is that

16   somehow in that interim if we say its, like I said the 25th

17   deadline, or if we say it's a deadline flowing from the 31st,

18   which I look at my calendar to see exactly when that is.

19   Sometimes I have to pull it up. If we say it is that deadline,

20   counsel got to show that somewhere in there is educational harm.

21       HEARING OFFICER: Mr. Tyrka your point.

22       MR. TYRKA: Here's my problem overall.

23       HEARING OFFICER: HmmmHmmm.

1      MR. TYRKA: How we may be leaving this room. I made my case-

2   in-chief.  I made it on the documents and that case is that,

3   first of all they were supposed to hold a meeting. They didn't.

4   That they were supposed to determine a placement, and they

5   didn't.  That he requires a placement of a certain type and that

6   is what is in the evaluations and that he also requires an IEP

7   of a certain type and particular evaluations which he gets and

8   requires.

9      HEARING OFFICER: And so you're saying that's personal harm

10  just because based on the documentation.

11     MR. TYRKA: Personally failure to provide — I mean when

12  we're talking about the difference between zero special ed and

13  all subjects special education in a small - small structured

14  classroom, et cetera, et cetera, et cetera, as Rock Creek

15  provides that's per se harm.  And it is certainly the failure to

16  do evaluations in all areas of suspected disability is obviously

17  a clear violation of the IDEA, which the Hearing Officer can

18  enforce.  And I obviously made my case for my proposed remedy.

19  I don't understand why DCPS is counter case is. I mean I really

20  don't.  So, I haven't done anything in rebuttal because I don't

21  even know the case is.

22     HEARING OFFICER: Okay.  Are we done? I'm done.

23     MR. MCCALL: I mean, it's just, he hasn't shown any harm.

1        HEARING OFFICER: Okay, I heard that.

2        MR. MCCALL: That's it.

3        HEARING OFFICER: And I've heard you on that issue.

4        MR. TYRKA: And you heard me that I do not understand there

5    to be any defense case?

6        HEARING OFFICER: Well that goes back to non-response, is

7    that what you're saying?

8        MR. TYRKA: No, what I'm saying is that even as we sit in

9    this room, I don't have an understanding of what DCPS response

10   case is.  And I'm concerning about the Hearing Officer saying

11   well the reason he didn't FAPE on February 12th is because the

12   parent didn't consent.  Because I haven't seen that case

13   established, and I've only heard it argued in the Motion to

14   Dismiss and I have plenty to say on that subject, so---.

15       HEARING OFFICER: Okay.  Okay, what is that what you're

16   saying.

17       MR. TYRKA: Well if.

18       HEARING OFFICER: Well okay, I've heard your argument, I'm

19   not making a conclusion in Randall and don't infer from my

20   questioning that I've made some conclusion about whether or not

21   FAPE was made available as of February 12th.

22       MR. TYRKA: Okay.  As long as the Hearing Officer

23   understands that I haven't given an argument on that point

1    because I don't understand --.

2         HEARING OFFICER: You haven't.

3         MR. TYRKA: Huh?

4         HEARING OFFICER: You haven't.

5         MR. TYRKA: OKAY.

6         HEARING OFFICER: I've ruled on that motion.   Thank you very

7    much gentlemen we will see each other again soon.

8         MR. TYRKA: Tomorrow with the final word on that.

9         HEARING OFFICER: Yes.